1   Claudia Center, State Bar No. 158255
    Shelley A. Gregory, State Bar No. 215442
2   Elizabeth Kristen, State Bar No. 218227
    Lori Rifkin, State Bar No. 244081
3   LEGAL AID SOCIETY-
    EMPLOYMENT LAW CENTER
4   600 Harrison Street, Suite 120
    San Francisco, CA 94107
5   Telephone: (415) 864-8848
    Facsimile: (415) 864-8199
6

7   Attorneys for Plaintiffs                    E-filing

8

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

11  MICHAEL DRAGOVICH, MICHAEL            Case No. 10    1564
    GAITLEY, ELIZABETH LITTERAL,
12  PATRICIA FITZSIMMONS, CAROLYN
    LIGHT, and CHERYL LIGHT, on behalf of
13  themselves and all others similarly situated,    **COMPLAINT FOR INJUNCTIVE**
                                                     **AND DECLARATORY RELIEF**
14              Plaintiffs,

15      v.                                           **CLASS ACTION**

16  UNITED STATES DEPARTMENT OF THE
    TREASURY, TIMOTHY GEITHNER, in his
17  official capacity as Secretary of the Treasury,
    United States Department of the Treasury,
18  INTERNAL REVENUE SERVICE,
    DOUGLAS SHULMAN, in his official
19  capacity as Commissioner of the Internal
    Revenue Service, BOARD OF
20  ADMINISTRATION OF CALIFORNIA
    PUBLIC EMPLOYEES' RETIREMENT
21  SYSTEM, and ANNE STAUSBOLL, in her
    official capacity as Chief Executive Officer,
22  CalPERS,

23              Defendants.

24

25

26

27

28

    Complaint for Declaratory and Injunctive Relief                                      1

1

**INTRODUCTION**

2    1.    Plaintiffs are employees of the State of California and their spouses who are in long-

3  term committed relationships legally recognized under California law as marriages and

4  domestic partnerships. But because Plaintiffs are same-sex couples, the federal and state

5  Defendants are unconstitutionally denying them the opportunity to purchase coverage through

6  the state's long-term care insurance program, an essential tool for financial and family security

7  that is offered to all other families of state workers.

8    2.    As members of the California Public Employees' Retirement System ("CalPERS"),

9  Plaintiffs Michael Dragovich, Elizabeth Litteral, and Carolyn Light ("Plaintiff employees") are

10  eligible to apply to join the CalPERS Long Term Care ("LTC") Program, and seek this

11  opportunity for their same-sex partners, Plaintiffs Michael Gaitley, Patricia Fitzsimmons, and

12  Cheryl Light ("Plaintiff spouses"). Through participation in the LTC Program, the Plaintiffs

13  seek to ensure an adequate safety net for themselves and their loved ones in the event that future

14  debilitating illness or injury requires long-term care services.

15    3.    Long-term care insurance provides coverage when a person needs assistance with

16  basic activities of living due to chronic illness, injury, the frailty of old age, or a severe

17  cognitive impairment such as Alzheimer's disease. In most instances, individuals and their

18  families are not otherwise covered for this type of extended long-term care by health insurance,

19  disability insurance, Medicare, or MediCal. Long-term care insurance is thus an important

20  benefit for individuals, couples, and families – regardless of sexual orientation – to enhance

21  financial security, and to ensure access to appropriate care throughout the life cycle.

22    4.    The U.S. Department of Health and Human Services reports that approximately

23  seventy percent of Americans over the age of 65—approximately nine million people—will

24  need long-term care services. By the year 2020, the number will increase to twelve million. At

25  2009 rates, the average stay in a nursing home lasts 2.4 years and costs more than $170,000.

26  The average cost in 2009 for care provided by a home health aide was $21 per hour, or $27,000

27  annually.

28

Complaint for Declaratory and Injunctive Relief                                                          2

1    5.    Without long-term care insurance, the high costs of care can force families to make

2    painful choices such as selling a family home to pay the bills, or having a working adult give up

3    a job and income to work (unpaid) as a primary caretaker for a loved one who is no longer able

4    to care for herself. The consequences of such steps can be financially and emotionally

5    devastating, and in some cases may be insufficient, leaving individuals in poverty and

6    dependent upon the limited services provided by Medicaid. Long-term care insurance allows

7    families to avoid such contingencies.

8    6.    Long-term care coverage can allow families and individuals to achieve their

9    preferences with respect to assets, aging, and living arrangements, including community-based

10   care. According to the U.S. Department of Health and Human Services: "By planning ahead,

11   you may be able to save your assets and income for uses other than long-term care, including

12   preserving the quality of life for your spouse or other loved ones. . . . Your choices for

13   receiving care outside of a facility and being able to stay at home or receive services in the

14   community for as long as possible are greater if you have planned ahead." U.S. Department of

15   Health and Human Services National Clearinghouse for Long-Term Care Information, available

16   at http://www.longtermcare.gov/LTC/Main_Site/Planning_LTC/Importance/index.aspx.

