1  TONY WEST
   Assistant Attorney General
2
   ARTHUR R. GOLDBERG (DC Bar No. 180661)
3  Assistant Branch Director

4  JEAN LIN (NY Bar No. 4074530)
   Senior Counsel
5  United States Department of Justice
   Civil Division
6  Federal Programs Branch
   20 Massachusetts Ave., N.W.
7  Washington, DC 20530
   (202) 514-3716
8  (202) 616-8470 (Fax)
   jean.lin@usdoj.gov
9
   Attorneys for Federal Defendants
10

11              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF CALIFORNIA
12                      OAKLAND DIVISION

13  ———————————————————  )
                          )  No. 4:10-CV-01564-CW
14  MICHAEL DRAGOVICH, MICHAEL  )  Hearing:  September 9, 2010, 2 p.m.
    GAITLEY, ELIZABETH LITTERAL,  )
15  PATRICIA FITZSIMMONS, CAROLYN  )  FEDERAL DEFENDANTS'
    LIGHT, and CHERYL LIGHT, on behalf  )  REPLY IN SUPPORT OF THEIR
16  of themselves and all others similarly  )  MOTION TO DISMISS
    situated,                )
17                           )
                Plaintiffs,  )
18                           )
            vs.              )
19                           )
    UNITED STATES DEPARTMENT OF  )
20  THE TREASURY, TIMOTHY  )
    GEITHNER, in his official capacity as  )
21  Secretary of the Treasury, United States  )
    Department of the Treasury, INTERNAL  )
22  REVENUE SERVICE, DOUGLAS  )
    SHULMAN, in his official capacity as  )
23  Commissioner of the Internal Revenue  )
    Service, BOARD OF  )
24  ADMINISTRATION OF CALIFORNIA  )
    PUBLIC EMPLOYEES' RETIREMENT  )
25  SYSTEM, and ANNE STAUSBOLL, in  )
    her official capacity as Chief Executive  )
26  Officer, CalPERS,  )
                          )
27              Defendants.  )
    ———————————————————  )
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE**

INTRODUCTION...................................................................................................... 1

ARGUMENT............................................................................................................. 1

I.      THE COMPLAINT FAILS TO ESTABLISH PLAINTIFFS'
STANDING. ..................................................................................................... 1

      A.     Futility Does Not Overcome Plaintiffs' Failure to Show
Adverseness. ......................................................................................... 1

      B.     Plaintiffs Have Not Established That They Have Been
Harmed By Their Inability to Access CalPERS's Long-Term
Care Program. ....................................................................................... 3

      C.     Plaintiffs Have Failed to Establish Other Standing Requirements. ....... 5

II.     PLAINTIFFS HAVE FAILED TO STATE AN EQUAL PROTECTION
CLAIM UNDER BINDING CIRCUIT PRECEDENT. ................................... 5

      A.     Rational Basis Review Applies to Plaintiffs' Equal Protection
Challenge. ............................................................................................. 5

      B.     DOMA and I.R.C. § 7702B(f) Satisfy Rational Basis Review. ............. 7

      C.     Plaintiffs' Federalism Arguments Are Without Merit. ........................ 10

III.    PLAINTIFFS HAVE FAILED TO STATE A SUBSTANTIVE DUE
PROCESS CLAIM UNDER BINDING CIRCUIT PRECEDENT. ................ 13

CONCLUSION........................................................................................................ 15

1

## TABLE OF AUTHORITIES

2

**CASES**                                                                                   **PAGES**

3   *Aleknagik Natives Ltd. v. Andrus,*
4       648 F.2d 496 (9th Cir. 1981). ............................................................... 2

5   *Ankenbrandt v. Richards,*
        504 U.S. 689 (1992)............................................................................... 11

6   *Bowen v. Gilliard,*
7       483 U.S. 587 (1987)............................................................................... 14

8   *Breiner v. Nevada Dep't of Corr.,*
        - F.3d -, 2010 WL 2681730 (9th Cir. July 8, 2010). ........................... 3

9   *In re Cardelucci,*
10      285 F.3d 1231 (9th Cir. 2002). ............................................................. 8

11  *Cook v. Gates,*
        528 F.3d 42 (1st Cir. 2008). ................................................................. 6

12  *DeShaney v. Winnebago County Dep't of Soc. Servs.,*
13      489 U.S. 189 (1989)............................................................................... 14

14  *Desert Outdoor Adver., Inc. v. Moreno Valley,*
        103 F.3d 814 (9th Cir. 1996). ............................................................... 2

15  *Dittman v. California,*
16      191 F.3d 1020 (9th Cir. 1999). ............................................................. 7

17  *Doe v. Heck,*
        327 F.3d 492 (7th Cir. 2003). ............................................................... 13

18  *Duchesne v. Sugarman,*
19      566 F.2d 817 (2nd Cir. 1977)................................................................ 13

20  *FCC v. Beach Commc'ns,*
        508 U.S. 307 (1993)............................................................................... 7

21  *FW/PBS, Inc. v. Dallas,*
        493 U.S. 215 (1990)............................................................................... 5
22
    *Fitzgerald v. Racing Ass'n of C. Iowa,*
23      539 U.S. 103 (2003)............................................................................ 9, 10

24  *Fleck and Associates, Inc. v. Phoenix,*
        471 F.3d 1100 (9th Cir. 2006). ............................................................. 15
25
    *Gill v. OPM,*
26      699 F. Supp. 2d 374 (D. Mass. 2010). ............................................. 7, 11

27  *In re Golinski,*
        587 F.3d 956 (9th Cir. Judicial Council, 2009). ................................. 6
28

*Gratz v. Bollinger,*
  539 U.S. 244 (2003)................................................................................ 3

*Grauvogel v. Comm'r of IRS,*
  768 F.2d 1087 (9th Cir. 1985). ............................................................. 10

*Heller v. Doe,*
  509 U.S. 312 (1993)................................................................................ 1

*Helvering v. Davis,*
  301 U.S. 619 (1937)............................................................................. 10

*High Tech Gays v. Defense Industr. Sec. Clearance Office,*
  895 F.2d 563 (9th Cir. 1990). ............................................................... 6

