United States District Court
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

MICHAEL DRAGOVICH; MICHAEL GAITLEY;       No. 10-01564 CW
ELIZABETH LITTERAL; PATRICIA
FITZSIMMONS; CAROLYN LIGHT; and
CHERYL LIGHT; on behalf of themselves     ORDER DENYING
and all others similarly situated,        FEDERAL
                                          DEFENDANTS'
          Plaintiffs,                     MOTION TO DISMISS
                                          (Docket No. 25)
     v.

UNITED STATES DEPARTMENT OF THE
TREASURY; TIMOTHY GEITHNER, in his
official capacity as Secretary of the
Treasury, United States Department of
the Treasury; INTERNAL REVENUE
SERVICE; DOUGLAS SHULMAN, in his
official capacity as Commissioner of
the Internal Revenue Service; BOARD
OF ADMINISTRATION OF CALIFORNIA
PUBLIC EMPLOYEES' RETIREMENT SYSTEM;
and ANNE STAUSBOLL, in her official
capacity as Chief Executive Officer,
CalPERS,

          Defendants.
_____/


     Plaintiffs bring a constitutional challenge to section three

of the Defense of Marriage Act (DOMA), 1 U.S.C. § 7, and section

7702B(f) of the Internal Revenue Code (I.R.C.), 26 U.S.C.

§ 7702B(f), which interfere with their ability to participate in a

state-maintained plan providing long-term care insurance.  Long-

term care insurance provides coverage when a person needs

assistance with basic activities of living due to injury, old age,

or severe impairments related to chronic illnesses, such as

Alzheimer's disease.  Enacted on August 21, 1996, as part of the

Health Insurance Portability and Accountability Act (HIPAA),

**United States District Court**
For the Northern District of California

section 7702B(f) provides favorable federal tax treatment to qualified state-maintained long-term care insurance plans for state employees.  26 U.S.C. § 7702B(f).  Section 7702B(f) disqualifies a state-maintained plan from this favorable tax treatment if it provides coverage to individuals other than certain specified relatives of state employees and former employees.  § 7702B(f)(2).  The provision's list of eligible relatives does not include registered domestic partners, but does include spouses.  26 U.S.C. § 7702B(f)(2)(C); 26 U.S.C. § 152(d)(2)(A)-(G)).  One month later, section three of the DOMA amended the United States Code to define, for federal law purposes, the term "spouse" to mean solely "a person of the opposite sex who is a husband or wife," and "marriage" to mean only "a legal union between one man and one woman as husband and wife."  1 U.S.C § 7.

Plaintiffs are three California public employees and their same-sex spouses, who are in long-term committed relationships legally recognized in California as both marriages and registered domestic partnerships.  California Public Employees' Retirement System (CalPERS) provides retirement and health benefits, including long-term care insurance, to many of the state's public employees, retirees, and their families.  CalPERS has refused to make available its Long-Term Care (LTC) Program to the same-sex spouses of the public employee Plaintiffs.

Plaintiffs contend that section three of the DOMA and I.R.C. § 7702B(f) violate the Fifth and Fourteenth Amendment

guarantees of equal protection and substantive due process.[1]
Plaintiffs have named both Federal and State Defendants.  Federal
Defendants move to dismiss under Federal Rule of Civil Procedure
12(b)(1), on grounds that this Court lacks subject matter
jurisdiction because Plaintiffs do not have standing.  In addition,
Federal Defendants move to dismiss Plaintiffs' action under Federal
Rule of Civil Procedure 12(b)(6) for failure to state claims for
violations of equal protection and substantive due process.  State
Defendants have answered the complaint and do not join the motion
to dismiss.

BACKGROUND

I. Facts Alleged in the Complaint

On a motion to dismiss under Rule 12(b)(6), the Court must
take as true the facts alleged in Plaintiffs' complaint.  The
following summarizes the facts alleged.

A. Long-term care insurance and the CalPERS LTC Program

Pursuant to California law, Defendant CalPERS Board of
Administration offers public employees and their families the
opportunity to purchase long-term care insurance during periodic
open enrollment periods.  Cal. Gov't. Code § 2166(a).

Long-term care insurance has advantages which health and
disability insurance, Medicare and MediCal generally do not offer.
The official guide explaining the CalPERS LTC Program states that

---

[1]   While the Fourteenth Amendment equal protection guarantee
does not directly apply to the United States, courts have
interpreted the Fifth Amendment's Due Process Clause as imposing on
the United States the same principles of equal protection
established in the Fourteenth Amendment.  Adarand Constructors,
Inc. v. Pena, 515 U.S. 200, 213-18 (1995).

**United States District Court**
For the Northern District of California

"Medicare, Medigap and health insurance may cover very limited long-term care," and such plans "were designed to pay for hospital and doctor care--not extended, personal care." Pls.' Compl. at ¶ 38. The CalPERS guide further warns, "Medi-Cal only pays for long-term care after [an individual has] exhausted most of [his or her] own assets and income." Id. at ¶ 38. Furthermore, long and short term disability insurance policies generally only "replace lost income due to disability" and "most long-term care is paid directly by individuals and their families." Id. Accordingly, the insurance offered by the CalPERS LTC Program provides control over where and how an individual receives care, allows an individual to preserve assets for other uses, and helps reduce the high financial and emotional cost of long-term care. Id. at ¶ 5. The CalPERS LTC Program, and long-term care insurance in general, are an important option for individuals and families to safeguard their financial and emotional well-being.

