1  William C. McNeill III, State Bar No. 64392
2  Claudia Center, State Bar No. 158255
   Elizabeth Kristen, State Bar No. 218227
3  LEGAL AID SOCIETY-
   EMPLOYMENT LAW CENTER
4  180 Montgomery Street, Suite 600
   San Francisco, CA  94104
5  Telephone:   (415) 864-8848
   Facsimile:    (415) 593-0096
6

7  Attorneys for Plaintiffs

8

9                    **UNITED STATES DISTRICT COURT**

10                 **NORTHERN DISTRICT OF CALIFORNIA**

11  MICHAEL DRAGOVICH, MICHAEL          Case No. CV 4:10-01564-CW
    GAITLEY, ELIZABETH LITTERAL,
12  PATRICIA FITZSIMMONS, CAROLYN
    LIGHT, CHERYL LIGHT, JOANNE
13  SCHMIDT, REIDE GARNETT, DAVID       **FIRST AMENDED COMPLAINT FOR
    BEERS, and CHARLES COLE, on behalf of   INJUNCTIVE AND DECLARATORY
14  themselves and all others similarly situated,   RELIEF**

15              Plaintiffs,
                                        **CLASS ACTION**
16         v.

17  UNITED STATES DEPARTMENT OF THE
    TREASURY, TIMOTHY GEITHNER, in
18  his official capacity as Secretary of the Treasury,
    United States Department of the Treasury,
19  INTERNAL REVENUE SERVICE,
    DOUGLAS SHULMAN, in his official
20  capacity as Commissioner of the Internal
    Revenue Service, BOARD OF
21  ADMINISTRATION OF CALIFORNIA
    PUBLIC EMPLOYEES' RETIREMENT
22  SYSTEM, and ANNE STAUSBOLL, in her
    official capacity as Chief Executive Officer,
23  CalPERS,

24              Defendants.

25

26

27

28

**INTRODUCTION**

1.      Plaintiffs are employees of the State of California and their spouses or partners who are in long-term committed relationships legally recognized under California law as marriages and domestic partnerships.  But because Plaintiffs are same-sex couples, the federal and state Defendants are unconstitutionally denying them the opportunity to purchase coverage through the state's long-term care insurance program, an essential tool for financial and family security that is offered to all other families of state workers.

2.      As members of the California Public Employees' Retirement System ("CalPERS"), Plaintiffs MICHAEL DRAGOVICH, ELIZABETH LITTERAL, CAROLYN LIGHT, JOANNE SCHMIDT, and DAVID BEERS ("Plaintiff employees") are eligible to apply to join the CalPERS Long Term Care ("LTC") Program, and seek this opportunity for their same-sex partners, Plaintiffs MICHAEL GAITLEY, PATRICIA FITZSIMMONS, CHERYL LIGHT, REIDE GARNETT, and CHARLES COLE ("Plaintiff spouses" or "Plaintiff partners"). Through participation in the LTC Program, the Plaintiffs seek to ensure an adequate safety net for themselves and their loved ones in the event that future debilitating illness or injury requires long-term care services.

3.      Long-term care insurance provides coverage when a person needs assistance with basic activities of living due to chronic illness, injury, the frailty of old age, or a severe cognitive impairment such as Alzheimer's disease.  In most instances, individuals and their families are not otherwise covered for this type of extended long-term care by health insurance, disability insurance, or Medicare.  Long-term care insurance is thus an important benefit for individuals, couples, and families – regardless of sexual orientation – to enhance financial security, and to ensure access to appropriate care throughout the life cycle.

4.      The U.S. Department of Health and Human Services reports that approximately seventy percent of Americans over the age of 65—approximately nine million people—will need long-term care services.  By the year 2020, the number will increase to twelve million.  At 2009 rates, the average stay in a nursing home lasts 2.4 years and costs more than $170,000.

The average cost in 2009 for care provided by a home health aide was $21 per hour, or $27,000 annually.

5.      Without long-term care insurance, the high costs of care can force families to make painful choices such as selling a family home to pay the bills, or having a working adult give up a job and income to work (unpaid) as a primary caretaker for a loved one who is no longer able to care for herself.  The consequences of such steps can be financially and emotionally devastating, and in some cases may be insufficient, leaving individuals in poverty and dependent upon the limited services provided by MediCal.  Long-term care insurance allows families to avoid such contingencies.

6.      Long-term care coverage can allow families and individuals to achieve their preferences with respect to assets, aging, and living arrangements, including community-based care.  According to the U.S. Department of Health and Human Services:  "By planning ahead, you may be able to save your assets and income for uses other than long-term care, including preserving the quality of life for your spouse or other loved ones. . . .  Your choices for receiving care outside of a facility and being able to stay at home or receive services in the community for as long as possible are greater if you have planned ahead."  U.S. Department of Health and Human Services National Clearinghouse for Long-Term Care Information, available at http://www.longtermcare.gov/LTC/Main_Site/Planning_LTC/Importance/index.aspx.

7.      Maximizing the number of families who purchase long-term health care insurance serves the public interest by spreading the risk of catastrophic expense, and helping individuals receive adequate assistance when they become unable to care for themselves, reducing the burden on publicly funded programs.  Access to long-term care services can also prevent avoidable health problems, reducing the need for emergency care and other expensive medical services.