17   7.    Maximizing the number of families who purchase long-term health care insurance

18   serves the public interest by spreading the risk of catastrophic expense, and helping individuals

19   receive adequate assistance when they become unable to care for themselves, reducing the

20   burden on publicly funded programs. Access to long-term care services can also prevent

21   avoidable health problems, reducing the need for emergency care and other expensive medical

22   services.

23   8.    The federal government, recognizing the importance of long term care insurance in

24   protecting families and the contributions to the public good made by public employees, enables

25   states to offer tax-shielded ("qualified") long term care insurance programs to public employees

26   and their families. These tax provisions were adopted "to provide an incentive for individuals

27   to take financial responsibility for their long-term care needs." Joint Committee on Taxation,

28

1   "Description of Federal Tax Rules and Legislative Background Relating to Long-Term Care

2   Scheduled for a Public Hearing Before the Senate Committee on Finance on March 27, 2001,"

3   available at 2001 WL 36044116 (I.R.S.). "The legislation … provides tax deductibility for long

4   term care and insurance, making it possible for more Americans to avoid financial difficulty as

5   the result of chronic illness." 142 Cong. Rec. S3578-01 at *3608 (Statement of Sen. McCain)

6   (Apr. 18, 1996).

7       9.      Under the Internal Revenue Code, a state may offer public employees a "qualified,"

8   tax-shielded long term care insurance plan that allows an employee to enroll himself or herself,

9   as well as any of the following family members:

10              •   Opposite-sex spouse;

11              •   Children;

12              •   Grandchildren;

13              •   Brothers;

14              •   Sisters;

15              •   Stepbrothers;

16              •   Stepsisters;

17              •   Father;

18              •   Mother;

19              •   Stepfather;

20              •   Stepmother;

21              •   Grandparents;

22              •   Nephews;

23              •   Nieces;

24              •   Aunts;

25              •   Uncles;

26              •   Sons-in-law;

27              •   Daughters-in-law;

28

Complaint for Declaratory and Injunctive Relief                                              4

1  • Father-in-law;

2  • Mother-in-law

3  • Brothers-in-law; and

4  • Sisters-in-law.

5   26 U.S.C. §§ 7702B(f)(1)-(2); 152(d)(2)(A)-(G), 1 U.S.C. § 7. The rules do not limit the

6   number of family members who can enroll. **Only one conceivable family member category** –

7   same-sex spouses and other legally recognized same-sex partners such as registered domestic

8   partners – is excluded.

9      10.    Consistent with federal statutory law, California statutory law mandates that

10   Defendant Board of Administration offer public employees and their families the opportunity to

11   purchase qualified long-term care insurance through the California Public Employees'

12   Retirement System ("CalPERS") during periodic open enrollment. Cal. Gov't Code

13   § 21661(a). A state employee may enroll himself or herself, and his or her spouse, brothers,

14   sisters, father, mother, father-in-law, and mother-in-law in the qualified long-term care

15   insurance program offered to California public employees. Cal. Gov't Code § 21661(d). There

16   is no limit to the total number of family members who can enroll, so long as they fall into an

17   approved family member category. However, same-sex domestic partners are excluded under

18   the terms of state and federal statutory law. 26 U.S.C. §§ 7702B(f)(1)-(2); 152(d)(2)(A)-(G),

19   Cal. Fam. Code § 297.5(g). Same-sex spouses are excluded by virtue of federal statutory law, 1

20   U.S.C. § 7, which CalPERS has followed and has indicated that it will follow.

21      11.    Thus, despite the important purposes underlying the establishment and development

22   of qualified long term care programs for public employees – to protect and provide for public

23   employees and their extended families – families headed by same-sex partners are singled out

24   for exclusion, and denied without basis an important tool of financial planning.

25      12.    Defendants' discrimination against the Plaintiffs with regard to long-term health care

26   insurance is particularly invidious given the historical exclusion of gay couples and families

27   from social and financial institutions and programs, including insurance plans, that help couples

28

1  and families protect their financial security and allow them the resources to make caretaking

2  decisions as a family.

3      13.    Moreover, the statutory exclusion of same-sex partners from qualified long-term care

4  plans interferes with California's independent constitutional law. The California Supreme

5  Court has affirmed that "as a matter of constitutional right," California law accords same-sex

6  couples, whether in legally recognized marriages or domestic partnerships, the same respect and

7  dignity and the same substantive legal rights and attributes as married opposite-sex couples.

8  *Strauss v. Horton*, 36 Cal. 4th 364, 411 (2009).

9      14.    As couples in legally recognized committed relationships, Plaintiffs are entitled to

10  respect for their fundamental liberty and privacy interests in marital and familial relationships,

11  and the full and equal protection of the law. The exclusion challenged herein disrespects

12  Plaintiffs' marital and familial relationships, and constitutes irrational discrimination, all in

13  violation of the constitutional guarantees of due process and equal protection.