*Holmes v. Cal. Army Nat'l Guard,*
  124 F.3d 1126 (9th Cir. 1997). ............................................................. 6

*Lawrence v. Texas,*
  539 U.S. 558 (2003)................................................................... 6, 14, 15

*In re Levenson,*
  560 F.3d 1145 (9th Cir. Judicial Council, 2009). ................................. 6

*License Tax Cases,*
  72 U.S. (5 Wall.) 462 (1867). .............................................................. 10

*Lockhart v. Napolitano,*
  573 F.3d 251 (6th Cir. 2009). .............................................................. 12

*Los Angeles v. Lyons,*
  461 U.S. 95 (1983).................................................................................. 3

*Lyng v. Automobile Workers,*
  485 U.S. 360 (1988)............................................................................. 14

*Massachusetts v. HHS,*
  698 F. Supp. 2d 234............................................................................. 10

*Mayweathers v. Newland,*
  314 F.3d 1062 (9th Cir. 2002). ............................................................ 10

*Moore v. East Cleveland,*
  431 U.S. 494 (1977)............................................................................. 14

*Nat'l Parks Conservation Ass'n v. Norton,*
  324 F.3d 1229 (11th Cir. 2003). ........................................................... 8

*Oregon v. Legal Serv. Corp.,*
  552 F.3d 965 (9th Cir. 2009). .............................................................. 10

*Parker v. Hurley,*
  514 F.3d 87 (1st Cir. 2008).................................................................. 13

*Philadelphia Police & Fire Ass'n for Handicapped Children, Inc. v. Philadelphia*,
    874 F.2d 156 (3d Cir. 1989)................................................................... 14

*Philips v. Perry*,
    106 F.3d 1420 (9th Cir. 1997). ................................................................ 6

*Raich v. Gonzalez*,
    500 F.3d 850 (9th Cir. 2007). ............................................................... 15

*Regan v. Taxation with Representation of Wash.*,
    461 U.S. 540 (1983)..................................................................... 10, 14

*Richards v. United States*,
    683 F.2d 1219 (9th Cir. 1981). ............................................................... 8

*Romer v. Evans*,
    517 U.S. 620 (1996)........................................................................ 6

*San Antonio Indep. Sch. Dist. v. Rodriguez*,
    411 U.S. 1 (1973)......................................................................... 10

*Santosky v. Kramer*,
    455 U.S. 745 (1982)....................................................................... 13

*Shaw v. Or. Pub. Employees' Ret. Bd.*,
    887 F.2d 947 (9th Cir. 1989). ................................................................ 7

*South Dakota v. Dole*,
    483 U.S. 203 (1987)....................................................................... 10

*Stanley v. Illinois*,
    405 U.S. 645 (1972)....................................................................... 13

*Taing v. Napolitano*,
    567 F.3d 19 (1st Cir. 2009).................................................................. 12

*Taniguchi v. Schultz*,
    303 F.3d 950 (9th Cir. 2002). ................................................................ 2

*Taxation with Representation of Wash.*,
    461 U.S. at 549........................................................................... 14

*Teigen v. Renfrow*,
    511 F.3d 1072 (10th Cir. 2007). .............................................................. 8

*Troxel v. Granville*,
    530 U.S. 57 (2000)........................................................................ 13

*United States v. Jones*,
    231 F.3d 508 (9th Cir. 2000). ............................................................... 10

*U.S. R.R. Ret. Bd. v. Fritz*,
    449 U.S. 166 (1980)........................................................................ 9

*United States v. Mussari,*
  95 F.3d 787 (9th Cir. 1996). ........................................................ 11

*Vance v. Bradley,*
  440 U.S. 93 (1979)..................................................................... 9

*Whitmore v. Arkansas,*
  495 U.S. 149 (1990)................................................................... 2

*Witt v. Dep't of the Air Force,*
  527 F.3d 806 (9th Cir. 2008). ........................................... 6, 14, 15

*Wooley v. Baton Rouge,*
  211 F.3d 913 (5th Cir. 2000). ..................................................... 13

## FEDERAL LAWS & REGULATIONS

U.S. Const. art. I, § 8..................................................................... 8, 10

U.S. Const. amend XVI. .................................................................. 10

8 U.S.C. § 1151(b)(2)(A)(i). ........................................................... 12

8 U.S.C. § 1154(c). ....................................................................... 12

8 U.S.C. § 1186a(d)(1)(A)(i)(III). ..................................................... 12

26 U.S.C. § 2(b)(2)(B). .................................................................. 12

26 U.S.C. § 7702B(f). ............................................................. *passim*

26 U.S.C. § 7702B(f)(2)(C)(iii) . ....................................................... 9

42 U.S.C. § 416(b). ...................................................................... 12

42 U.S.C. § 416(d)(4). ................................................................... 12

42 U.S.C. § 671 ........................................................................... 11

42 U.S.C. § 675(5). ...................................................................... 11

42 U.S.C. § 1382c(d)(2).................................................................. 12

Social Services Amendments of 1974,
  Pub. L. No. 93-647, 88 Stat. 2337 (1975).......................................... 11

Child Support Recovery Act of 1992,
  Pub. L. No. 102-521, 106 Stat. 3403 (1992)........................................ 11

Full Faith and Credit for Child Support Orders Act,
  Pub. L. No. 103-383, 108 Stat. 4063(1994).......................................... 11

Child Support Performance and Incentive Act of 1998,
  Pub. L. No. 105-200, 112 Stat. 645(1998)........................................... 11

Working Families Tax Relief Act of 2004
  Pub. L. No. 108-311, § 207(25), 118 Stat. 1166, 1177 (2004). .................................................. 9

**LEGISLATIVE MATERIAL**

H.R. Rep. No. 104-664 (1996), *reprinted in* 1996 U.S.C.C.A.N. 2905. ...................................... 7

**MISCELLANEOUS**

Cal. Dep't of Insurance Long Term Care Sample Rates (http://interactive.web.insurance.ca.
  gov/survey/survey?type=longTermCareSurvey&event=longTermCareSearch)..................... 5

CalPERS Long-Term Care Members Can Expect Premium Increase Options
  This Month (http://www.calpers.ca.gov/index.jsp?bc=/member
  ltc/premium-increase-options.xml). .......................................................................................... 4