B. I.R.C. § 7702B

As noted above, the United States has provided important tax benefits for long-term care insurance policies. 26 U.S.C. § 7702B. Premiums for qualified long-term care contracts are treated as medical expenses and may be claimed as itemized deductions. 26 U.S.C. § 7702B(a)(4); 26 U.S.C. § 213(a), (d)(1)(D), (d)(10). Benefits received under a qualified long-term care insurance contract are excludable from gross income. 26 U.S.C. § 7702B(a)(2), (d); 26 U.S.C. § 104(a)(2).

Congress enacted these provisions because of the critical role of long term care insurance in protecting families. "The

4

legislation . . . provides tax deductibility for long term care insurance, making it possible for more Americans to avoid financial difficulty as the result of chronic illness."  142 Cong. Rec. S3578-01 at *3608 (Statement of Sen. McCain) (Apr. 18, 1996); <u>see also</u>, Joint Committee on Taxation, "Description of Federal Tax Rules and Legislative Background Relating to Long-Term Care Scheduled for a Public Hearing Before the Senate Committee on Finance on March 27, 2001," at 2001 WL 36044116 (provisions to grant tax advantages for long-term care plans were adopted "to provide an incentive for individuals to take financial responsibility for their long-term care needs.").

A state-maintained long-term care insurance program provides its beneficiaries the same favorable federal tax treatment if the program meets the requirements of I.R.C. § 7702B(b) and is offered only to the state's current and former employees, their spouses, and certain relatives.  <u>Id.</u> § 7702B(f).  Eligible relatives include children, grandchildren, brothers, sisters, stepbrothers, stepsisters, fathers, mothers, stepfathers, stepmothers, grandparents, nephews, nieces, aunts, uncles, sons-in-law, daughters-in-law, fathers-in-law, mothers-in-law, brothers-in-law, and sisters-in-law.  <u>See</u> I.R.C. §§ 7702B(f)(2)(C)(iii); 152(d)(2)(A)-(G).

Registered domestic partners are not included on the list of eligible relatives, 26 U.S.C. §§ 7702(B)(f)(1)-(2), 152(d)(2)(A)-(G), and because the DOMA's federal definition of spouse does not include same-sex spouses, 1 U.S.C. § 7, a state cannot allow same-sex couples to participate in its long-term care plan if it wishes

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

the plan to qualify for favorable tax treatment.  The CalPERS LTC
Program is a qualified plan under § 7702B and, as such, does not
permit same-sex spouses or registered domestic partners of state
employees to enroll.

In their answer to Plaintiffs' complaint, California
Defendants CalPERS and CalPERS Chief Executive Officer Stausboll
state that "they have no choice but to follow federal tax law."
CalPERS Ans. at ¶¶ 10-11.

C. Plaintiff Couples and their California Status

As noted earlier, Plaintiffs are current California public
employees--Michael Dragovich, Elizabeth Litteral, and Carolyn
Light--and their same-sex spouses.  Plaintiffs legally married
during the window of time that California allowed civil marriage
for same-sex couples, following the state supreme court's decision
in In re Marriage Cases, 43 Cal. 4th 757 (2008) (holding that the
denial of the right to marry to same-sex couples violated the state
constitution, and that strict scrutiny review applies to laws
burdening persons based on sexual orientation).  Although
Proposition 8 subsequently amended the California Constitution to
prohibit civil marriage for same-sex couples, Plaintiffs' marriages
remain valid under California law.  Strauss v. Horton, 46 Cal. 4th
364, 474 (2009)("[W]e conclude that Proposition 8 cannot be
interpreted to apply retroactively so as to invalidate the
marriages of same-sex couples that occurred prior to the adoption
of Proposition 8.  Those marriages remain valid in all respects.").

In addition to being legally married, Plaintiff couples are
registered domestic partners, pursuant to California Family Code

§ 297.  Since January 1, 2005, California law has provided,

> Registered domestic partners shall have the same rights,
> protections, and benefits, and shall be subject to the
> same responsibilities, obligations, and duties under
> law, whether they derive from statutes, administrative
> regulations, court rules, government policies, common
> law, or any other provisions or sources of law, as are
> granted to and imposed upon spouses.

Cal. Fam. Code § 297.5(a).  However, section (g) of the same statute specifically exempts CalPERS' federally qualified LTC Program from the general requirement that public agencies treat registered domestic partners as spouses.  Cal. Fam. Code § 297.5(g).