8.      The federal government, recognizing the importance of long term care insurance in protecting families and the contributions to the public good made by public employees, enables states to offer tax-shielded ("qualified") long term care insurance programs to public employees

1    and their families.  These tax provisions were adopted "to provide an incentive for individuals

2    to take financial responsibility for their long-term care needs."  Joint Committee on Taxation,

3    "Description of Federal Tax Rules and Legislative Background Relating to Long-Term Care

4    Scheduled for a Public Hearing Before the Senate Committee on Finance on March 27, 2001,"

5    available at 2001 WL 36044116 (I.R.S.).  "The legislation … provides tax deductibility for long

6    term care and insurance, making it possible for more Americans to avoid financial difficulty as

7    the result of chronic illness."  142 Cong. Rec. S3578-01 at *3608 (Statement of Sen. McCain)

8    (Apr. 18, 1996).

9        9.     Under the Internal Revenue Code, a state may offer public employees a "qualified,"

10   tax-shielded long term care insurance plan that allows an employee to enroll himself or herself,

11   as well as any of the following family members:

12           • Opposite-sex spouse;

13           • Children;

14           • Grandchildren;

15           • Brothers;

16           • Sisters;

17           • Stepbrothers;

18           • Stepsisters;

19           • Father;

20           • Mother;

21           • Stepfather;

22           • Stepmother;

23           • Grandparents;

24           • Nephews;

25           • Nieces;

26           • Aunts;

27           • Uncles;

28

1        • Sons-in-law;

2        • Daughters-in-law;

3        • Father-in-law;

4        • Mother-in-law

5        • Brothers-in-law; and

6        • Sisters-in-law.

7    26 U.S.C. §§ 7702B(f)(1)-(2); 152(d)(2)(A)-(G), 1 U.S.C. § 7.  The rules do not limit the

8    number of family members who can enroll.  **Only one conceivable family member category** –

9    same-sex spouses and other legally recognized same-sex partners such as registered domestic

10   partners – is excluded.

11       10.    Consistent with federal statutory law, California statutory law mandates that

12   Defendant Board of Administration offer public employees and their families the opportunity to

13   purchase qualified long-term care insurance through the California Public Employees'

14   Retirement System ("CalPERS") during periodic open enrollment.  Cal. Gov't Code

15   § 21661(a).  A state employee may enroll himself or herself, and his or her spouse, brothers,

16   sisters, father, mother, father-in-law, and mother-in-law in the qualified long-term care

17   insurance program offered to California public employees.  Cal. Gov't Code § 21661(d).  There

18   is no limit to the total number of family members who can enroll, so long as they fall into an

19   approved family member category.  However, same-sex domestic partners are excluded under

20   the terms of state and federal statutory law.  26 U.S.C. §§ 7702B(f)(1)-(2); 152(d)(2)(A)-(G),

21   Cal. Fam. Code § 297.5(g).  Same-sex spouses are excluded by virtue of federal statutory law, 1

22   U.S.C. § 7, which CalPERS has followed and has indicated that it will follow.

23       11.    Thus, despite the important purposes underlying the establishment and development

24   of qualified long term care programs for public employees – to protect and provide for public

25   employees and their extended families – families headed by same-sex partners are singled out

26   for exclusion, and denied without basis an important tool of financial planning.

27       12.    Defendants' discrimination against the Plaintiffs with regard to long-term health care

28

First Amended Complaint for Declaratory and Injunctive Relief                                5

1    insurance is particularly invidious given the historical exclusion of gay couples and families

2    from social and financial institutions and programs, including insurance plans, that help couples

3    and families protect their financial security and allow them the resources to make caretaking

4    decisions as a family.

5         13.    Moreover, the statutory exclusion of same-sex partners from qualified long-term care

6    plans interferes with California's independent constitutional law.  The California Supreme

7    Court has affirmed that "as a matter of constitutional right," California law accords same-sex

8    couples, whether in legally recognized marriages or domestic partnerships, the same respect and

9    dignity and the same substantive legal rights and attributes as married opposite-sex couples.

10   *Strauss v. Horton*, 36 Cal. 4th 364, 411 (2009).

11        14.    As couples in legally recognized committed relationships, Plaintiffs are entitled to

12   respect for their fundamental liberty and privacy interests in marital and familial relationships,

13   and the full and equal protection of the law.  The exclusion challenged herein disrespects

14   Plaintiffs' marital and familial relationships, and constitutes irrational discrimination, all in

15   violation of the constitutional guarantees of due process and equal protection.

16        15.    Plaintiffs seek a determination that by excluding same-sex partners and spouses, the

17   federal provisions at issue – 26 U.S.C.A. §§ 7702B(f)(1)-(2) and 152(d)(2)(A)-(G) – violate the

18   due process and equal protection guarantees of the federal Constitution.  Plaintiffs seek a further

19   determination that the CalPERS LTC Plan violates the federal Constitution by conforming its

20   requirements to the federal provisions, thereby denying Plaintiffs the same respect and benefits

21   as it grants to similarly situated heterosexual public employees and their spouses.

22                                    **JURISDICTION**

23        16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this

24   case arises under the Constitution of the United States and presents a federal question under

25   Article III of the United States Constitution; pursuant to 28 U.S.C. § 1343(a)(3), (4) and 42

26   U.S.C. § 1983 in that this action is brought to redress deprivations, under color of state

27   authority, of rights, privileges, and immunities secured by the Constitution of the United States;

28

1  and pursuant to 5 U.S.C. § 702 in that the action states a claim that an agency of the United

2  States or an officer or employee thereof acted or failed to act in an official capacity or under

3  color of legal authority.  The Court has authority to grant declaratory and injunctive relief

4  pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) and § 2202.  The Court has the

5  authority to award costs and attorneys' fees under 28 U.S.C. § 2412 and 42 U.S.C. § 1988.

**VENUE**

7      17.    Venue is proper in the Northern District of California under 28 U.S.C. § 1391(e) in

8  that this action does not involve real property, Plaintiffs reside in this District, and a substantial

9  part of the acts and/or omissions giving rise to Plaintiffs' claims occurred in this District.