14      15.    Plaintiffs seek a determination that by excluding same-sex partners and spouses, the

15  federal provisions at issue – 26 U.S.C.A. §§ 7702B(f)(1)-(2) and 152(d)(2)(A)-(G) – violate the

16  due process and equal protection guarantees of the federal Constitution. Plaintiffs seek a further

17  determination that the CalPERS LTC Plan violates the federal Constitution by conforming its

18  requirements to the federal provisions, thereby denying Plaintiffs the same respect and benefits

19  as it grants to similarly situated heterosexual public employees and their spouses.

20                             **JURISDICTION**

21      16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this

22  case arises under the Constitution of the United States and presents a federal question under

23  Article III of the United States Constitution; pursuant to 28 U.S.C. § 1343(a)(3), (4) and 42

24  U.S.C. § 1983 in that this action is brought to redress deprivations, under color of state

25  authority, of rights, privileges, and immunities secured by the Constitution of the United States;

26  and pursuant to 5 U.S.C. § 702 in that the action states a claim that an agency of the United

27  States or an officer or employee thereof acted or failed to act in an official capacity or under

28

1    color of legal authority. The Court has authority to grant declaratory and injunctive relief

2    pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) and § 2202. The Court has the

3    authority to award costs and attorneys' fees under 28 U.S.C. § 2412 and 42 U.S.C. § 1988.

4    ### VENUE

5    17.    Venue is proper in the Northern District of California under 28 U.S.C. § 1391(e) in

6    that this action does not involve real property, Plaintiffs reside in this District, and a substantial

7    part of the acts and/or omissions giving rise to Plaintiffs' claims occurred in this District.

8    ### PARTIES

9    18.    Plaintiffs are public employees in the State of California who are eligible to purchase

10   long-term care coverage offered through CalPERS ("Plaintiff employees") and their legally

11   recognized spouses and domestic partners ("Plaintiff spouses").

12   19.    Plaintiff MICHAEL DRAGOVICH is a U.S. citizen residing in San Francisco,

13   California, and is employed by the University of California, San Francisco ("UCSF") Medical

14   Center, where he has worked as a registered nurse and nurse coordinator in the area of liver

15   transplants since 1992. He is 51 years old. As part of his employee benefits package, he is

16   eligible for and participates in CalPERS, California's benefit program for public employees.

17   20.    Plaintiff DRAGOVICH met Plaintiff MICHAEL GAITLEY in 1979. They have been

18   a committed couple for more than 30 years. Plaintiffs DRAGOVICH and GAITLEY were

19   married on June 28, 2008 pursuant to a duly issued marriage license; they are legally married

20   under California law. Plaintiff GAITLEY is also a U.S. citizen residing in San Francisco,

21   California, and he is 51 years old. Plaintiff GAITLEY is an attorney who runs free legal clinics

22   for low-wage workers throughout the Bay Area.

23   21.    Plaintiff ELIZABETH LITTERAL is a U.S. citizen residing in San Francisco,

24   California, and is employed by the UCSF Medical Center, where she has worked as a nurse in

25   the areas of oncology and hematology since approximately 1995. She is 50 years old. As part

26   of her employee benefits package, she is eligible for and participates in CalPERS.

27   22.    Plaintiff LITTERAL met Plaintiff PATRICIA FITZSIMMONS in 1992. They have

28

Complaint for Declaratory and Injunctive Relief                                                    7

1  been a committed couple for more than 17 years. Plaintiffs LITERRAL and FITZSIMMONS

2  registered as domestic partners with the City and County of San Francisco on June 21, 1994. In

3  1997, they adopted their daughter Molly, now 14. They also registered as domestic partners

4  with the State of California when that registry became available through state law. Following

5  the decision of Mayor Gavin Newsom to provide marriage licenses on a nondiscriminatory

6  basis, Plaintiffs LITERRAL and FITZSIMMONS were married in San Francisco on February

7  13, 2004; this marriage was subsequently invalidated by the California Supreme Court.

8  Plaintiffs LITERRAL and FITZSIMMONS were then married on October 8, 2008 pursuant to a

9  duly issued marriage license; they are legally married under California law. Plaintiff

10 FITZSIMMONS is a U.S. citizen residing in San Francisco, California, and she is 59 years old.

11 Plaintiff FITZSIMMONS is an attorney who directs the Child Advocacy Clinic at the

12 University of San Francisco School of Law.

13     23.   Plaintiff CAROLYN LIGHT is a U.S. citizen residing in San Francisco, California,

14 and is employed by the UCSF Medical Center, where she has worked as health care

15 administrator since 2005. She is 32 years old. As part of her employee benefits package, she is

16 eligible for and participates in CalPERS.