**INTRODUCTION**

As stated in our opening brief, this Administration believes the Defense of Marriage Act ("DOMA") is discriminatory and should be repealed. Plaintiffs' constitutional challenge to DOMA as applied through Internal Revenue Code ("I.R.C.") § 7702B(f) regarding state-maintained long-term care insurance plans, however, must be rejected because the statutes satisfy the controlling rational basis standard of review. Plaintiffs do not seriously contest that rational basis standard applies here under existing Circuit precedent. Their central argument is that Congress had no legitimate interest in excluding same-sex spouses and domestic partners from the long-term care insurance program maintained by the California Public Employees' Retirement System ("CalPERS"). As discussed below, the focus of the constitutional inquiry is not whether Section 3 of DOMA is rendered irrational when applied to the specific circumstances of any case, such as the tax code at issue here. Rather, the inquiry is whether there is any reasonably conceivable state of facts that could provide a rational basis for each of the challenged statutes. *See Heller v. Doe*, 509 U.S. 312, 319 (1993). We have shown that the 1996 Congress that enacted DOMA could have determined that DOMA rationally serves a legitimate government interest in maintaining the *status quo* of the definition of marriage for purposes of federal law, and that I.R.C. § 7702B(f) is similarly rational, despite its exclusion of domestic partners from a state plan. Plaintiffs have failed to rebut these showings. Moreover, even with their submission of supporting declarations, they have still failed to show that they have standing at this time.

**ARGUMENT**

**I.     THE COMPLAINT FAILS TO ESTABLISH PLAINTIFFS' STANDING**

   **A.     Futility Does Not Overcome Plaintiffs' Failure to Show Adverseness**.

In their opening brief (pp. 8-12), federal defendants demonstrated that two of the three plaintiff couples failed to allege a concrete, personal stake in the outcome of this litigation. Despite their declaration of interest in enrolling in CalPERS's long-term care program as part of their family financial planning, the two employee Plaintiffs never enrolled over the many years in which they were eligible to do so despite having been in long-term committed relationships with their spouse Plaintiffs; nor have their spouse Plaintiffs ever attempted to enroll in the program. The two

employee Plaintiffs have submitted declarations asserting their and their spouses' intent to purchase the coverage. *See* Decl. of Carolyn Light, ¶ 14; Decl. of Patricia Fitzsimmons, ¶ 14. They also argue that there was no need for their spouse Plaintiffs to apply for enrollment because it would have been futile. Under prevailing case law, however, a more affirmative showing is needed to establish that Plaintiffs' asserted injury is "concrete in both a qualitative and temporal sense." *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990).

Plaintiffs cite *Taniguchi v. Schultz*, 303 F.3d 950, 957 (9th Cir. 2002), for the proposition that "standing does not require exercises in futility." But in *Taniguchi*, the alien petitioner had plainly suffered an injury in fact: she was subject to a deportation order, *id.* at 953-54, and the statute she challenged on equal protection grounds indisputably denied her any possibility of obtaining a discretionary waiver of deportation. *Id.* at 956-57. Because no application for a waiver could have obviated this injury, her failure to apply did not deprive her of standing. Unlike an alien denied the ability to seek relief from a concrete order of deportation, however, the two plaintiff couples here have failed to show that DOMA's existence has caused them any injury. They have failed to purchase, or apply for, not only CalPERS's long-term care coverage, but also any alternative private form of coverage. Merely expressing an "interest" in obtaining a DOMA-governed benefit is insufficient to establish an Article III injury.

The two cases cited in support of the futility discussion in *Taniguchi*, 303 F.3d at 957, are equally unhelpful to Plaintiffs. In *Desert Outdoor Adver., Inc. v. Moreno Valley*, 103 F.3d 814 (9th Cir. 1996), billboard operators had standing to challenge a city permit requirement that "flatly prohibited [their] signs," even though the operators had not applied for a permit, because the city had already brought "state court actions to compel the operators to remove their signs." *Id.* at 818. In *Aleknagik Natives Ltd. v. Andrus*, 648 F.2d 496 (9th Cir. 1981), the plaintiffs' quiet title and ejectment suit under the Alaska Native Claims Settlement Act was not barred by their failure to exhaust administrative remedies because pursuing such remedies would have been futile. But the futility doctrine discussed there was an exception to the prudential administrative exhaustion requirement, which is distinguished from the jurisdictional, Article III standing requirement. *See id.* at 499. More importantly, there was concrete adverseness because the plaintiffs' suit concerned

1    lands that they had applied to administer as townsites. *Id.* at 498-99.

2        The other cases Plaintiffs cite confirm that courts accept the futility argument only where the

3    requisite concrete adverseness has already been established. For example, in *Gratz v. Bollinger*, 539

4    U.S. 244 (2003), a prospective student had standing to challenge the university's use of race in

5    undergraduate admissions even though he had not applied to transfer to the university. The

6    prospective student, however, had "applied to the University as a freshman applicant . . . [and] was

7    denied admission even though an underrepresented minority applicant with his qualifications would

8    have been admitted." *Id.* at 262. The Supreme Court found that "[a]fter being denied admission,

9    [the student] demonstrated that he was 'able and ready' to apply as a transfer student should the

10   University cease to use race in undergraduate admissions." *Id.* Similarly, in *Breiner v. Nevada*

11   *Dep't of Corr.*, – F.3d –, 2010 WL 2681730, *3 (9th Cir. July 8, 2010), an employment

12   discrimination case under Title VII of the Civil Rights Act of 1964, a male correctional officer had

13   standing under Title VII as a nonapplicant to challenge the state's decision to limit the correctional

14   lieutenant positions to women in women prisons, because in addition to his declaration that he was

15   deterred from applying because of the discriminatory policy, he "had previously applied for

16   correctional lieutenant positions." *Id.*

17       Here, two of the three couples have presented no more than their simple declaration that they

18   intend to apply for enrollment in CalPERS's long-term care plan, if and when the spouse Plaintiffs

19   are eligible to apply. Those declarations are insufficient to demonstrate the requisite concrete

20   adverseness, particularly given the two employee Plaintiffs' own non-enrollment. They cite the

21   efforts of Plaintiffs Dragovich, Gaitley and their counsel to enroll Gaitley in the plan, including that

22   Dragovich has been an enrollee since 1999. *See* Pl. Br. at 10. Those efforts – while sufficient for

23   Dragovich and Gaitley on this narrow question, as we previously have recognized, *see* Fed. Def.

24   Opening Br. at 10 – cannot be attributed to other Plaintiffs to establish those Plaintiffs' "personal

25   stake in the outcome." *Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983).