Plaintiff couples wish to enroll in the CalPERS LTC Program. Plaintiff Michael Dragovich has purchased long-term care coverage for himself through the CalPERS LTC Program since 1997.  In December, 2008, after marrying his long-time partner Michael Gaitley, Dragovich called the program's toll-free number to request enrollment materials for his spouse.  The program representative informed Dragovich that same-sex spouses were ineligible to enroll in the program, and the restriction was based on federal law. Following this telephone call, Dragovich's attorney wrote a letter to CalPERS on his behalf, objecting to the exclusion by CalPERS based on sexual orientation.  The Assistant Chief Counsel for CalPERS responded with a letter explaining that the program "is a tax-qualified plan for IRS purposes" and

> must meet certain IRS provisions, including providing
> enrollment to certain persons such as employees, former
> employees, their spouses, and others within a specified
> relationship.  Within this context, the federal Defense
> of Marriage Act (DOMA) currently recognizes a spouse to
> mean only a "person of the opposite sex."  The
> enrollment of a same-sex spouse into the [LTC Program]

United States District Court
For the Northern District of California

1    would therefore make the plan non-compliant with IRC
2    provisions based on DOMA and jeopardize the plan's tax-qualified status.

3    At the time the lawsuit was filed, Plaintiffs Elizabeth

4    Litteral and Patricia Fitzsimmons had been in a committed

5    relationship for over seventeen years, and were raising a fourteen

6    year old daughter.  They registered as domestic partners in 2006,

7    and married legally in 2008.  Litteral has been employed with the

8    University of California San Francisco Medical Center since 1995.

9    Plaintiff Litteral has not purchased long-term care coverage

10   through CalPERS, nor has either of them purchased coverage through

11   a private insurer.  They seek to join the CalPERS Program, because

12   the premiums are lower than those charged by private carriers of

13   individual policies.

14   Plaintiff Carolyn Light became an public employee at the

15   University of California San Francisco Medical Center in 2005.  She

16   and Cheryl Light registered as California domestic partners in

17   October, 2006, and legally married in June, 2008.  They are

18   planning to have children.  They consider long-term care coverage

19   necessary for financial planning as a family though, like

20   Plaintiffs Litteral and Fitzsimmons, they have not purchased any

21   long-term care insurance privately or through CalPERS.

22   CalPERS suspended enrollment in the LTC Program in 2009.

23   California Government Code § 21661(a) requires CalPERS to open

24   enrollment periodically.  Historically, CalPERS has opened

25   enrollment annually, beginning each April. CalPERS has stated that

26   it may hold open enrollment in 2011.

27

28
                                    8

## II. Facts Submitted by Declaration

In addition to the facts plead in the complaint, Plaintiffs have submitted declarations providing details about the CalPERS LTC Program, and their intent and efforts to participate in it. Plaintiffs may furnish affidavits or other evidence necessary to satisfy their burden of establishing subject matter jurisdiction. Colwell v. Department of Health and Human Services, 558 F.3d 1112, 1121 (9th Cir. 2009). Thus, in considering Federal Defendants' motion to dismiss under Rule 12(b)(1), the Court takes account of these additional facts.

The CalPERS LTC Program offers a number of advantages over private insurance. A market comparison chart produced by CalPERS indicates that CalPERS' Program is the lowest cost long-term care insurance plan compared to six other similar policies included in the comparison. Center Dec., Ex. D. The program guarantees that coverage is inflation protected and premiums cannot be increased due to changes in age or health. Id. at Ex. B. Furthermore, only the CalPERS Board of Administration can approve a premium increase. Id.

Plaintiffs affirmed their intent and financial ability to participate in the CalPERS LTC Program as soon as they are permitted. Michael Dragovich Dec. ¶¶ 27-28; Carolyn Light Dec. ¶¶ 13-14; Patricia Fitzsimmons Dec. ¶¶ 13-14. Dragovich attested that enrolling his spouse, Gaitley, in a long-term care policy is a necessary step in their financial planning. Dragovich Dec. at ¶ 7. He tried to enroll Gaitley in the CalPERS LTC Program in 2007, prior to their marriage, when he and Gaitley were solely recognized

United States District Court
For the Northern District of California

as registered domestic partners.  Dragovich Dec. at ¶ 9.  A CalPERS representative informed him then that domestic partners were not eligible for enrollment in the plan.  Id. at ¶ 10.  As noted above, in 2008, after marrying Gaitley, Dragovich again contacted CalPERS to request an application for the LTC Program.  Id. at ¶ 11.  After a CalPERS representative informed Dragovich that same-sex spouses were also ineligible due to federal law, he asked the representative to provide him with an application anyway.  Id. at ¶ 12-14.  Dragovich was told, however, that CalPERS would not furnish a program application for a same-sex spouse.  Id. at ¶ 15. On March 14, 2009, Dragovich made an additional attempt to secure an application for the LTC Program online through the CalPERS website.  Id. at Ex. A.  CalPERS responded that applications were not available, but his name would be added to a mailing list for such materials.  Though there was no open enrollment period for the LTC Program in 2009, during that year CalPERS made available a special, alternate application process for enrollment.  Center Dec., Ex. E.  Nonetheless, Dragovich never received an application to enroll his spouse.  Dragovich Dec. ¶ 18.