**PARTIES**

11     18.    Plaintiffs are public employees in the State of California who are eligible to purchase

12  long-term care coverage offered through CalPERS ("Plaintiff employees") and their legally

13  recognized spouses and domestic partners ("Plaintiff spouses" or "Plaintiff partners").

14     19.    Plaintiff MICHAEL DRAGOVICH is a U.S. citizen residing in San Francisco,

15  California, and is employed by the University of California, San Francisco ("UCSF") Medical

16  Center, where he has worked as a registered nurse and nurse coordinator in the area of liver

17  transplants since 1992.  He is 51 years old.  As part of his employee benefits package, he is

18  eligible for and participates in CalPERS, California's benefit program for public employees.

19  Plaintiff DRAGOVICH purchased long-term care coverage through the CalPERS program in

20  1997.

21     20.    Plaintiff MICHAEL GAITLEY is also a U.S. citizen residing in San Francisco,

22  California, and he is 51 years old.  Plaintiff GAITLEY is an attorney who runs free legal clinics

23  for low-wage workers throughout the Bay Area.

24     21.    Plaintiff DRAGOVICH met Plaintiff GAITLEY in 1979.  They have been a

25  committed couple for more than 30 years.  Plaintiffs DRAGOVICH and GAITLEY were

26  married on June 28, 2008 pursuant to a duly issued marriage license; they are legally married

27  under California law.

28

First Amended Complaint for Declaratory and Injunctive Relief                                    7

1     22.    Plaintiff ELIZABETH LITTERAL is a U.S. citizen residing in San Francisco,

2  California, and is employed by the UCSF Medical Center, where she has worked as a nurse in

3  the areas of oncology and hematology since approximately 1995.  She is 50 years old.  As part

4  of her employee benefits package, she is eligible for and participates in CalPERS.

5     23.    Plaintiff PATRICIA FITZSIMMONS is a U.S. citizen residing in San Francisco,

6  California, and she is 59 years old.  Plaintiff FITZSIMMONS is an attorney who directs the

7  Child Advocacy Clinic at the University of San Francisco School of Law.

8     24.    Plaintiff LITTERAL met Plaintiff FITZSIMMONS in 1992.  They have been a

9  committed couple for more than 17 years.  Plaintiffs LITTERAL and FITZSIMMONS

10  registered as domestic partners with the City and County of San Francisco on June 21, 1994.  In

11  1997, they adopted their daughter Molly, now 14.  They also registered as domestic partners

12  with the State of California when that registry became available through state law.  Following

13  the decision of Mayor Gavin Newsom to provide marriage licenses on a nondiscriminatory

14  basis, Plaintiffs LITTERAL and FITZSIMMONS were married in San Francisco on February

15  13, 2004; this marriage was subsequently invalidated by the California Supreme Court.

16  Plaintiffs LITTERAL and FITZSIMMONS were then married on October 8, 2008 pursuant to a

17  duly issued marriage license; they are legally married under California law.

18     25.    Plaintiff CAROLYN LIGHT is a U.S. citizen residing in San Francisco, California,

19  and is employed by the UCSF Medical Center, where she has worked as health care

20  administrator since 2005.  She is 32 years old.  As part of her employee benefits package, she is

21  eligible for and participates in CalPERS.

22     26.    Plaintiff CHERYL LIGHT is a U.S. citizen residing in San Francisco, California, and

23  a massage therapist.

24     27.    Plaintiffs CAROLYN and CHERYL LIGHT met in college and have been a

25  committed couple for seven years.  They registered as domestic partners under California state

26  law in October 2006.  On June 24, 2008, Plaintiffs CAROLYN and CHERYL LIGHT were

27  married pursuant to a duly issued marriage license; they are legally married under California

28

1   law.

2      28.   Plaintiff JOANNE SCHMIDT is a U.S. citizen residing in Bakersfield, California, and

3   is employed by California State University, Bakersfield, where she has worked for the past 26

4   years.  She is 60 years old.  She is the past chair of the California Faculty Association and its

5   LGBT Caucus.  As part of her employee benefits package, she is eligible for and participates in

6   CalPERS.  Plaintiff SCHMIDT enrolled in the CalPERS Long Term Care benefit on or around

7   August 1, 1998.

8      29.   Plaintiff GARNETT is a U.S. citizen residing in Bakersfield, California.  She is 63

9   years old and worked at Bakersfield High School as a Speech Pathologist for 34 years before

10   retiring about 7 years ago.

11     30.   Plaintiff SCHMIDT met Plaintiff REIDE GARNETT in 1984 and they have been in a

12   committed relationship since then.  Plaintiffs SCHMIDT and GARNETT registered as domestic

13   partners under California state law October 7, 2008.  Plaintiffs SCHMIDT and GARNETT have

14   not married.

15     31.   Plaintiff DAVID BEERS is a U.S. citizen residing in Oakland, California, and is

16   employed as a fiscal analyst for the State of California, Department of Public Health,

17   Tuberculosis Control Branch.  He has held this position since 1999.  Plaintiff BEERS is 57

18   years old, and has been employed by the State of California in various positions for more than

19   20 years.  As part of his employee benefits package, he is eligible for and participates in

20   CalPERS.  Plaintiff BEERS purchased long-term care coverage through the CalPERS program

21   in 1997.

22     32.   Plaintiff CHARLES COLE is a U.S. citizen residing in Oakland, California.  For

23   many years, Plaintiff COLE has worked as a consultant assisting health care organizations,

24   senior organizations, and communities of faith with fundraising, organizational development,

25   governance, and marketing.  Since 2004, Plaintiff COLE has served as the Chief Operating

26   Officer of Chaparral House, a nonprofit skilled nursing facility for seniors.  Plaintiff COLE is

27   59 years old.