17     24.   Plaintiffs CAROLYN and CHERYL LIGHT met in college and have been a

18 committed couple for seven years. They registered as domestic partners under California state

19 law in October 2006. On June 24, 2008, Plaintiffs CAROLYN and CHERYL LIGHT were

20 married pursuant to a duly issued marriage license; they are legally married under California

21 law.

22     25.   Defendant DEPARTMENT OF THE TREASURY is a federal government

23 department established by Congress.

24     26.   Defendant INTERNAL REVENUE SERVICE is a bureau of the DEPARTMENT OF

25 THE TREASURY that is organized to carry out the responsibilities of the Secretary of the

26 Treasury in executing and applying the internal revenue laws pursuant to 26 U.S.C. § 7801.

27     27.   Defendant TIMOTHY GEITHNER is currently the Secretary of the Treasury and is

28

Complaint for Declaratory and Injunctive Relief         8

1    sued in his official capacity. In his official capacity, Secretary GEITHNER is responsible for

2    the administration of the DEPARTMENT OF THE TREASURY, including the administration

3    and enforcement of the internal revenue laws. 26 U.S.C. § 7801.

4        28.    Defendant DOUGLAS SHULMAN is currently the Commissioner of Internal

5    Revenue and issued in his official capacity. In his official capacity, Commissioner SHULMAN

6    is responsible for administering and supervising the execution and application of the internal

7    revenue laws. 26 U.S.C. § 7803.

8        29.    Defendant BOARD OF ADMINISTRATION of California Public Employees'

9    Retirement System ("BOARD") is the thirteen-member body vested with management and

10   control of the Public Employees' Retirement System. Cal. Gov't Code § 20120.

11       30.    Defendant ANNE STAUSBOLL is Chief Executive Officer of the California Public

12   Employees' Retirement System and is sued in her official capacity.

13                        **CLASS ACTION ALLEGATIONS**

14       31.    Plaintiffs DRAGOVICH, GAITLEY, LITTERRAL, FITZSIMMONS, CAROLYN

15   LIGHT, and CHERYL LIGHT bring this action on behalf of themselves and all persons

16   similarly situated. The class they seek to represent is composed of CalPERS members who are

17   in same-sex marriages and registered domestic partnerships legally recognized by the State of

18   California, and their spouses and partners, who as couples and families are denied access to the

19   CalPERS Long-Term Care Program that is equal to similarly situated CalPERS members who

20   are in opposite-sex marriages, and their spouses.

21       32.    The persons in the class are so numerous that joinder of all such persons is

22   impracticable and the disposition of their claims in a class action is a benefit both to the parties

23   and to this Court. The Williams Institute at the University of California, Los Angeles, has

24   estimated that there are nearly 193,000 current state and local public employees who are

25   lesbian, gay, bisexual, and transgender.

26       33.    There is a well-defined community of interest in the questions of law and fact

27   regarding the parties to be represented, and common questions of law and fact predominate.

28

Complaint for Declaratory and Injunctive Relief                                              9

1    34.    The claims of Plaintiffs DRAGOVICH, GAITLEY, LITTERRAL, FITZSIMMONS,

2    CAROLYN LIGHT, and CHERYL LIGHT are typical of those of the class, and Plaintiffs

3    DRAGOVICH, GAITLEY, LITTERRAL, FITZSIMMONS, CAROLYN LIGHT, and

4    CHERYL LIGHT will fairly and adequately represent the interests of the class.

5                          **STATEMENT OF FACTS**

6    35.    As California public employees, the Plaintiff employees are eligible for and

7    participate in California's public employee benefit program, administered through the

8    California Public Employees' Retirement System ("CalPERS").

9    **The CalPERS Long-Term Care Program.**

10   36.    One benefit included in CalPERS is the opportunity to enroll in the CalPERS Long-

11   Term Care Program. The Long-Term Care Program ("Program") provides benefit payouts in

12   the event that the beneficiary requires long-term skilled nursing care (for example, due to

13   illness, injury, or advanced age). The Long-Term Care Program allows California public

14   employees and/or family members of employees, including spouses, adult siblings, parents and

15   parents-in-law to enroll in the Program. These family members can apply for the Program even

16   if the public employee chooses not to enroll.

17   37.    The 2008 CalPERS Long-Term Care Program Information Guide ("Information

18   Guide"), made available to all members of CalPERS including the Plaintiff employees, defines

19   "long-term care" as "the extended care you or a loved one may need when you need assistance

20   with basic Activities of Daily Living (ADLs) like bathing, dressing, or eating." This care can be

21   necessary "because of a chronic illness, injury, or due to the frailty of old age [or] a Severe

22   Cognitive Impairment, such as Alzheimer's Disease." The Program offers coverage options for

23   care provided at home, at an adult day care center, in an assisted living facility, or in a nursing

24   home.

25   38.    In most instances, individuals and their families are not covered for long-term care by

26   other insurance or disability plans. Medicare and employer-sponsored or private health

27   insurance do not pay for the majority of long-term care services. Medicaid provides limited

28

1 | coverage for some long-term care only to individuals who meet a state-determined poverty level
2 | and certain health-related criteria.