26   **B.      Plaintiffs Have Not Established That They Have Been Harmed By Their**
         **Inability to Access CalPERS's Long-Term Care Program.**
27
28       Central to Plaintiffs' case is the "importance of long-term care to families" and the potentially

"catastrophic" impact such care might have on their financial security. *See* Pl. Br. at 2. Congress was aware of these concerns when it enacted I.R.C. § 7702B to provide favorable tax treatment to qualified long-term care insurance contracts. *See* Fed. Def. Opening Br. at 4. It further included subsection (f) to clarify that a state-maintained long-term plan similarly could qualify for the favorable tax treatment. *See id.* Plaintiffs argue that they prefer CalPERS's plan as opposed to an equally tax-qualified private plan because CalPERS is a trusted state agency, and offers higher daily benefits, lower premiums, inflation protection, and the administrative conveniences of electronic fund transfer and payroll/pensions deductions for premium payments. Despite these alleged differences, Plaintiffs have not established that they will suffer any economic injury by being denied access to CalPERS's plan. The plan has had to suspend open enrollment for two years because of a 33% deficit. CalPERS also recently increased premiums by 15 to 22%, and announced an additional 5 percent increase per year through 2014 for those members who select plans that continue to maintain lifetime benefits with inflation protection.[1]

Plaintiffs quote (at p. 12) a CalPERS's "Fact Sheet" which states that "[e]ven with the proposed rate increase, the CalPERS Long-Term Care Program compares favorably with two major commercially available plans." The Fact Sheet, however, shows that while CalPERS compared favorably in 2009 to two private plans, the 2010 premiums for those two plans are listed as "unknown" and hence cannot be compared with CalPERS's increased premiums.[2] Similarly, Plaintiffs' assertion (at p. 13) that CalPERS offers a higher daily benefit amount as compared to most private plans is unsupported by the policy comparison guide they cite from the California Department of Insurance.[3] In fact, the guide confirms that there is a wide variety of services and

---

[1] *See* CalPERS Long-Term Care Members Can Expect Premium Increase Options This Month (http://www.calpers.ca.gov/index.jsp?bc=/member/ltc/premium-increase-options.xml).

[2] Another document on which Plaintiffs rely – Long Term Care Market Comparison, Ex. D to Decl. of Claudia Center – is similarly inconclusive. Some of the premiums have keys that were not explained on the face of the document, and only a very small number of plans were compared in what the document itself calls as a "limited review."

[3] All the guide shows is that for purposes of comparing the different private plans, the guide holds as constant the factor of the daily benefit amount at $100 (whereas, in the Fact Sheet,

1   options offered by a large number of federally tax-qualified private plans.[4]  In sum, whether

2   CalPERS compares favorably with private plans for Plaintiffs' specific needs is at best a factual

3   question, given the number of variables.  Standing, however, "cannot be "inferred argumentatively

4   from averments in the pleadings," and the burden is on Plaintiffs who seek the exercise of

5   jurisdiction in their favor to affirmatively establish that they have suffered or will likely suffer an

6   injury by being denied access to CalPERS's long-term care program, which they have not done.

7   *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990).

8          **C.     Plaintiffs Have Failed to Establish Other Standing Requirements.**

9          Federal defendants argued in their opening brief (at pp. 12-13) that Plaintiffs' injuries are not

10  fairly traceable to the challenged federal statutes and that the requested relief likely would not redress

11  the alleged harm.  This is so because CalPERS has suspended open enrollment for two years and the

12  only couple who has alleged an attempt to enroll inquired about the plan almost six months after the

13  closure of the most recent open-enrollment period.  Also, it remains unknown when CalPERS will

14  accept new applicants.  Plaintiffs argue (at p. 14) that CalPERS is statutorily required to establish

15  periodic open enrollment and its Board has "signaled" its intent to do so in the future.  Until

16  CalPERS resumes its periodic enrollment or otherwise is affirmatively required to accept new

17  applicants, however, the spouse Plaintiffs' claim that they would be able to access the plan if this

18  Court strikes down DOMA and § 7702B(f) remains speculative.

19
20  **II.    PLAINTIFFS HAVE FAILED TO STATE AN EQUAL PROTECTION CLAIM
        UNDER BINDING CIRCUIT PRECEDENT**

21         **A.     Rational Basis Review Applies to Plaintiffs' Equal Protection Challenge**.

22         Plaintiffs do not seriously advocate for a different level of scrutiny other than the highly

23
24  _____

    CalPERS used the $150 daily benefit amount as a constant factor for purposes of comparison).

25
26         [4] A search using the California sample rate comparison guide for three-year and lifetime
    plans with or without inflation protection (and with the daily benefit amount at $100, the
    issuance age at 50, and the elimination period at 90 days) yields 32 tax-qualified private plans.
27  *See* Cal. Dep't of Insurance Long Term Care Sample Rates (http://interactive.web.insurance.ca.
    gov/survey/survey?type=longTermCareSurvey &event=longTermCareSearch).
28

1  deferential rational basis review.[5]  *See* Pl. Br. at 15.  Indeed, they cannot, because binding circuit

2  precedent holds that "[gays and lesbians] do not constitute a suspect or quasi-suspect class entitled

3  to greater than rational basis scrutiny under the equal protection component of the Due Process

4  Clause."  *High Tech Gays v. Defense Industr. Sec. Clearance Office*, 895 F.2d 563, 574 (9th Cir.

5  1990); *accord Philips v. Perry*, 106 F.3d 1420, 1425 (9th Cir. 1997); *Holmes v. Cal. Army Nat'l*

6  *Guard*, 124 F.3d 1126, 1132 (9th Cir. 1997); *Witt*, 527 F.3d at 821.