By correspondence, and at a public meeting of the CalPERS Board, Plaintiffs' counsel inquired about the exclusion and prospects for its elimination prior to initiating the lawsuit. Dragovich Dec., Ex. C; Center Dec., Ex. C.  CalPERS declined to commit to changing the policy.  Dragovich Dec., Ex. D; Center Dec., Ex. C.

As a component of her family's financial planning, Fitzsimmons has researched the cost and benefits of long-term care plans

United States District Court
For the Northern District of California

offered by several private insurers, and the CalPERS LTC Program, and believes that the CalPERS Program offers a greater value to herself and her spouse, Litteral.  Fitzsimmons Dec. at ¶¶ 5-8.

Fitzsimmons and Carolyn Light state that they have not applied for long-term care insurance for their spouses through the CalPERS LTC Program, because they understand that same-sex spouses and registered domestic partners are not eligible.  Fitzsimmons Dec. at ¶ 9; Carolyn Light Dec. at ¶ 6.  Carolyn Light specifically attributed her knowledge about the exclusion to Dragovich, and Dragovich confirmed that he spoke with her about his efforts to enroll his spouse in the LTC Program.  Id. at ¶ 8; Dragovich Dec. at ¶ 21.  Plaintiffs Carolyn Light and Litteral do not explain why they did not purchase long-term insurance for themselves through the CalPERS Program during prior open enrollment periods.  Carolyn Light has stated that CalPERS' refusal to recognize her marriage or registered domestic partnership with Cheryl Light has evidenced disrespect towards her family, and caused her anxiety about her family status.  Carolyn Light Dec. at ¶ 10.

LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim.  Fed. R. Civ. P. 12(b)(1).  Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case.  Federal subject matter jurisdiction must exist at the time the action is commenced.  Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988).  A federal court is presumed to lack subject matter jurisdiction until

11

the contrary affirmatively appears.  Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint.  Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987).  "In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit affidavits or any other evidence properly before the court . . . It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction."  Colwell, 558 F.3d at 1121 (internal citations omitted); Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003).  The court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction.  Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987).

Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true

United States District Court
For the Northern District of California

12

and construe them in the light most favorable to the plaintiff.  NL
Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).
However, this principle is inapplicable to legal conclusions;
"threadbare recitals of the elements of a cause of action,
supported by mere conclusory statements," are not taken as true.
Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009)
(citing Twombly, 550 U.S. at 555).

I. Subject Matter Jurisdiction--Standing

     Federal Defendants move to dismiss Plaintiffs' complaint for
lack of subject matter jurisdiction, arguing that Plaintiffs do not
have standing to pursue their claims.

     In Lujan v. Defenders of Wildlife, the Supreme Court explained

          the irreducible constitutional minimum of standing
          contains three elements.  First, the plaintiff must
          have suffered an injury in fact--an invasion of a
          legally protected interest which is (a) concrete and
          particularized, and (b) actual or imminent, not
          conjectural or hypothetical.  Second, there must be a
          causal connection between the injury and the conduct
          complained of--the injury has to be fairly traceable
          to the challenged action of the defendant, and not the
          result of the independent action of some third party
          not before the court.  Third, it must be likely, as
          opposed to merely speculative, that the injury will be
          redressed by a favorable decision.

504 U.S. 555, 560-61 (1992)(internal citations and quotation marks
omitted).

     "Because plaintiffs seek declaratory and injunctive relief
only, there is a further requirement that they show a very
significant possibility of future harm; it is insufficient for them
to demonstrate only a past injury." Bras v. California Public
Utilities Com'n, 59 F.3d 869, 833 (9th Cir. 1995), cert. denied,
516 U.S. 1084 (1996).

United States District Court
For the Northern District of California

13

A. Injury in Fact

Federal Defendants assert that Plaintiffs have not adequately demonstrated injury in fact, because they have failed to apply for the LTC Program.  "Plaintiffs must demonstrate 'a personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' necessary for the proper resolution of constitutional questions."  City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).

CalPERS refused to furnish an application to Dragovich for Gaitley.  Carolyn Light learned about the exclusion of same-sex couples through Dragovich.  Fitzsimmons also stated that she and her spouse were aware of the policy prohibiting same-sex spouses from enrollment in the LTC Program.  CalPERS made the exclusion abundantly clear in its written and oral communications.  Moreover, the DOMA and the I.R.C. plainly result in the exclusion of same-sex spouses and registered domestic partners.  The Ninth Circuit has consistently held that standing does not require exercises in futility.  See, e.g., Aleknagik Natives Ltd. v. Andrus, 648 F.2d 496, 499 (9th Cir. 1981); Taniguchi v. Ashcroft, 303 F.3d 950, 957 (9th Cir. 2002); see also Black Faculty Ass'n of Mesa College v. San Diego Community College Dist., 664 F.2d 1153, 1156 (9th Cir. 1981) ("We recognize that an individual need not always file and perfect an application for a position to have standing . . .") (internal citation omitted).