28

1   33.   Plaintiff BEERS met Plaintiff COLE in 1995.  Plaintiffs BEERS and COLE registered

2   as domestic partners under California state law on July 24, 2000.  They had a commitment

3   ceremony on July 15, 2001.  On July 13, 2008, Plaintiffs BEERS and COLE were married

4   pursuant to a duly issued marriage license; they are legally married under California law.

5   34.   Defendant DEPARTMENT OF THE TREASURY is a federal government

6   department established by Congress.

7   35.   Defendant INTERNAL REVENUE SERVICE is a bureau of the DEPARTMENT OF

8   THE TREASURY that is organized to carry out the responsibilities of the Secretary of the

9   Treasury in executing and applying the internal revenue laws pursuant to 26 U.S.C. § 7801.

10   36.   Defendant TIMOTHY GEITHNER is currently the Secretary of the Treasury and is

11   sued in his official capacity.  In his official capacity, Secretary GEITHNER is responsible for

12   the administration of the DEPARTMENT OF THE TREASURY, including the administration

13   and enforcement of the internal revenue laws.  26 U.S.C. § 7801.

14   37.   Defendant DOUGLAS SHULMAN is currently the Commissioner of Internal

15   Revenue and issued in his official capacity.  In his official capacity, Commissioner SHULMAN

16   is responsible for administering and supervising the execution and application of the internal

17   revenue laws.  26 U.S.C. § 7803.

18   38.   Defendant BOARD OF ADMINISTRATION of California Public Employees'

19   Retirement System ("BOARD") is the thirteen-member body vested with management and

20   control of the Public Employees' Retirement System.  Cal. Gov't Code § 20120.

21   39.   Defendant ANNE STAUSBOLL is Chief Executive Officer of the California Public

22   Employees' Retirement System and is sued in her official capacity.

23   **CLASS ACTION ALLEGATIONS**

24   40.   Plaintiffs DRAGOVICH, GAITLEY, LITTERRAL, FITZSIMMONS, CAROLYN

25   LIGHT, CHERYL LIGHT, SCHMIDT, GARNETT, BEERS, and COLE bring this action on

26   behalf of themselves and all persons similarly situated.  The class they seek to represent is

27   composed of CalPERS members who are in same-sex marriages and registered domestic

28

partnerships legally recognized by the State of California, and their spouses and partners, who as couples and families are denied access to the CalPERS Long-Term Care Program that is equal to similarly situated CalPERS members who are in opposite-sex marriages, and their spouses.

41.     The persons in the class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit both to the parties and to this Court.  The Williams Institute at the University of California, Los Angeles, has estimated that there are nearly 193,000 current state and local public employees who are lesbian, gay, bisexual, and transgender.

42.     There is a well-defined community of interest in the questions of law and fact regarding the parties to be represented, and common questions of law and fact predominate.

43.     The claims of Plaintiffs DRAGOVICH, GAITLEY, LITTERRAL, FITZSIMMONS, CAROLYN LIGHT, CHERYL LIGHT, SCHMIDT, GARNETT, BEERS, and COLE are typical of those of the class, and Plaintiffs DRAGOVICH, GAITLEY, LITTERRAL, FITZSIMMONS, CAROLYN LIGHT, CHERYL LIGHT, SCHMIDT, GARNETT, BEERS, and COLE will fairly and adequately represent the interests of the class.

<b>STATEMENT OF FACTS</b>

44.     As California public employees, the Plaintiff employees are eligible for and participate in California's public employee benefit program, administered through the California Public Employees' Retirement System ("CalPERS").

**The CalPERS Long-Term Care Program.**

45.     One benefit included in CalPERS is the opportunity to enroll in the CalPERS Long-Term Care Program.  The Long-Term Care Program ("Program") provides benefit payouts in the event that the beneficiary requires long-term skilled nursing care (for example, due to illness, injury, or advanced age).  The Long-Term Care Program allows California public employees and/or family members of employees, including spouses, adult siblings, parents and parents-in-law to enroll in the Program.  These family members can apply for the Program even

1    if the public employee chooses not to enroll.

2         46.    The 2008 CalPERS Long-Term Care Program Information Guide ("Information

3    Guide"), made available to all members of CalPERS including the Plaintiff employees, defines

4    "long-term care" as "the extended care you or a loved one may need when you need assistance

5    with basic Activities of Daily Living (ADLs) like bathing, dressing, or eating."  This care can be

6    necessary "because of a chronic illness, injury, or due to the frailty of old age [or] a Severe

7    Cognitive Impairment, such as Alzheimer's Disease."  The Program offers coverage options for

8    care provided at home, at an adult day care center, in an assisted living facility, or in a nursing

9    home.

10        47.    In most instances, individuals and their families are not covered for long-term care by

11   other insurance or disability plans.  Medicare and employer-sponsored or private health

12   insurance do not pay for the majority of long-term care services.  MediCal provides limited

13   coverage for some long-term care only to individuals who meet a state-determined poverty level

14   and certain health-related criteria.

15        48.    In a section entitled "Do Not Forget Your Loved Ones," the Information Guide offers

16   facts to "help you better understand why you should tell your spouse, parents, parents-in-law

17   and adult siblings about the CalPERS Long-Term Care Program."  The Information Guide

18   repeatedly offers reminders that employees should enroll their "spouse," "family," and "loved

19   ones."