3 | 39. In a section entitled "Do Not Forget Your Loved Ones," the Information Guide offers
4 | facts to "help you better understand why you should tell your spouse, parents, parents-in-law
5 | and adult siblings about the CalPERS Long-Term Care Program." The Information Guide
6 | repeatedly offers reminders that employees should enroll their "spouse," "family," and "loved
7 | ones."

8 | 40. According to CalPERS, three out of five people over age 65 will need some type of
9 | long-term care over their lifetime. In 2007, the average cost of care in a nursing home in
10 | California was $180 per day, or over $65,000 annually, and the average nursing home stay is 2.6
11 | years, costing approximately $170,000. Care received at home can cost more than $20,000 a
12 | year. As with other health care costs, the costs of long-term care are rising annually.

13 | **Defendants' Exclusion of the Plaintiff Spouses.**

14 | 41. Plaintiff Michael Dragovich has been employed as a registered nurse and nurse
15 | coordinator at UCSF Medical Center for approximately eighteen years. Plaintiff Dragovich has
16 | been in a committed relationship with Plaintiff Gaitley for more than 30 years, since 1979. On
17 | June 28, 2008, following the decision of the California Supreme Court in *In re Marriage Cases*,
18 | 43 Cal. 4th 757 (2008) (holding that denial of the right to marry to same-sex couples violated
19 | the California Constitution), Plaintiff Dragovich married Plaintiff Gaitley, pursuant to a duly
20 | issued California marriage license. Plaintiffs Dragovich and Gaitley remain lawfully married
21 | spouses under the laws of the State of California. *Strauss v. Horton*, 46 Cal. 4th 364 (2009).

22 | 42. Plaintiffs Dragovich and Gaitley are each 51 years old. Like families across the
23 | country planning their future, Plaintiffs Dragovich and Gaitley seek the security that, should
24 | either of them experience a debilitating illness or injury or otherwise become unable to care for
25 | himself, there will be an adequate safety net in place to provide necessary long-term health care.
26 | Plaintiff Dragovich purchased long-term care coverage through the CalPERS program in 1997;
27 | Plaintiff Gaitley seeks the same coverage.

28

1    43.   Plaintiff Litteral has been employed as an oncology nurse at UCSF Medical Center for
2    approximately 15 years. Plaintiffs Litteral and Fitzsimmons have been in a committed
3    relationship for more than 17 years. Plaintiffs Litteral and Fitzsimmons registered as domestic
4    partners with the City and County of San Francisco on June 21, 1994. They also registered as
5    domestic partners with the State of California when that registry became available through state
6    law. Following the decision of Mayor Gavin Newsom to provide marriage licenses on a
7    nondiscriminatory basis, Plaintiffs Litteral and Fitzsimmons were married in San Francisco on
8    February 13, 2004; this marriage was subsequently invalidated by the California Supreme
9    Court. Following the *In re Marriage* cases, Plaintiffs Litteral and Fitzsimmons were married on
10   October 8, 2008 pursuant to a duly issued marriage license; they are legally married under
11   California law.

12   44.   For some time, Plaintiffs Litteral and Fitzsimmons have been reviewing their options
13   for obtaining long-term care coverage. They are interested in joining the CalPERS Long-Term
14   Care Program because the benefits are tax-protected, and because, as a publicly operated group
15   plan, the premiums are lower than those charged by private carriers of individual policies.

16   45.   Plaintiff Carolyn Light has been employed as health care administrator at UCSF
17   Medical Center since 2005. She and Plaintiff Cheryl Light have been in a committed
18   relationship for seven years. They registered as domestic partners in 2006, and married legally
19   in 2008. They are planning to have children. Plaintiffs Carolyn and Cheryl Light are interested
20   in coverage through the CalPERS Long-Term Care Program because they view this coverage as
21   a component of their financial planning as a couple.

22   46.   After Plaintiffs Dragovich and Gaitley married, Plaintiff Dragovich sought to enroll
23   Plaintiff Gaitley in the CalPERS Long-Term Care Program. In December 2008, Plaintiff
24   Dragovich called the Program's toll-free number to request enrollment materials, but was told
25   by the Program representative with whom he spoke that same-sex spouses are ineligible to
26   enroll in the Program. When Plaintiff Dragovich inquired further, the representative informed
27   him that this restriction was based on federal law.

28

Complaint for Declaratory and Injunctive Relief                                                    12

47. Following Plaintiff Dragovich's telephone conversation with the Long-Term Care Program representative, his attorney wrote a letter to CalPERS on his behalf, objecting to discrimination by CalPERS on the basis of sexual orientation. CalPERS Assistant Chief Counsel responded with a letter explaining that the Program "is a tax-qualified plan for IRS purposes," under which members may make their contributions to the Program using pre-tax dollars, and benefit payouts are not subject to the federal income tax. Counsel stated that in order to maintain the tax-qualified status of the Program:

> [The plan must meet certain IRS provisions, including providing enrollment to certain persons such as employees, former employees, their spouses, and others within a specified relationship. Within this context, the federal Defense of Marriage Act (DOMA) currently recognizes a spouse to mean only a "person of the opposite sex." The enrollment of a same-sex spouse into the [Long-Term Care Program]would therefore make the plan non-compliant with IRC provisions based on DOMA and jeopardize the plan's tax-qualified status.