7       As an initial matter, in applying the rational basis review, Plaintiffs devote significant energy

8  to refuting various purported government interests in enacting DOMA identified in the House

9  Judiciary Committee report.  *See* Pl. Br. at 16-19.[6]  The government, however, has expressly

10  disavowed any reliance on those interests.  *See* Fed. Def. Opening Br. at 19 n.16.  Accordingly, this

11  Court need not address these arguments.  Plaintiffs' references (at pp. 5, 22) to the comments of

12  individual legislators in connection with DOMA's enactment are equally beside the point.  The

13  government does not rely on – and in fact has expressly disavowed – those comments.  Moreover,

14  where, as here, the government can identify a non-invidious rationale for a federal statute, the fact

15  that individual legislators may have been motivated by discriminatory animus is legally irrelevant.

16  *See Cook v. Gates*, 528 F.3d 42, 61-62 (1st Cir. 2008); *cf. Romer v. Evans*, 517 U.S. 620, 632 (1996)

17

18

19      [5]  Plaintiffs acknowledge that the Court need not reach the issue of the level of scrutiny, but contend that "it is likely that some form of heightened constitutional scrutiny applies to

20  classifications based upon sexual orientation," citing *Witt v. Dep't of the Air Force*, 527 F.3d 806 (9th Cir. 2008).  *See* Pl. Br. at 15 n.30.  Although *Witt* applied heightened scrutiny to an as-

21  applied due process challenge to the military's Don't Ask Don't Tell policy, it explicitly adhered to prior circuit precedent applying rational basis review to equal protection challenges to the

22  policy, concluding that such precedent "was not disturbed by *Lawrence* [*v. Texas*, 539 U.S. 558 (2003)]."  *Witt*, 527 F.3d at 821.

23

24      [6]  In support of their claims, Plaintiffs also cite *In re Levenson*, 560 F.3d 1145, 1149 (9th Cir. Judicial Council, 2009), in which Judge Reinhardt, acting pursuant to his administrative

25  capacity as an Employee Dispute Resolution ("EDR") officer, determined that a federal employee's same-sex spouse could be made the employee's beneficiary under the Federal

26  Employee Health Benefits Act, despite DOMA.  *In re Levenson* has no binding effect because it is an administrative decision, like another similar EDR order cited by Plaintiffs, *In re Golinski*,

27  587 F.3d 956 (9th Cir. Judicial Council, 2009) (Kozinski, J.).  Moreover, neither order

28  considered the government interests proffered by federal defendants here in support of DOMA.

1   (invaliding, on equal protection grounds, state law prohibiting the enactment of any measure
2   designed to protect individuals due to their sexual orientation because the only possible justification
3   for the state law was "animus toward the class it affects").

4          Plaintiffs also criticize the government's interest in justifying DOMA as *post hoc*, Pl. Br. at
5   9, and fault Congress for failing to examine DOMA's impact on federal law at the time of DOMA's
6   enactment, *id.* at 4.[7]   But under rational basis review, "it is entirely irrelevant for constitutional
7   purposes whether the conceived reason for the challenged distinction actually motivated the
8   legislature." *FCC v. Beach Commc'ns*, 508 U.S. 307, 313 (1993).  A court may "hypothesize the
9   motivations of the . . . legislature to find a legitimate objective promoted by the provision under
10  attack." *Shaw v. Or. Pub. Employees' Ret. Bd.*, 887 F.2d 947, 948-49 (9th Cir. 1989).  In other
11  words, the court "[does] not require that the government's action actually advance its stated
12  purposes, but merely look[s] to see whether the government *could* have had a legitimate reason for
13  acting as it did." *Dittman v. California*, 191 F.3d 1020, 1031 (9th Cir. 1999).  As discussed below,
14  the Congress could have had a legitimate reason for enacting Section 3 of DOMA and I.R.C.
15  § 7702B(f).

16       **B.      DOMA and I.R.C. § 7702B(f) Satisfy Rational Basis Review.**

17         The 1996 Congress could have reasoned that Section 3 of DOMA serves the legitimate
18  government interest in maintaining the *status quo* of the definition of marriage for purposes of
19  providing federal benefits pending evolution of the issue of same-sex marriage in the States.  *See*
20  Fed. Def. Opening Br. at 19-22; *but see Gill v. OPM*, 699 F. Supp. 2d 374 (D. Mass. 2010) (rejecting
21  this government interest as irrational).  Plaintiffs contend that consistency or preserving the *status*
22  *quo* is not a legitimate government interest because it is "not an end in and of itself, but rather a
23  means to an end." Pl. Br. at 20 (quoting *Gill*, 699 F. Supp. 2d at 393).  Plaintiffs are wrong.  In
24  preserving the *status quo* of the definition of marriage then in use in all fifty States in 1996, Section

25

26         [7]  Congress, however, was aware of the significant impact that DOMA would have on
    federal law.  *See* H.R. Rep. No. 104-664 (1996) at 5-6, *reprinted in* 1996 U.S.C.C.A.N. 2905,
27  2914-15 (noting that recognition of same-sex marriages could have "profound implications for
    federal law," and that "[t]he word 'marriage' appears in more than 800 sections of federal
28  statutes and regulations, and the word 'spouse' appears more than 3,100 times").

3 allowed Congress to adopt a wait-and-see approach in the face of evolving state approaches to same-sex marriages, thereby avoiding the need to immediately deal with the potentially significant and unpredictable impact on federal law that a State's recognition of same-sex marriage could have. At the time of DOMA's passage, more than one thousand federal statutory benefits, rights, and privileges depended on marital status as a factor. In light of this potential impact and recognizing that States were on the verge of considering a significant change regarding access to marriage, Congress reasonably could have decided that it was in the government's interest to maintain consistency and uniformity in distributing federal benefits and administering federal programs.