In a number of cases, courts have found the plaintiffs to have standing in spite of the absence of any formal application under a

14

United States District Court
For the Northern District of California

challenged program or law.  In <u>Taniguchi</u>, the petitioner challenged the constitutionality of a provision that excluded her from a waiver of deportation, though she never actually applied for the waiver.  303 F.3d at 950.  The Ninth Circuit held that "the [challenged] statute unambiguously precludes Taniguchi, as [a lawful permanent resident] convicted of an aggravated felony, from the discretionary waiver.  To apply for the waiver would have been futile on Taniguchi's part and, therefore, does not result in a lack of standing."  <u>Id.</u> at 957.  Contrary to Federal Defendants' suggestion, the Ninth Circuit did not include in its reasoning that the petitioner had already suffered an injury due to her deportation.

In <u>Desert Outdoor Advertising, Inc. v. City of Moreno Valley</u>, the plaintiffs challenged a local ordinance that conditioned permits for signs and billboards on compliance with certain requirements.  103 F.3d 814 (9th Cir. 1996).  The Ninth Circuit held that the plaintiffs established standing, though they had never applied for a permit for their signs.  "Applying for a permit would have been futile because: (1) the City brought state court actions against [the plaintiffs] to compel them to remove their signs; and (2) the ordinance flatly prohibited [the plaintiffs'] off-site signs[.]"  <u>Id.</u> at 818.

The Ninth Circuit has denied standing where the absence of an application rendered the policy and the legal dispute ambiguous.  In <u>Madden v. Boise State University</u>, 976 F.2d 1219 (9th Cir. 1992), the plaintiff brought a disability discrimination suit based on a dispute with the University over the availability of free

15

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

disabled parking.  After the University told him that no free
permits for disabled parking were available, the plaintiff filed a
complaint with the U.S. Department of Education, Office of Civil
Rights.  In response to the OCR investigation finding the
University's parking policy out of compliance with federal law, the
University voluntarily took remedial measures, installing nine
additional disabled parking spaces, three of which were designated
free of charge to disabled persons who did not wish to pay the fee
for a general disabled parking permit.  The plaintiff,
nevertheless, sued the University without submitting a formal
application for a parking permit or otherwise requesting relief
from the parking permit fee.  As a result, the court was "left
somewhat at sea" about the nature of the "real dispute."  <u>Id.</u> at
1221.  There is no such ambiguity here.

Federal Defendants also argue that Plaintiffs lack injury
because they failed to seek long-term care insurance elsewhere.
The CalPERS LTC Program, however, offers a number of advantages
over private policies, including lower rates, inflation protection,
and restrictions on premium increases.  Furthermore, Federal
Defendants mischaracterize the injury as the inability to obtain
insurance.  The injury is the denial of equal access to the CalPERS
LTC Program.  "When the government erects a barrier that makes it
more difficult for members of one group to obtain a benefit than it
is for members of another group . . . [t]he 'injury in fact' in an
equal protection case of this variety is the denial of equal
treatment resulting from the imposition of the barrier, not the
ultimate inability to obtain the benefit."  <u>Ne. Fla. Chapter of</u>

16

**United States District Court**
For the Northern District of California

Assoc'd Gen. Contractors of Am. v. Jacksonville, 508 U.S. 656, 666 (1993); see also Gratz v. Bollinger, 539 U.S. 244, 261-62 (2003).

In an equal protection challenge to a purportedly discriminatory program, the Ninth Circuit has applied an "able and ready" standard to determine whether a plaintiff is in a position to compete on an equal basis for a program benefit.  Carroll v. Nicotiana, 342 F.3d 934, 941-42 (9th Cir. 2003) (citing Bras v. California Pub. Util. Comm'n., 59 F.3d 869, 873 (9th Cir. 1995)). A plaintiff sufficiently alleges injury when a discriminatory policy has interfered with the plaintiff's otherwise equal ability to compete for the program benefit.  In Carroll, a case upon which Federal Defendants rely, the court found that the plaintiff, who alleged discrimination in a state-run business loan program, had done "essentially nothing to demonstrate that he is in a position to compete equally" with other loan applicants.  Id. at 942.  The plaintiff presented no work history or experience in entrepreneurial endeavors to bolster the bona fides of his business loan application, and failed to respond to the defendant's request for more information to complete his application.  Id. at 942-43.[2]

Unlike Carroll, there is no evidence here that Plaintiffs would be unable to compete on an equal basis for the LTC Program once CalPERS agrees to furnish applications.  Dragovich, Carolyn

---

[2] Carroll also considered an equal protection challenge to a second program, which leased homesteads.  Id. at 943.  However, contrary to Federal Defendants' suggestion, the court did not hold that the plaintiff was injured only because he had properly submitted an application.  No party disputed the existence of an injury with respect to the homestead program, and the court simply reiterated the district court's finding.

Light and Fitzsimmons are current public employees. Plaintiffs have attested to their willingness and financial ability to pay the premiums associated with coverage through the CalPERS Program. Id. at 942 ("[T]he intent of the applicant may be relevant to standing in an equal protection challenge.") (citing Gratz, 539 U.S. at 261).

Nor is it dispositive that state employee Plaintiffs Carolyn Light and Litteral could have enrolled themselves in the CalPERS LTC Program in earlier years. They have not alleged that the CalPERS has barred them from individual enrollment in the LTC Program. Rather, through their spouses' participation in the LTC Program, they seek equal treatment and greater financial security for themselves and their families.