20        49.    According to CalPERS, three out of five people over age 65 will need some type of

21   long-term care over their lifetime.  In 2007, the average cost of care in a nursing home in

22   California was $180 per day, or over $65,000 annually, and the average nursing home stay is 2.6

23   years, costing approximately $170,000.  Care received at home can cost more than $20,000 a

24   year.  As with other health care costs, the costs of long-term care are rising annually.

25   **Defendants' Exclusion of the Plaintiff Spouses.**

26        50.    Plaintiff DRAGOVICH has been employed as a registered nurse and nurse

27   coordinator at UCSF Medical Center for approximately eighteen years.  Plaintiff DRAGOVICH

28

has been in a committed relationship with Plaintiff GAITLEY for more than 30 years, since 1979.  On June 28, 2008, following the decision of the California Supreme Court in *In re Marriage Cases*, 43 Cal. 4th 757 (2008) (holding that denial of the right to marry to same-sex couples violated the California Constitution), Plaintiff DRAGOVICH married Plaintiff GAITLEY, pursuant to a duly issued California marriage license.  Plaintiffs DRAGOVICH and GAITLEY remain lawfully married spouses under the laws of the State of California.  *Strauss v. Horton*, 46 Cal. 4th 364 (2009).

51.   Plaintiffs DRAGOVICH and GAITLEY are each 51 years old.  Like families across the country planning their future, Plaintiffs DRAGOVICH and GAITLEY seek the security that, should either of them experience a debilitating illness or injury or otherwise become unable to care for himself, there will be an adequate safety net in place to provide necessary long-term health care.  Additionally, Plaintiffs DRAGOVICH and GAITLEY seek the administrative convenience of being insured by the same provider, particularly as they age.  Plaintiff DRAGOVICH purchased long-term care coverage through the CalPERS program in 1997; Plaintiff GAITLEY seeks the same coverage.

52.   Plaintiff LITTERAL has been employed as an oncology nurse at UCSF Medical Center for approximately 15 years.  Plaintiffs LITTERAL and FITZSIMMONS have been in a committed relationship for more than 17 years.  Plaintiffs LITTERAL and FITZSIMMONS registered as domestic partners with the City and County of San Francisco on June 21, 1994.  They also registered as domestic partners with the State of California when that registry became available through state law.  Following the decision of Mayor Gavin Newsom to provide marriage licenses on a nondiscriminatory basis, Plaintiffs LITTERAL and FITZSIMMONS were married in San Francisco on February 13, 2004; this marriage was subsequently invalidated by the California Supreme Court.  Following the *In re Marriage* cases, Plaintiffs LITTERAL and FITZSIMMONS were married on October 8, 2008 pursuant to a duly issued marriage license; they are legally married under California law.

53.   For some time, Plaintiffs LITTERAL and FITZSIMMONS have been reviewing their

1  options for obtaining long-term care coverage.  They are interested in joining the CalPERS

2  Long-Term Care Program because the benefits are tax-protected, and because, as a publicly

3  operated group plan, the premiums are lower than those charged by private carriers of individual

4  policies.

5       54.   Plaintiff CAROLYN LIGHT has been employed as health care administrator at UCSF

6  Medical Center since 2005.  She and Plaintiff CHERYL LIGHT have been in a committed

7  relationship for seven years.  They registered as domestic partners in 2006, and married legally

8  in 2008.  They are planning to have children.  Plaintiffs CAROLYN and CHERYL LIGHT are

9  interested in coverage through the CalPERS Long-Term Care Program because they view this

10  coverage as a component of their financial planning as a couple.

11      55.   Plaintiff SCHMIDT has been employed as a Professor of French, Spanish and Women

12  and Gender Studies by California State University, Bakersfield for the past 26 years.  She and

13  Plaintiff GARNETT have been in a committed relationship since 1984.  Plaintiffs SCHMIDT

14  and GARNETT registered as domestic partners on October 7, 2008.  They have not married.

15  Plaintiffs SCHMIDT and GARNETT are interested in coverage through the CalPERS LTC

16  Program because they want to ensure that they have care if they need it as they grow older.  Like

17  families across the country planning their future, Plaintiffs SCHMIDT and GARNETT seek the

18  security that, should either of them experience a debilitating illness or injury or otherwise

19  become unable to care for herself, there will be an adequate safety net in place to provide

20  necessary long-term health care.  Plaintiff SCHMIDT purchased long-term care coverage

21  through the CalPERS program on or around August 1, 1998; Plaintiff GARNETT seeks the

22  same coverage.  Plaintiff SCHMIDT was made aware that domestic partners such as Plaintiff

23  GARNETT are not eligible to apply for coverage.  However, Plaintiff SCHMIDT did discuss

24  the LTC Program with her sister, who was eligible to apply.  Although her sister ultimately did

25  not apply through CalPERS (as she was able to apply through her husband's LTC policy), the

26  option of such coverage was an important benefit to Plaintiff SCHMIDT and a benefit denied to

27  her regarding her domestic partner.

28

56.    Plaintiff BEERS has been employed by the State of California for more than 20 years. He currently serves as a fiscal analyst for the Tuberculosis Control Branch of the Department of Public Health, Tuberculosis Control Branch.  He has held this position since 1999.  He and Plaintiff COLE have been in a committed relationship since 1999.  They registered as domestic partners under California state law on July 24, 2000, and had a commitment ceremony on July 15, 2001.  On July 13, 2008, Plaintiffs BEERS and COLE were married pursuant to a duly issued marriage license; they are legally married under California law.  Plaintiff BEERS has long been aware of the need for, and the benefits of, long-term care coverage.  He purchased coverage through the CalPERS long-term care plan in 1997.