48. The federal and state rules challenged herein burden the familial relationships of the Plaintiffs, including the ability of the Plaintiff employees to support their families by enrolling their partners in the long-term care program available to spouses of California public employees, and their rights to equal protection under the law.

49. Shortly after Plaintiff Dragovich's attorney inquired on his behalf about enrollment of his spouse, CalPERS suspended enrollment for any new enrollees. According to the CalPERS website, enrollment remains closed, despite California law requiring that "long-term care insurance plans shall be made available periodically during open enrollment periods determined by the board." Cal. Gov't Code § 21661(a). Historically, the board has offered open enrollment periods annually, beginning each April. At recent public meetings, CalPERS has stated that it may hold an open enrollment in 2011.

50. Plaintiffs (as well as all others now foreclosed from enrollment) are being adversely affected by the delay in enrollment for the CalPERS program. Applying for long-term health care at a younger age increases the likelihood of qualifying for the coverage and results in lower premiums because premiums are linked to age at enrollment. Already almost two years have

Complaint for Declaratory and Injunctive Relief                                                          13

1 | passed since Plaintiff Dragovich first tried to enroll his spouse. Moreover, it is important that

2 | individuals apply for long-term care insurance when they are in good health because long-term

3 | care insurance plans like CalPERS uses underwriting which can prevent people from being

4 | approved for coverage.

5 | 51. It is impossible to predict when Plaintiffs (and others now foreclosed from

6 | enrollment) will need long-term care. The U.S. Department of Health and Human Services

7 | advises about the importance of planning ahead for long-term care because if "people first learn

8 | about long-term care when they or a loved one need care … their options are often limited by

9 | lack of information, the immediate need for services, and insufficient resources to pay for

10 | preferred services." U.S. Department of Health and Human Services National Clearinghouse

11 | for Long-Term Care Information, available at

12 | http://www.longtermcare.gov/LTC/Main_Site/Planning_LTC/Importance/index.aspx.

13 | **Marriage and Domestic Partnerships in California.**

14 | 52. As a sovereign State of the United States of America, the State of California has

15 | exclusively established and ordained the legal requirements for civil marriage and registered

16 | domestic partnerships within the State and the status of members of such marriages and

17 | partnerships.

18 | 53. Effective January 1, 2005, and presently, California law allows same-sex couples to

19 | enter into domestic partnerships, legally recognized committed relationships with all of the

20 | same substantive legal rights, responsibilities, benefits, and protections as civil marriage affords

21 | to opposite-sex couples who enter into civil marriages recognized by the State of California.

22 | The California statute governing legal recognition of domestic partnerships, California Family

23 | Code 297.5, states that "Registered domestic partners shall have the same rights, protections,

24 | and benefits, and shall be subject to the same responsibilities, obligations, and duties under law,

25 | whether they derive from statutes, administrative regulations, court rules, government policies,

26 | common law, or any other provisions or sources of law, as are granted to and imposed upon

27 | spouses." Cal. Fam. Code § 297.5(a).

28 |

1    54.    However, section (g) of the same statute specifically exempts the federally qualified
2    long term care program from this equality guarantee, stating, "No public agency in this state
3    may discriminate against any person or couple of the ground that the person is a registered
4    domestic partner rather than a spouse or that the couple are registered domestic partners rather
5    than spouses, except that nothing in this section applies to modify eligibility for long-term care
6    plans pursuant to Chapter 15 (commencing with Section 21660) of Par 3 of Division 5 of Title 2
7    of the Government Code [Public Employees' Long-Term Care Act]."

8    55.    Effective June 15, 2008, with the implementation of the California Supreme Court's
9    constitutional determination in *In re Marriage Cases*, 43 Cal. 4th 757 (2008), same-sex couples
10   who otherwise complied with the requirements for obtaining a marriage license in the State of
11   California were entitled to marry under California law.

12   56.    Although the California Constitution was modified on November 4, 2008 by the
13   passage of Proposition 8, eliminating the ability of same-sex couples to enter into a legally
14   recognized relationship designated "marriage," marriages of same-sex couples that occurred
15   prior to the adoption of Proposition 8—including Plaintiffs' marriages—"remain valid in all
16   respects." *Strauss v. Horton*, 36 Cal. 4th 364, 473-74 (2009).