In other words, one of the "ends" to be served by DOMA is preserving the *status quo* at the federal level – namely, the definition of marriage that was adopted by all fifty States at that time – while waiting to see how a national debate is to be resolved. It is a "legitimate government interest" to "preserv[e] . . . the status quo" while long-term options are being evaluated. *Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1245 (11th Cir. 2003); *see also Teigen v. Renfrow*, 511 F.3d 1072 (10th Cir. 2007). Another "end" to be achieved is to have uniformity regarding federal benefits, which is a legitimate congressional goal. *See*, *e.g.*, U.S. Const. art. I, § 8 (assigning Congress task of "collect[ing] taxes . . . to . . . provide for the . . . general Welfare" and establishing "uniform Rules of Naturalization, and uniform Laws on the subject of Bankruptcies"). As the Ninth Circuit has said, achieving "uniformity within" a sphere of federal regulation is a "legitimate interest[]." *In re Cardelucci*, 285 F.3d 1231, 1236 (9th Cir. 2002). For example, in the realm of state spousal inheritance laws that vary depending on whether a state adopts community property or common-law rules, Congress has a "valid and rational basis for" creating its own set of distinct rules to "equaliz[e] the income tax burden between community property and common law property states." *Richards v. United States*, 683 F.2d 1219, 1225 & n.17 (9th Cir. 1981).

Plaintiffs argue that the interest in "allowing each state to decide" is not rationally advanced by DOMA and § 7702B(f) because the challenged exclusion is inconsistent with California law and public policy. *See* Pl. Br. at 21. The argument misses the mark because as we explained in our opening brief (at pp. 4-5), the interest in allowing States to debate the same-sex marriage issue and to decide the question for themselves is the rationale for Section 2 of DOMA, whose

1   constitutionality is not being challenged here.  Moreover, it is undisputed that since the enactment

2   of Section 2, almost all States have considered the underlying question without federal interference.

3        The exclusion of domestic partners from participation in a § 7702B(f) state plan is not

4   irrational because when I.R.C. § 7702B(f) was enacted in 1996, no State had a domestic partnership

5   law; even today there is wide variation as to what rights domestic partners have in the States that

6   recognize domestic partnerships.  *See* Fed. Def. Opening Br. at 23.  Congress also rationally could

7   have determined that the government interest in encouraging long-term care planning is sufficiently

8   served by (1) the expansive list of eligible relatives who may purchase a § 7702B(f) state plan; and

9   (2) the ability of domestic partners of state employees to purchase a qualified, private § 7702B policy

10  that provides the same tax benefits.  *Id.*

11       Plaintiffs have made no serious attempt to refute these arguments.  They note only that when

12  Congress "reenacted" § 7702B(f) in 2004, at least three States had enacted domestic partnership

13  legislation and yet Congress continued to fail to include domestic partners in § 7702B(f).  *See* Pl. Br.

14  at 6.  The amendment to § 7702B(f) in 2004, however, was a technical and conforming amendment.

15  *See* Pub. L. No. 108-311, § 207(25), 118 Stat. 1166, 1177 (2004) (substituting reference to the

16  definition of "dependent" with a new location of that definition in the tax code).   Plaintiffs'

17  challenge to the classification drawn by I.R.C. § 7702B(f) essentially is that it is underinclusive; they

18  argue that all conceivable categories of family members are included except for domestic partners.

19  But it is well established that legislative classifications may be "both underinclusive and

20  overinclusive" and "perfection is by no means required." *Vance v. Bradley*, 440 U.S. 93, 108 (1979).

21  Indeed, the task of classifying persons for benefits "'inevitably requires that some persons who have

22  an almost equally strong claim to favored treatment be placed on different sides of the line.'"

23  *Fitzgerald v. Racing Ass'n of C. Iowa*, 539 U.S. 103, 107 (2003) (quoting *U.S. R.R. Ret. Bd. v. Fritz*,

24  449 U.S. 166, 179 (1980))."  The California legislature itself engaged in similar line drawing by

25  allowing only a subset of those family members identified in § 7702B(f)(2)(C)(iii) to enroll in

26  CalPERS's long-term care plan.

27

28

1

### C.     Plaintiffs' Federalism Arguments Are Without Merit.

2      As noted before, Plaintiffs claim that the challenged exclusion forces California to violate

3 its own constitutional law and public policy and "to 'engage in invidious discrimination against its

4 own citizens.'"  Pl. Br. at 21 (quoting *Massachusetts v. HHS*, , 698 F. Supp. 2d 234, 236 (D. Mass.

5 2010)).  To the extent Plaintiffs are raising a Tenth Amendment argument, "[o]nly states have

6 standing to pursue [such] claims," *Oregon v. Legal Serv. Corp.,* 552 F.3d 965, 972 (9th Cir. 2009),

7 and Plaintiffs cannot recast it as a rational basis argument.  Moreover, Plaintiffs do not appear to

8 dispute that Congress acted within its powers when enacting DOMA and I.R.C. § 7702B(f).  *See*

9 *United States v. Jones*, 231 F.3d 508, 515 (9th Cir. 2000) ("We have held that if Congress acts under

10 one of its enumerated powers, there can be no violation of the Tenth Amendment.").  Article I of the

11 Constitution empowers Congress to expend funds "for the . . . general Welfare of the United States."

12 *See* U.S. Const. art. I, § 8.  Under this power, "Congress possesses great leeway to determine which

13 statutory aims advance the general welfare."  *Mayweathers v. Newland*, 314 F.3d 1062, 1066 (9th

14 Cir. 2002).  "The Supreme Court has made it clear that '[w]hen money is spent to promote the

15 general welfare, the concept of welfare . . . is shaped by Congress.'"  *Id.* (quoting *Helvering v. Davis*,

16 301 U.S. 619, 645 (1937)); *see South Dakota v. Dole*, 483 U.S. 203, 207 (1987) (referring to

17 "breadth" of spending power).  Congress also possesses "the greatest freedom in classification" when

18 exercising its taxing power under the General Welfare Clause.  *San Antonio Indep. Sch. Dist. v.*

19 *Rodriguez,* 411 U.S. 1, 40-41 (1973); *see* U.S. Const., art. I, § 8, cl. 1; amend. XVI; *License Tax*

20 *Cases*, 72 U.S. (5 Wall.) 462, 471 (1867); *Regan v. Taxation with Representation of Wash.*, 461 U.S.

21 540, 547 (1983); *Grauvogel v. Comm'r of IRS*, 768 F.2d 1087, 1089 (9th Cir. 1985).