B. Causation

Next, Federal Defendants contest the causal connection between Plaintiffs' injury and the DOMA and I.R.C. § 7702B. Standing requires that the alleged injury "fairly can be traced to the challenged action" and is not the result of an independent action by some third party. Allen v. Wright, 468 U.S. 737, 759 (1984). Federal Defendants contend that Plaintiffs' harm from lacking long-term care insurance is attributable to Plaintiffs' failure to purchase the coverage from private insurers. However, again, this argument misunderstands the nature of the injury alleged, namely Plaintiffs' inability to be considered on an equal basis as other California public employees and their spouses who apply for the CalPERS LTC Program. See Ne. Fla. Chapter of Assoc'd Gen. Contractors, 508 U.S. at 666.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

C. Redressability

Finally, Federal Defendants argue that Plaintiffs' alleged injury is not redressable by the relief they have requested.  The redressability element of standing is satisfied only where the plaintiff shows "a likelihood that the requested relief will redress the alleged injury."  <u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 103 (1998).

Federal Defendants contend that it is not clear that the CalPERS plan would be available to Plaintiffs, even if they prevailed, because enrollment is currently closed.  This contention, like Federal Defendants' other arguments, misconstrues the injury Plaintiffs have alleged.  Furthermore, CalPERS has opened an alternate, special application process even after suspending open enrollment in the LTC Program.  Thus, CalPERS apparently can accept and enroll program participants though open enrollment periods have been suspended.  Furthermore, CalPERS must, by law, periodically allow enrollment into its LTC Program.  Cal. Govt. Code § 21661(a) ("The long-term care insurance plans shall be made available periodically during open enrollment periods determined by the [CalPERS] board.").  Unless the contested policies are changed, Plaintiffs will not be able to participate in the next open enrollment period.

With respect to Plaintiffs' registered domestic partner status, Federal Defendants make an additional redressability argument that California law independently precludes registered domestic partners from participating in the CalPERS LTC Program. As noted earlier, California Family Code § 297.5(g) exempts the

19

United States District Court
For the Northern District of California

1  CalPERS LTC Program from the statute's prohibition of

2  discriminating against couples and individuals based on their

3  status as registered domestic partners, as opposed to spouses.  The

4  statute does not require CalPERS to exclude same-sex spouses or

5  registered domestic partners from its LTC Program; it merely

6  exempts the agency if it does.  The provision's legislative history

7  makes clear that the exception was created to protect the LTC

8  Program's tax-qualified status under federal law.  See Senate

9  Appropriations Committee, Bill Summary, AB 205 (August 21, 2003).

10      Because Plaintiffs have satisfied Article III standing

11  requirements, Federal Defendants' challenge to the Court's subject

12  matter jurisdiction fails.

13  II. Failure to State a Claim

14      In addition to challenging the Court's subject matter

15  jurisdiction, Federal Defendants move to dismiss Plaintiffs' action

16  for failure to state a claim for equal protection and substantive

17  due process.

18      A. Equal Protection

19      Equal protection is "essentially a direction that all persons

20  similarly situated should be treated alike."  City of Cleburne v.

21  Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  "[T]he

22  Constitution 'neither knows nor tolerates classes among citizens.'"

23  Romer v. Evans, 517 U.S. 620, 623 (1996) (quoting Plessy v.

24  Ferguson, 163 U.S. 537, 559 (1896) (Harlan, J., dissenting)).  The

25  principle embodies a commitment to neutrality where the rights of

26  persons are at stake.  Id.

27      Yet courts must balance this mandate with the "practical

28                                    20

necessity that most legislation classifies for one purpose or another, with resulting disadvantage to various groups or persons." Romer, 517 U.S. at 631. The equal protection guarantee preserves a measure of power for states and the federal government to create laws that classify certain groups. Personnel Administrator of Mass. v. Feeney, 442 U.S. 256, 271-72 (1979). Certain classifications, such as those based on race, are presumptively invalid. Id. at 272. Courts apply heightened scrutiny to laws burdening protected classes, while laws that do not burden a protected class are subject to rational basis review. Romer, 517 U.S. at 631; Massachusetts Bd. Of Retirement v. Murgia, 427 U.S. 307, 312-314 (1976). Under the rational basis test, a law must be rationally related to the furtherance of a legitimate state interest. Romer, 517 U.S. at 631.

Because the Court finds that Plaintiffs state a claim under the rational basis standard, the question of whether Plaintiffs are members of a protected class need not be resolved here. Under the rational basis test legislative enactments are accorded a strong presumption of validity. Id. A court may "hypothesize the motivations of the . . . legislature to find a legitimate objective promoted by the provision under attack." Shaw v. Or. Pub. Employees' Ret. Bd., 887 F.2d 947, 948-49 (9th Cir. 1989) (internal quotation omitted). "[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." FCC v. Beach Comm., 508 U.S. 307, 313 (1993). On the other hand, the rational basis test is not a "toothless" test. Mathews v. De

21

<u>Castro</u>, 429 U.S. 181, 185 (1976).  "[E]ven in the ordinary equal protection case calling for the most deferential of standards, [courts] insist on knowing the relation between the classification adopted and the object to be attained."  <u>Gill v. Office of Personnel Management</u>, 699 F. Supp. 2d 374, 387 (D. Mass. 2010) (quoting <u>Romer</u>, 517 U.S. at 633).