57.    Like Plaintiff BEERS, Plaintiff COLE is intensely aware of the need for long-term care coverage.  As Chief Operating Officer for Chaparral House, a skilled nursing facility, and as a consultant for health care organizations, Plaintiff COLE is intimately familiar with the daily costs of long-term care, and the lack of adequate coverage provided by government programs such as MediCal and Medicare.  Moreover, during the AIDS epidemic beginning in the early 1980s, Plaintiff COLE cared for dozens of individuals living and dying with AIDS who required assistance with basic activities of daily living such as bathing, dressing, and eating.  A former Baptist minister, Plaintiff COLE was an active lay leader in the Metropolitan Community Church of San Francisco; literally hundreds of MCCSF members died during the AIDS years.  Plaintiffs BEERS and COLE seek long-term care coverage because they want the security and safety net it provides in the event that either of them experience a debilitating illness or injury and requires daily care.

58.    Beginning in 2004, Plaintiffs BEERS and COLE began discussing the possibility of enrolling Plaintiff COLE in the CalPERS long-term care plan.  In 2005, Plaintiff COLE began sending emails to membership services for the CalPERS long-term care plan, inquiring about whether he could become covered as a domestic partner.  Eventually he was told via email by a representative of the CalPERS long-term care plan that coverage was not available to him. Plaintiff COLE continued to inquire, and finally spoke by telephone with a representative of the

1   CalPERS long-term care plan; the representative told Plaintiff COLE that there was nothing

2   CalPERS could do to include domestic partners because of the IRS rules.  Plaintiff COLE

3   suggested that CalPERS sue the IRS.  Plaintiff COLE made one more effort in about 2007,

4   emailing CalPERS about obtaining long-term care coverage; he was again told that he is not

5   eligible.  Plaintiff COLE has surveyed the private long-term care market; however, he has been

6   unable to find a product comparable to the CalPERS program with respect to benefits,

7   escalation (also known as inflation protection), and premiums.  As well, Plaintiff COLE seeks

8   the benefits and protections of being part of the CalPERS plan.  Unlike private plans, the

9   CalPERS plan is run as a nonprofit, and has access to favorable investment opportunities.

10  Unlike private plans, increases in premiums are supervised by the Board of Administration, and

11  are imposed uniformly across the population of insured participants.

12      59.    After Plaintiffs Dragovich and Gaitley married, Plaintiff Dragovich sought to enroll

13  Plaintiff Gaitley in the CalPERS Long-Term Care Program.  In December 2008, Plaintiff

14  Dragovich called the Program's toll-free number to request enrollment materials, but was told

15  by the Program representative with whom he spoke that same-sex spouses are ineligible to

16  enroll in the Program.  When Plaintiff Dragovich inquired further, the representative informed

17  him that this restriction was based on federal law.

18      60.    Following Plaintiff Dragovich's telephone conversation with the Long-Term Care

19  Program representative, his attorney wrote a letter to CalPERS on his behalf, objecting to

20  discrimination by CalPERS on the basis of sexual orientation.  CalPERS Assistant Chief

21  Counsel responded with a letter explaining that the Program "is a tax-qualified plan for IRS

22  purposes," under which members may make their contributions to the Program using pre-tax

23  dollars, and benefit payouts are not subject to the federal income tax.  Counsel stated that in

24  order to maintain the tax-qualified status of the Program:

25          [The plan must meet certain IRS provisions, including providing enrollment to certain
            persons such as employees, former employees, their spouses, and others within a specified
26          relationship.  Within this context, the federal Defense of Marriage Act (DOMA) currently
            recognizes a spouse to mean only a "person of the opposite sex."  The enrollment of a
27

28

same-sex spouse into the [Long-Term Care Program]would therefore make the plan non-compliant with IRC provisions based on DOMA and jeopardize the plan's tax-qualified status.

61.    The federal and state rules challenged herein burden the familial relationships of the Plaintiffs, including the ability of the Plaintiff employees to support their families by enrolling their partners in the long-term care program available to spouses of California public employees, and their rights to equal protection under the law.

62.    Shortly after Plaintiff Dragovich's attorney inquired on his behalf about enrollment of his spouse, CalPERS suspended enrollment for any new enrollees.  According to the CalPERS website, enrollment remains closed, despite California law requiring that "long-term care insurance plans shall be made available periodically during open enrollment periods determined by the board."  Cal. Gov't Code § 21661(a).  Historically, the board has offered open enrollment periods annually, beginning each April.  At public meetings, CalPERS has stated that it may hold an open enrollment in 2011.

63.    Plaintiffs (as well as all others now foreclosed from enrollment) are being adversely affected by the delay in enrollment for the CalPERS program.  Applying for long-term health care at a younger age increases the likelihood of qualifying for the coverage and results in lower premiums because premiums are linked to age at enrollment.  Already almost two years have passed since Plaintiff Dragovich first tried to enroll his spouse.  Moreover, it is important that individuals apply for long-term care insurance when they are in good health because long-term care insurance plans like CalPERS uses underwriting which can prevent people from being approved for coverage.

64.    It is impossible to predict when Plaintiffs (and others now foreclosed from enrollment) will need long-term care.  The U.S. Department of Health and Human Services advises about the importance of planning ahead for long-term care because if "people first learn about long-term care when they or a loved one need care … their options are often limited by lack of information, the immediate need for services, and insufficient resources to pay for preferred services."  U.S. Department of Health and Human Services National Clearinghouse

1    for Long-Term Care Information, available at

2    http://www.longtermcare.gov/LTC/Main_Site/Planning_LTC/Importance/index.aspx.

3    **Marriage and Domestic Partnerships in California.**

4        65.    As a sovereign State of the United States of America, the State of California has

5    exclusively established and ordained the legal requirements for civil marriage and registered

6    domestic partnerships within the State and the status of members of such marriages and

7    partnerships.