17   57.    Moreover, same-sex couples in California, whether in legally recognized marriages or
18   domestic partnerships, "possess, under the state constitutional privacy and dues process clauses,
19   'the core set of basic substantive legal rights and attributes traditionally associated with
20   marriage,' including, 'most fundamentally, the opportunity of an individual to establish—with
21   the person with whom the individual has chosen to share his or her life—an officially
22   recognized and protected family possessing mutual rights and responsibilities and entitled to the
23   same respect and dignity accorded a union traditionally designated as marriage.' Like opposite-
24   sex couples, same-sex couples enjoy this protection not as a matter of legislative grace, but of
25   constitutional right." *Id.* at 411.

26   58.    Under California constitutional law, the Plaintiff couples must be accorded the same
27   status, responsibilities, and protections as married opposite-sex couples. By failing to offer

28

Complaint for Declaratory and Injunctive Relief                                                    15

1 enrollment equally to the Plaintiffs, the Board is discriminating in violation of California law.

2 **Violation of Federal Constitutional Protections.**

3    59.    The Plaintiff couples are similarly situated to California public employees and their

4 opposite-sex spouses. In excluding same-sex spouses and domestic partners from the vast array

5 of family members permitted to enroll in a qualified long-term care plan, the federal Defendants

6 are violating the Plaintiffs' fundamental liberty and privacy interests in marital and familial

7 relationships, and are discriminating against them in violation of the guarantee of equal

8 protection.

9    60.    By implementing and conforming to the federal rules, and by excluding same-sex

10 spouses and domestic partners from the list of eligible participants in the Long-Term Care

11 Program, without basis, Defendants Board of Administration and Stausboll are violating

12 Plaintiffs' constitutionally protected rights to due process and equal protection.

13    61.    The state and federal statutes challenged herein are particularly noxious in that they

14 interfere and conflict with the State of California's ability to comply with its own state

15 constitutional mandates. Here, the California Supreme Court has articulated and affirmed the

16 State's strong interest under the California Constitution in according couples in same-sex

17 relationships and their families the same legal responsibilities, benefits, and protections as

18 couples in opposite-sex relationships and their families. In considering the legitimacy of federal

19 governmental interests, federal courts should endeavor to reconcile competing state interests.

20               **INJUNCTIVE AND DECLARATORY RELIEF ALLEGATIONS**

21    62.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 61 as

22 though fully set forth herein.

23    63.    A present and actual controversy exists regarding the respective rights and obligations

24 of Plaintiffs and Defendants. Plaintiffs desire a judicial determination of their rights and

25 Defendants' obligations in a declaration as to whether Defendants' conduct violates the United

26 States Constitution.

27    64.    Such a declaration is necessary and appropriate at this time in order that Plaintiffs may

28

Complaint for Declaratory and Injunctive Relief                                            16

1   ascertain their rights. Such a declaration is also necessary and appropriate to prevent further

2   harm or infringement of Plaintiffs' rights.

3   65.   Plaintiffs have no adequate remedy at law and unless the relief requested herein is

4   granted, Plaintiffs will suffer irreparable harm by the deprivation of enrollment in a qualified

5   long-term care plan.

**FIRST CLAIM FOR RELIEF**
Violation of Fifth Amendment
Due Process
(against Federal Defendants)

9   66.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 65 as

10  though fully set forth herein.

11  67.   As United States citizens, Plaintiffs have fundamental liberty and privacy interests in

12  marital and familial relationships protected by the Fifth Amendment to the U.S. Constitution.

13  68.   Under federal statute, states are authorized to offer tax-shielded long-term care

14  insurance programs to public employees and a vast array of their family members, including

15  their opposite-sex spouses. 26 U.S.C.A. §§ 7702B(f)(1)-(2); 152(d)(2)(A)-(G). Same-sex

16  spouses and domestic partners are excluded. *Id.*; 1 U.S.C. § 7.

17  69.   Plaintiffs' marriages and domestic partnerships are valid and legally recognized under

18  California law, and are afforded identical rights, responsibilities, benefits, and protections under

19  California law.

20  70.   By burdening the Plaintiffs' ability and autonomy to engage in financial and long-term

21  care planning with their lawful spouses and domestic partners, the Defendants are violating the

22  fundamental liberty and privacy interests in marital and familial relationships protected by the

23  due process clause of the Fifth Amendment of the U.S. Constitution.

24  71.   As a proximate result of these unlawful acts, the Plaintiffs have suffered and continue

25  to suffer irreparable injury.

26  72.   The Plaintiffs are entitled to relief, including declaratory relief and injunctive relief,

27  and attorneys' fees and costs.

28

Complaint for Declaratory and Injunctive Relief                                            17

**SECOND CLAIM FOR RELIEF**
Violation of Fifth Amendment
Equal Protection
(against Federal Defendants)

73. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 72 as if fully set forth herein.

74. As United States citizens, the Plaintiffs are entitled to equal consideration and treatment from the federal government, and with respect to each and every program operated by the federal government, including the treatment of qualified long-term care insurance.