22      Section 3 of DOMA and I.R.C. § 7702B(f) fall within these enumerated powers because

23 Congress unquestionably may decide who is entitled to federal tax benefits, or specifically here, who

24 is eligible for exemption from federal income taxation.  *But see Massachusetts v. HHS*, 698 F. Supp.

25 2d 234 (holding that DOMA violates the Tenth Amendment and the Spending Clause).  "[T]he

26 Constitution grants legislators, not courts, broad authority (within the bounds of rationality) to decide

27 whom they wish to help with their tax laws and how much help those laws ought to provide."

28 *Fitzgerald*, 539 U.S. at 107.  In short, because Congress was acting within its enumerated

1    constitutional powers, the fact that Congress had not chosen to codify a definition of marriage for

2    purposes of federal law prior to 1996 does not render the enactment constitutionally suspect. *Cf.*

3    *United States v. Mussari*, 95 F.3d 787, 790 (9th Cir. 1996) (upholding the Child Support Recovery

4    Act over objection that Congress was seeking to regulate a "fundamental familial relation").

5    Admittedly, the practical effect of DOMA and I.R.C. § 7702B(f) is that CalPERS has chosen not to

6    enroll the same-sex spouses and domestic partners of public employees in its long-term care plan so

7    as not to jeopardize the plan's federal tax status. But California may also choose, among other

8    potential measures, to subsidize public employees' same-sex spouses and domestic partners to

9    purchase private § 7702B plans, even if the State's own plan is entirely self-funded by enrollee

10   premiums and unsupported by the State.

11       Plaintiffs argue that "the historic deference of Congress to state family law, including

12   changing state law definitions of marriage, casts doubt upon the legitimacy of the [government's]

13   stated interest [in] a uniform, federal definition of marriage (which actually marked a departure from

14   the 'status quo')." Pl. Br. at 19. According to Plaintiffs, domestic relations, and especially marriage,

15   "had always decisively been the domain of the states," and through DOMA, "Congress purported

16   to define familial relationship at the federal level for the first time." *Id.* at 19-20 n. 34 (citing *Gill*,

17   699 F. Supp. 2d 374). To be sure, the law of domestic relations has traditionally been reserved

18   largely to the States. States traditionally decide, for example, questions regarding who may marry,

19   the dissolution of marriage, division of marital property, child custody, and the payment and amount

20   of alimony or child support.[8] *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992). Section 3 of

21   DOMA, however, in no way displaces state law with respect to questions of who may marry, or

22

23       [8] Congress, however, has enacted many statutes structuring and strengthening a child's

24   right to parental support. *See, e.g.*, Social Services Amendments of 1974, Pub. L. No. 93-647, 88
     Stat. 2337 (1975); Child Support Recovery Act of 1992, Pub. L. No. 102-521, 106 Stat. 3403

25   (1992); Full Faith and Credit for Child Support Orders Act, Pub. L. No. 103-383, 108 Stat. 4063
     (1994); Child Support Performance and Incentive Act of 1998, Pub. L. No. 105-200, 112 Stat.

26   645 (1998). Congress has also used federal funding to require States to adopt specific rules for
     determining when existing parent-child relationships should be protected, when parental

27   termination proceedings should be initiated, and when adoption should be pursued. *See* 42

28   U.S.C. §§ 671, 675(5).

concerning divorce, custody, and other matters of family law. Instead, it addresses areas of quintessential federal concern: the meaning of federal statutes, administration of federal programs, and distribution of federal benefits.

In fact, when regulating in the federal sphere, Congress frequently has modified state definitions of domestic-law concepts. The Internal Revenue Code, for example, considers a person unmarried if his or her spouse is a nonresident alien. *See* 26 U.S.C. § 2(b)(2)(B). The Social Security program defines who is a spouse, a divorced spouse, or a surviving spouse in ways that depart from state definitions. *See*, *e.g.*, 42 U.S.C. § 416(d)(4) (defining "divorced husband" to mean a man divorced from an individual but only if he had been married to such individual for a period of 10 years immediately before the effective date of the divorce); *id.* § 416(b) (providing detailed definition of the term "wife"). Federal law definition of marriage for a particular federal program may also be independent of state law. For example, whether or not a State recognizes common-law marriage, couples are considered married under the Supplemental Social Security for the Aged, Blind, and Disabled, if "they are found to be holding themselves out to the community in which they reside as husband and wife." 42 U.S.C. § 1382c(d)(2). Federal immigration law, on the other hand, does not recognize a state marriage if it was entered into for the purposes of procuring an alien's admission as an immigrant or otherwise evading the immigration laws. *See* 8 U.S.C. §§ 1154(c), 1186a(d)(1)(A)(i)(III). In States where marriage ceases upon the death of one spouse, an alien whose citizen spouse has died remains the citizen's "immediate relative" for purposes of federal immigration law if certain conditions are met. 8 U.S.C. § 1151(b)(2)(A)(i); *accord Taing v. Napolitano*, 567 F.3d 19, 21 (1st Cir. 2009); *Lockhart v. Napolitano*, 573 F.3d 251, 259-60 (6th Cir. 2009).

In any event, the asserted inconsistency between Congress's perceived failure in the past to address, for purposes of federal programs, disparities in state marriage laws and its decision to do so by enacting DOMA has no bearing on the constitutional question at issue. Even if the decisions of prior Congresses with respect to other marriage-related issues were somehow relevant to the 1996 Congress's decision to enact DOMA, none of those issues would have had the same significant, pervasive impact on the distribution of marriage-based federal benefits. In sum, Section 3 of DOMA

and I.R.C. § 7702B(f) rationally serve a legitimate government interest, and this Court should reject Plaintiffs' equal protection challenge to those statutes.

## III.   PLAINTIFFS HAVE FAILED TO STATE A SUBSTANTIVE DUE PROCESS CLAIM UNDER BINDING CIRCUIT PRECEDENT

Plaintiffs have similarly failed to state a substantive due process claim because Section 3 of DOMA and I.R.C. § 7702B(f) do not burden Plaintiffs' exercise of a fundamental right, and as already discussed above, these statutes satisfy rational basis review. As with their equal protection challenge, Plaintiffs do not seriously dispute that rational basis review applies to their due process claim. *See* Pl. Br. at 25. Nevertheless, they argue that the challenged exclusion burdens their exercise of a fundamental right on the basis of sexual orientation because it allegedly "intrud[es] into the definition of family" and "burden[s] families of gay and lesbian couples seeking to exercise their fundamental rights to engage in family decision-making and planning." *Id.* at 24; *see also id.* (alleging that challenged exclusion burdens "their ability and autonomy to engage in financial and long-term care planning with their lawful spouses and domestic partners").