Federal Defendants disavow the governmental interests identified by Congress in passing the DOMA, and instead assert a post-hoc argument that the DOMA advances a legitimate governmental interest in preserving the status quo of the states' definitions of marriage at the time the law was passed in 1996.  At that time, no state extended the right to marry to same-sex couples.  According to Federal Defendants, preserving the status quo allows states to resolve the issue of same-sex marriage for themselves, and provides uniformity in the federal allocation of marriage-related rights and benefits.

Section three of the DOMA, however, alters the status quo because it impairs the states' authority to define marriage, by robbing states of the power to allow same-sex civil marriages that will be recognized under federal law.  Federal Defendants concede that section three of the DOMA effected a departure from the federal government's prior practice of generally accepting marriages recognized by state law.  Federal Defendants' Mot. to Dismiss at 21.  In considering the legislation, Congress recognized the longstanding disposition of the federal government to accept state definitions of civil marriage, noting, "The determination of who may marry in the United States is uniquely a function of state

United States District Court
For the Northern District of California

law."  HR. Rep. 104-664 (House Report) at 2.  Thus, section three
of the DOMA was a preemptive strike to bar federal legal
recognition of same-sex marriages should certain states decide to
allow them, rather than a law that furthered the status quo, which
gave the states authority to define marriage for themselves.  See
Commonwealth of Massachusetts v. U.S. Dept. of Health and Human
Services, 698 F. Supp. 2d 234, 249 (D. Mass. 2010) (holding that
the "DOMA plainly intrudes on a core area of state sovereignty--the
ability to define the marital status of its citizens" and violates
the Tenth Amendment.)

Indeed, CalPERS' exclusion of same-sex spouses from its LTC
Program is an example of the restraint on states' authority to
extend legal recognition to same-sex marriages.  CalPERS has made
clear that its exclusion is an effort to comply with federal
requirements for tax benefits.  Plaintiffs have adequately stated a
claim that there is no relationship between section three of the
DOMA and its purported government interest--to maintain the status
quo while allowing states to decide the definition of marriage.

As noted above, Federal Defendants disavow the actual reasons
expressed by Congress for the DOMA.  Nonetheless, those reasons--
promoting procreation, encouraging heterosexual marriage,
preserving governmental resources, and expressing moral
disapproval--likewise would not justify granting Federal
Defendants' motion to dismiss.

The DOMA's definition of marriage does not bear a relationship
to encouraging procreation, because marriage has never been
contingent on having children.  See Lawrence, 539 U.S. at 605

United States District Court
For the Northern District of California

(Scalia, J., dissenting) (observing, "what justification could there possibly be for denying the benefits of marriage to homosexual couples . . . [s]urely not the encouragement of procreation, since the sterile and the elderly are allowed to marry."); Goodridge v. Dept. of Public Health, 440 Mass. 309, 332 (2003) ("While it is certainly true that many, perhaps most, married couples have children together (assisted or unassisted), it is the exclusive and permanent commitment of the marriage partners to one another, not the begetting of children, that is the sine qua non of civil marriage.").  The exclusion of same-sex couples from the federal definition of marriage does not encourage heterosexual marriages.  Perry v. Schwarzenegger, 704 F. Supp. 2d 921, 972 (N.D. Cal. 2010) ("Permitting same-sex couples to marry will not affect the number of opposite-sex couples who marry, divorce, cohabit, have children outside of marriage or otherwise affect the stability of opposite-sex marriages.").  Furthermore, the preservation of resources does not justify barring some arbitrarily chosen group of individuals from a government program.  Plyler v. Doe, 457 U.S. 202, 229 (1982).

Nor does moral condemnation of homosexuality provide the requisite justification for the DOMA's section three.  The "bare desire to harm a politically unpopular group" is not a legitimate state interest.  Romer, 517 U.S. at 634-35; City of Cleburne, 473 U.S. at 446-47; Dept. of Agriculture v. Moreno, 413 U.S. 528, 534 (1973).  In Romer the Supreme Court struck down a Colorado law, which it found "made a general announcement that gays and lesbians shall not have any particular protections from the law."  The Court

1  reasoned that the law "impos[ed] a broad and undifferentiated
2  disability on a single named group," 517 U.S. at 632, yet was
3  "inexplicable by anything but animus[.]"  Id. at 635.

4       The animus toward, and moral rejection of, homosexuality and
5  same-sex relationships are apparent in the Congressional record.
6  The House Report on the pending DOMA bill stated, "Civil laws that
7  permit only heterosexual marriage reflect and honor a collective
8  moral judgment about human sexuality.  This judgment entails [a]
9  moral disapproval of homosexuality . . . ."  H.R. Rep. 104-664, at
10  15-16.  The report further adopted the view that "'[S]ame-sex
11  marriage, if sanctified by the law, if approved by the law,
12  legitimates a public union, a legal status that most people . . .
13  feel ought to be illegitimate.'"  Id. at 16 (alteration and
14  omission in original).