8        66.    Effective January 1, 2005, and presently, California law allows same-sex couples

9    to enter into domestic partnerships, legally recognized committed relationships with all of the

10    same substantive legal rights, responsibilities, benefits, and protections as civil marriage affords

11    to opposite-sex couples who enter into civil marriages recognized by the State of California.

12    The California statute governing legal recognition of domestic partnerships, California Family

13    Code 297.5, states that "Registered domestic partners shall have the same rights, protections,

14    and benefits, and shall be subject to the same responsibilities, obligations, and duties under law,

15    whether they derive from statutes, administrative regulations, court rules, government policies,

16    common law, or any other provisions or sources of law, as are granted to and imposed upon

17    spouses."  Cal. Fam. Code § 297.5(a).

18        67.    However, section (g) of the same statute specifically exempts the federally qualified

19    long term care program from this equality guarantee, stating, "No public agency in this state

20    may discriminate against any person or couple of the ground that the person is a registered

21    domestic partner rather than a spouse or that the couple are registered domestic partners rather

22    than spouses, except that nothing in this section applies to modify eligibility for long-term care

23    plans pursuant to Chapter 15 (commencing with Section 21660) of Par 3 of Division 5 of Title 2

24    of the Government Code [Public Employees' Long-Term Care Act]."

25        68.    Effective June 15, 2008, with the implementation of the California Supreme Court's

26    constitutional determination in *In re Marriage Cases*, 43 Cal. 4th 757 (2008), same-sex couples

27    who otherwise complied with the requirements for obtaining a marriage license in the State of

28

1    California were entitled to marry under California law.

2        69.    Although the California Constitution was modified on November 4, 2008 by the

3    passage of Proposition 8, eliminating the ability of same-sex couples to enter into a legally

4    recognized relationship designated "marriage," marriages of same-sex couples that occurred

5    prior to the adoption of Proposition 8—including Plaintiffs' marriages—"remain valid in all

6    respects."  *Strauss v. Horton*, 36 Cal. 4th 364, 473-74 (2009).

7        70.    Moreover, same-sex couples in California, whether in legally recognized marriages or

8    domestic partnerships, "possess, under the state constitutional privacy and dues process clauses,

9    'the core set of basic substantive legal rights and attributes traditionally associated with

10   marriage,' including, 'most fundamentally, the opportunity of an individual to establish—with

11   the person with whom the individual has chosen to share his or her life—an officially

12   recognized and protected family possessing mutual rights and responsibilities and entitled to the

13   same respect and dignity accorded a union traditionally designated as marriage.'  Like opposite-

14   sex couples, same-sex couples enjoy this protection not as a matter of legislative grace, but of

15   constitutional right."  *Id.* at 411.

16       71.    Under California constitutional law, the Plaintiff couples must be accorded the same

17   status, responsibilities, and protections as married opposite-sex couples.  By failing to offer

18   enrollment equally to the Plaintiffs, the Board is discriminating in violation of California law.

19   **<u>Violation of Federal Constitutional Protections</u>.**

20       72.    The Plaintiff couples are similarly situated to California public employees and their

21   opposite-sex spouses.  In excluding same-sex spouses and domestic partners from the vast array

22   of family members permitted to enroll in a qualified long-term care plan, the federal Defendants

23   are violating the Plaintiffs' fundamental liberty and privacy interests in marital and familial

24   relationships, and are discriminating against them in violation of the guarantee of equal

25   protection.

26       73.    By implementing and conforming to the federal rules, and by excluding same-sex

27   spouses and domestic partners from the list of eligible participants in the Long-Term Care

28

1   Program, without basis, Defendants Board of Administration and Stausboll are violating

2   Plaintiffs' constitutionally protected rights to due process and equal protection.

3       74.   The state and federal statutes challenged herein are particularly noxious in that they

4   interfere and conflict with the State of California's ability to comply with its own state

5   constitutional mandates.  Here, the California Supreme Court has articulated and affirmed the

6   State's strong interest under the California Constitution in according couples in same-sex

7   relationships and their families the same legal responsibilities, benefits, and protections as

8   couples in opposite-sex relationships and their families.  In considering the legitimacy of federal

9   governmental interests, federal courts should endeavor to reconcile competing state interests.

10   **INJUNCTIVE AND DECLARATORY RELIEF ALLEGATIONS**

11       75.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 64 as

12   though fully set forth herein.

13       76.   A present and actual controversy exists regarding the respective rights and obligations

14   of Plaintiffs and Defendants.  Plaintiffs desire a judicial determination of their rights and

15   Defendants' obligations in a declaration as to whether Defendants' conduct violates the United

16   States Constitution.

17       77.   Such a declaration is necessary and appropriate at this time in order that Plaintiffs may

18   ascertain their rights.  Such a declaration is also necessary and appropriate to prevent further

19   harm or infringement of Plaintiffs' rights.

20       78.   Plaintiffs have no adequate remedy at law and unless the relief requested herein is

21   granted, Plaintiffs will suffer irreparable harm by the deprivation of enrollment in a qualified

22   long-term care plan.

23

**FIRST CLAIM FOR RELIEF**
Violation of Fifth Amendment
Due Process
(against Federal Defendants)

24

25

26       79.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 77 as

27   though fully set forth herein.

28

80.     As United States citizens, Plaintiffs have fundamental liberty and privacy interests in marital and familial relationships protected by the Fifth Amendment to the U.S. Constitution.

81.     Under federal statute, states are authorized to offer tax-shielded long-term care insurance programs to public employees and a vast array of their family members, including their opposite-sex spouses.  26 U.S.C.A. §§ 7702B(f)(1)-(2); 152(d)(2)(A)-(G).  Same-sex spouses and domestic partners are excluded.  *Id.*; 1 U.S.C. § 7.