75. Under federal statute, states are authorized to offer tax-shielded long-term care insurance programs to public employees and a vast array of their family members, including their opposite-sex spouses. 26 U.S.C.A. §§ 7702B(f)(1)-(2); 152(d)(2)(A)-(G). Same-sex spouses and domestic partners are excluded. *Id.*; 1 U.S.C. § 7.

76. Plaintiffs' marriages and domestic partnerships are valid and legally recognized under California law, and are afforded identical rights, responsibilities, benefits, and protections under California law.

77. By treating the Plaintiffs differently from similarly situated opposite-sex married couples without basis, the Defendants are violating their right to equal protection secured by the Fifth Amendment of the United States Constitution.

78. As a proximate result of these unlawful acts, the Plaintiffs have suffered and continue to suffer irreparable injury.

79. The Plaintiffs are entitled to relief, including declaratory relief, injunctive relief, and attorneys' fees and costs.

**THIRD CLAIM FOR RELIEF**
42 U.S.C. § 1983
For Violation of Due Process Clause of Fourteenth Amendment
(against Defendants Board of Administration and Stausboll)

80. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 79 as though fully set forth herein.

81. Plaintiffs have fundamental liberty and privacy interests in marital and familial

Complaint for Declaratory and Injunctive Relief                                                    18

1 relationships protected against state interference by the due process clause of the Fourteenth

2 Amendment of the U.S. Constitution. Plaintiffs' marriages and domestic partnerships are valid

3 and legally recognized under California law.

4     82.   By denying Plaintiffs the right to enroll in the CalPERS Long-Term Care Program,

5 and by conforming the plan to the unconstitutional federal standards, Defendants Board of

6 Administration and Stausboll, acting under color of state law, are unconstitutionally burdening

7 Plaintiffs' ability and autonomy to engage in financial and health care planning with their

8 legally recognized spouses and domestic partners, in violation of the due process clause of the

9 Fourteenth Amendment.

10     83.   As a proximate result of these unlawful acts, the Plaintiffs have suffered and continue

11 to suffer irreparable injury.

12     84.   The Plaintiffs are entitled to relief, including declaratory relief, injunctive relief, and

13 attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
42 U.S.C. § 1983
For Violation of Equal Protection Clause of Fourteenth Amendment
(against Defendants Board of Administration and Stausboll)

85.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 84 as
though fully set forth herein.

86.   Plaintiffs have a right of equal protection secured by the Fourteenth Amendment to
the Constitution. Plaintiffs' marriages and domestic partnerships are valid and legally
recognized under California law. The State of California has an interest in treating Plaintiffs in
a manner equal to similarly situated state employees and their opposite-sex spouses.

87.   By denying Plaintiffs the right to enroll in the CalPERS Long-Term Care Program,
and by conforming the plan to the unconstitutional federal standards, Defendants Board of
Administration and Stausboll, acting under color of state law, are unconstitutionally
discriminating against Plaintiffs compared to similarly situated California public employees and
their opposite-sex spouses in violation of the Fourteenth Amendment of the United States
Constitution.

1     88.   As a proximate result of these unlawful acts, the Plaintiffs have suffered and continue

2     to suffer irreparable injury.

3     89.   The Plaintiffs are entitled to relief, including declaratory relief, injunctive relief,

4     attorneys' fees and costs.

5     **PRAYER FOR RELIEF**

6     WHEREFORE, Plaintiffs pray that this Court:

7     1.   Enter an order declaring that 26 U.S.C.A. §§ 7702B(f)(1)-(2) (cross-referencing

8     152(d)(2)(A)-(G)) is unconstitutional to the extent it excludes same-sex spouses and registered

9     domestic partners from enrollment in qualified long-term care plans;

10     2.   Enter an order declaring that Cal. Fam. Code § 297.5(g) is unconstitutional to the

11     extent it excludes same-sex spouses and registered domestic partners from enrollment in the

12     CalPERS Long-Term Care Program;

13     3.   Enter an order enjoining Defendant Board of Administration and Defendant Stausboll

14     from complying with these unconstitutional federal and state laws;

15     4.   Enter an order directing the Defendant Board of Administration and Defendant

16     Stausboll to permit the enrollment of the same-sex spouses and registered domestic partners of

17     state employees during future open enrollment periods for its Long-Term Care Plan;

18     5.   Enter an order enjoining Defendant United States Department of the Treasury,

19     Defendant Geithner, Defendant Internal Revenue Service, and Defendant Shulman from

20     challenging the tax-shielded "qualified" status of the CalPERS LTC Program;

21     6.   Award attorneys' fees and costs; and

22     7.   Grant any other relief that the Court deems just and proper.

23

24

25     / / /

26     / / /

27     / / /

28

Respectfully submitted,

THE LEGAL AID SOCIETY
EMPLOYMENT LAW CENTER

Date: April 13, 2010                    By:  _____
                                             Claudia Center
                                             Attorneys for Plaintiffs