Although there is a fundamental constitutional right to the "integrity of the family unit," *see Stanley v. Illinois*, 405 U.S. 645, 651 (1972), those rights do not encompass the types of interests Plaintiffs identify here. The right to family integrity has been held to encompass such rights as the "the right of the family to remain together without the coercive interference of the awesome power of the state," *Duchesne v. Sugarman*, 566 F.2d 817 (2nd Cir. 1977); *accord Doe v. Heck*, 327 F.3d 492, 524 (7th Cir. 2003); *Wooley v. Baton Rouge*, 211 F.3d 913, 921 (5th Cir. 2000); a right to the care, custody, control, and management of one's children, *Santosky v. Kramer*, 455 U.S. 745, 753-54 (1982); *Troxel v. Granville*, 530 U.S. 57 (2000); and a "right of familial privacy," *Parker v. Hurley*, 514 F.3d 87, 102 (1st Cir. 2008).

Section 3 of DOMA and I.R.C. § 7702B(f) do not infringe on an aspect of the right to family integrity. They do not affect whether a same-sex couple married or registered as domestic partners under state law may "remain together," enjoy "familial privacy," or raise children as permitted by state law. At bottom, Plaintiffs seek the right of access to a state-maintained long-term care insurance plan that receives certain federal tax benefits. The denial of such access does not infringe

1   any fundamental right.  Even assuming that Plaintiffs are unable to procure any comparable long-

2   term care insurance in the private market and the lack of CalPERS's long-term care insurance

3   possibly places significant financial strain on their family unit, making it harder for the them to

4   remain together or to provide for their children, the Supreme Court has made it clear that a

5   "legislature's decision not to subsidize the exercise of a fundamental right does not infringe the

6   right." *Taxation with Representation of Wash.,* 461 U.S. at 549; *see also DeShaney v. Winnebago*

7   *County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989).

8          The burden on Plaintiffs' fundamental right to familial integrity is at most indirect and thus

9   there is no constitutional violation.  For example, in *Bowen v. Gilliard*, 483 U.S. 587 (1987), the

10  Supreme Court upheld an amendment to the Aid to Families with Dependent Children program

11  despite evidence that the amendment severely impacted some families.  As the Court reasoned,

12  "[t]hat some families may decide to modify their living arrangements in order to avoid the effect of

13  the amendment, does not transform the amendment into an act whose design and direct effect are to

14  'intrud[e] on choices concerning family living arrangements.'" *Id.* at 601-02 (quoting *Moore v. East*

15  *Cleveland*, 431 U.S. 494, 499 (1977)); *accord Philadelphia Police & Fire Ass'n for Handicapped*

16  *Children, Inc. v. Philadelphia*, 874 F.2d 156, 165 (3d Cir. 1989) (upholding reduction in

17  "habilitative services" for mentally retarded persons because the reduction does not directly or

18  substantially burden such persons' fundamental right to family integrity; it "does not in itself require

19  members of the class to leave their family homes or enter institutions (although it may make it more

20  likely that they will do so)"); *see also Lyng v. Automobile Workers*, 485 U.S. 360, 368 (1988) (denial

21  of food stamps to households with striking workers does not infringe the strikers' right of

22  association, even though denying such benefits makes it harder for strikers to maintain themselves

23  and their families).

24         Finally, Plaintiffs cite *Lawrence v. Texas*, 539 U.S. 558 (2003), and *Witt v. Dep't of the Air*

25  *Force*, 527 F.3d 806 (9th Cir. 2009), for the proposition that the challenged exclusion constitutes an

26  "unnecessary intrusion by the government here into the private family lives of each of the Plaintiffs."

27  Pl. Br. at 25.  *Lawrence* and *Witt* are inapposite.  *Lawrence* involved a due process challenge to a

28  state statute criminalizing consensual homosexual sodomy and was "concerned with the autonomy

of the person to make choices about intimate relationships free from governmental stigmatization or sanction." *Fleck and Associates, Inc. v. Phoenix*, 471 F.3d 1100, 1104 (9th Cir. 2006); *accord Raich v. Gonzalez*, 500 F.3d 850, 862-63 (9th Cir. 2007). As for *Witt*, the Ninth Circuit applied heightened scrutiny to review an as applied challenge to the military's "Don't Ask, Don't Tell" policy because the allegations in that case, which were accepted as trued, supported an inference of government "intrusion into the personal and private life of an individual." 527 F.3d at 817 (quoting *Lawrence*, 539 U.S. at 578). Specifically, a military board in *Witt* recommended that the plaintiff be discharged after an investigation into the plaintiff's private life to determine her sexual orientation. *Id.* at 810.

No similar liberty interests in the "autonomy of the person" are implicated here because there is no government interference with Plaintiffs' autonomy to make choices about intimate relationships in their private lives. Plaintiffs' decisions regarding state-maintained long-term care insurance coverage simply are not the type of "personal decisions" that are "central to personal dignity and autonomy" and "to the liberty protected by the [Fifth] Amendment." *Lawrence*, 539 U.S. at 574 (quotation marks and citation omitted). Accordingly, this case does not implicate any fundamental right, and Plaintiffs correctly rest their case on the rational basis review, which compels that the constitutionality of Section 3 of DOMA and I.R.C. § 7702B(f) be upheld.

## CONCLUSION

For the foregoing reasons and the reasons set forth in federal defendants' opening brief, this Court should grant federal defendants' motion to dismiss.

Date:   August 26, 2010

Respectfully Submitted,

TONY WEST
Assistant Attorney General

ARTHUR R. GOLDBERG
Assistant Branch Director

_/s/ Jean Lin_
JEAN LIN
Senior Counsel
U.S. Department of Justice, Civil Division
Federal Programs Branch

Attorneys for Federal Defendants