15       In sum, Plaintiffs have sufficiently stated a claim that
16  section three of the DOMA bears no rational relationship to a
17  legitimate governmental interest.  The section does not preserve
18  the status quo of the states' authority to define marriage because
19  it instead impairs their customary and historic authority in the
20  realm of domestic relations.  The Act's contemporaneous
21  justifications have been found not to constitute legitimate
22  government interests.  Because neither Federal Defendants' current
23  justification, nor the actual contemporaneous reasons, for the
24  exclusion of same-sex couples from the federal definition of
25  marriage can be found as a matter of law to be rationally based on
26  a legitimate government interest, Plaintiffs have asserted a
27  cognizable claim for an equal protection violation.

28
                                   25

United States District Court
For the Northern District of California

B. Substantive Due Process

In addition to their equal protection claim, Plaintiffs assert that section three of the DOMA and § 7702B of the I.R.C. infringe "their fundamental liberty and privacy interests in marital and familial relationships" in violation of their substantive due process rights. Compl. at ¶ 59.

The substantive due process right "provides heightened protection against interference with certain fundamental rights and liberty interests . . ." William v. Glucksberg, 521 U.S. 702, 720 (1997) (recognizing "a long line of cases" holding that the Bill of Rights protects "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion.") (internal citations omitted).

When the government infringes a "fundamental liberty interest," the strict scrutiny test applies, and the law will not survive constitutional muster "unless the infringement is narrowly tailored to serve a compelling state interest." Id. at 721. Where no fundamental right is burdened by a challenged law, the law is scrutinized under the rational basis standard; it must be rationally related to a legitimate government interest. Id. at 728; Heller v. Doe, 509 U.S. 312, 319-320 (1993).

Courts have invoked substantive due process in striking down laws burdening family life, including household occupancy restrictions, see Moore v. East Cleveland, 431 U.S. 494 (1977), and mandatory maternity leave, Cleveland Bd. of Educ. v. LaFleur, 414 U.S. 632, 640 (1974). More recently, decisions by the Supreme

26

United States District Court
For the Northern District of California

Court and the Ninth Circuit have made clear that government intrusion into a same-sex relationship may violate substantive due process rights, though the precise nature of the liberty interest has not been decided. See Lawrence, 539 U.S. at 578 (holding that same-sex couples have the constitutional right to engage in intimate relationships "without the intervention of the government"); Witt, 527 F.3d at 812 ("We cannot reconcile what the Supreme Court did in Lawrence with the minimal protections afforded by traditional rational basis review."). Lawrence invalidated laws criminalizing same-sex intimacy, which amounted to a substantial government intrusion into same-sex relationships through the threat of criminal prosecution and related stigma. In Witt, the Ninth vacated the district court's dismissal of the plaintiff's substantive due process challenge of her discharge under the military's "Don't Ask Don't Tell" policy. The court held that "[w]hen the government attempts to intrude upon the personal and private lives of homosexuals, in a manner that implicates the rights identified in Lawrence," the law is reviewed with heightened scrutiny. 527 F.3d at 819 (citing Sell v. United States, 539 U.S. 166 (2003)). The court remanded the case to the district court for further development of the factual record and application of the heightened scrutiny test it articulated in its decision.

Plaintiffs contend that by "burdening [their] ability and autonomy to engage in financial and long-term care planning with [their] lawful spouses and domestic partners, Defendants are violating the fundamental liberty and privacy interests in marital and familial relationships . . ." Compl. at ¶ 70. Federal

United States District Court
For the Northern District of California

Defendants, however, characterize the laws as imposing an incidental economic burden which does not amount to an infringement on any fundamental right.  Federal Defendants cite <u>Regan v. Taxation with Representation of Wash.</u>, 461 U.S. 540, 549 (1983), where the plaintiffs challenged under the First Amendment the denial of tax exemption to organizations engaged in lobbying.  The Court reasoned that "a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right, and thus is not subject to strict scrutiny."  <u>Id.</u> at 549.  Similarly, the Supreme Court has ruled that the denial of food stamps to households with striking workers did not infringe the strikers' right of association, even though denying such benefits made it harder for strikers to maintain themselves and their families.  <u>Lyng v. International Union, United Auto, Aerospace and Agr. Implement Workers of America</u>, 485 U.S. 360, 368 (1998).

     As discussed above in connection with their equal protection claims, Plaintiffs have sufficiently stated a claim that the laws at issue here do not bear a rational relationship to a legitimate governmental interest.  Thus, the Court need not address whether a fundamental right or protected liberty interest is burdened.  Plaintiffs have stated a cognizable claim for violation of their rights to substantive due process.

//

//

//

//

//

28

CONCLUSION

Federal Defendants' motion to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a claim is denied.

Plaintiffs' class certification motion shall be filed on January 20, 2010, and heard on February 24, 2010.

IT IS SO ORDERED.

Dated: 1/18/2011

_____

CLAUDIA WILKEN
United States District Judge

29