82.     Plaintiffs' marriages and domestic partnerships are valid and legally recognized under California law, and are afforded identical rights, responsibilities, benefits, and protections under California law.

83.     By burdening the Plaintiffs' ability and autonomy to engage in financial and long-term care planning with their lawful spouses and domestic partners, the Defendants are violating the fundamental liberty and privacy interests in marital and familial relationships protected by the due process clause of the Fifth Amendment of the U.S. Constitution.

84.     As a proximate result of these unlawful acts, the Plaintiffs have suffered and continue to suffer irreparable injury.

85.     The Plaintiffs are entitled to relief, including declaratory relief and injunctive relief, and attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF
Violation of Fifth Amendment
Equal Protection
(against Federal Defendants)

86.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 84 as if fully set forth herein.

87.     As United States citizens, the Plaintiffs are entitled to equal consideration and treatment from the federal government, and with respect to each and every program operated by the federal government, including the treatment of qualified long-term care insurance.

88.     Under federal statute, states are authorized to offer tax-shielded long-term care insurance programs to public employees and a vast array of their family members, including their opposite-sex spouses.  26 U.S.C.A. §§ 7702B(f)(1)-(2); 152(d)(2)(A)-(G).  Same-sex

spouses and domestic partners are excluded.  *Id.*; 1 U.S.C. § 7.

89.    Plaintiffs' marriages and domestic partnerships are valid and legally recognized under California law, and are afforded identical rights, responsibilities, benefits, and protections under California law.

90.    By treating the Plaintiffs differently from similarly situated opposite-sex married couples without basis, the Defendants are violating their right to equal protection secured by the Fifth Amendment of the United States Constitution.

91.    As a proximate result of these unlawful acts, the Plaintiffs have suffered and continue to suffer irreparable injury.

92.    The Plaintiffs are entitled to relief, including declaratory relief, injunctive relief, and attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
42 U.S.C. § 1983
For Violation of Due Process Clause of Fourteenth Amendment
(against Defendants Board of Administration and Stausboll)

93.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 91 as though fully set forth herein.

94.    Plaintiffs have fundamental liberty and privacy interests in marital and familial relationships protected against state interference by the due process clause of the Fourteenth Amendment of the U.S. Constitution.  Plaintiffs' marriages and domestic partnerships are valid and legally recognized under California law.

95.    By denying Plaintiffs the right to enroll in the CalPERS Long-Term Care Program, and by conforming the plan to the unconstitutional federal standards, Defendants Board of Administration and Stausboll, acting under color of state law, are unconstitutionally burdening Plaintiffs' ability and autonomy to engage in financial and health care planning with their legally recognized spouses and domestic partners, in violation of the due process clause of the Fourteenth Amendment.

96.    As a proximate result of these unlawful acts, the Plaintiffs have suffered and continue to suffer irreparable injury.

97.   The Plaintiffs are entitled to relief, including declaratory relief, injunctive relief, and attorneys' fees and costs.

**FOURTH CLAIM FOR RELIEF**
42 U.S.C. § 1983
For Violation of Equal Protection Clause of Fourteenth Amendment
(against Defendants Board of Administration and Stausboll)

98.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 96 as though fully set forth herein.

99.   Plaintiffs have a right of equal protection secured by the Fourteenth Amendment to the Constitution.  Plaintiffs' marriages and domestic partnerships are valid and legally recognized under California law.  The State of California has an interest in treating Plaintiffs in a manner equal to similarly situated state employees and their opposite-sex spouses.

100.   By denying Plaintiffs the right to enroll in the CalPERS Long-Term Care Program, and by conforming the plan to the unconstitutional federal standards, Defendants Board of Administration and Stausboll, acting under color of state law, are unconstitutionally discriminating against Plaintiffs compared to similarly situated California public employees and their opposite-sex spouses in violation of the Fourteenth Amendment of the United States Constitution.

101.   As a proximate result of these unlawful acts, the Plaintiffs have suffered and continue to suffer irreparable injury.

102.   The Plaintiffs are entitled to relief, including declaratory relief, injunctive relief, attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

1.   Enter an order declaring that 26 U.S.C.A. §§ 7702B(f)(1)-(2) (cross-referencing 152(d)(2)(A)-(G)) is unconstitutional to the extent it excludes same-sex spouses and registered domestic partners from enrollment in qualified long-term care plans;

2.   Enter an order declaring that Cal. Fam. Code § 297.5(g) is unconstitutional to the extent it excludes same-sex spouses and registered domestic partners from enrollment in the

1    CalPERS Long-Term Care Program;

2        3.    Enter an order enjoining Defendant Board of Administration and Defendant Stausboll

3    from complying with these unconstitutional federal and state laws;

4        4.    Enter an order directing the Defendant Board of Administration and Defendant

5    Stausboll to permit the enrollment of the same-sex spouses and registered domestic partners of

6    state employees during future open enrollment periods for its Long-Term Care Plan;

7        5.    Enter an order enjoining Defendant United States Department of the Treasury,

8    Defendant Geithner, Defendant Internal Revenue Service, and Defendant Shulman from

9    challenging the tax-shielded "qualified" status of the CalPERS LTC Program;

10       6.    Award attorneys' fees and costs; and

11       7.    Grant any other relief that the Court deems just and proper.

12

13                                    Respectfully submitted,

14

15                                    THE LEGAL AID SOCIETY
                                      EMPLOYMENT LAW CENTER

16

17   Date:  March 1, 2011            By:  _____/s/ Claudia Center_____

18                                    Claudia Center
                                      Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28