William C. McNeill III, State Bar No. 64392
Claudia Center, State Bar No. 158255
Elizabeth Kristen, State Bar No. 218227
LEGAL AID SOCIETY-
EMPLOYMENT LAW CENTER
180 Montgomery Street, Suite 600
San Francisco, CA  94104
Telephone:   (415) 864-8848
Facsimile:    (415) 593-0096

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DRAGOVICH, MICHAEL GAITLEY, ELIZABETH LITTERAL, PATRICIA FITZSIMMONS, CAROLYN LIGHT, CHERYL LIGHT, DAVID BEERS, CHARLES COLE, RAFAEL V. DOMINGUEZ, and JOSE G. HERMOSILLO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, TIMOTHY GEITHNER, in his official capacity as Secretary of the Treasury, United States Department of the Treasury, INTERNAL REVENUE SERVICE, DOUGLAS SHULMAN, in his official capacity as Commissioner of the Internal Revenue Service, BOARD OF ADMINISTRATION OF CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, and ANNE STAUSBOLL, in her official capacity as Chief Executive Officer, CalPERS,<br><br>Defendants. | Case No. CV 4:10-01564-CW<br><br><br>**SECOND AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF**<br><br><br><u>**CLASS ACTION**</u> |

**INTRODUCTION**

1.      Plaintiffs are employees of the State of California and their spouses or partners who are in long-term committed relationships legally recognized under California law as marriages and domestic partnerships.  But because Plaintiffs are same-sex couples, the federal and state Defendants are unconstitutionally denying them the opportunity to purchase coverage through the state's long-term care insurance program, an essential tool for financial and family security that is offered to all other families of state workers.

2.      As members of the California Public Employees' Retirement System ("CalPERS"), Plaintiffs MICHAEL DRAGOVICH, ELIZABETH LITTERAL, CAROLYN LIGHT, DAVID BEERS, and RAFAEL V. DOMINGUEZ ("Plaintiff employees") are eligible to apply to join the CalPERS Long Term Care ("LTC") Program, and seek this opportunity for their same-sex partners, Plaintiffs MICHAEL GAITLEY, PATRICIA FITZSIMMONS, CHERYL LIGHT, CHARLES COLE, and JOSE G. HERMOSILLO ("Plaintiff spouses" or "Plaintiff partners"). Through participation in the LTC Program, the Plaintiffs seek to ensure an adequate safety net for themselves and their loved ones in the event that future debilitating illness or injury requires long-term care services.

3.      Long-term care insurance provides coverage when a person needs assistance with basic activities of living due to chronic illness, injury, the frailty of old age, or a severe cognitive impairment such as Alzheimer's disease.  In most instances, individuals and their families are not otherwise covered for this type of extended long-term care by health insurance, disability insurance, or Medicare.  Long-term care insurance is thus an important benefit for individuals, couples, and families – regardless of sexual orientation – to enhance financial security, and to ensure access to appropriate care throughout the life cycle.

4.      The U.S. Department of Health and Human Services reports that approximately seventy percent of Americans over the age of 65—approximately nine million people—will need long-term care services.  By the year 2020, the number will increase to twelve million.  At 2009 rates, the average stay in a nursing home lasts 2.4 years and costs more than $170,000.

1   The average cost in 2009 for care provided by a home health aide was $21 per hour, or $27,000

2   annually.

3        5.      Without long-term care insurance, the high costs of care can force families to make

4   painful choices such as selling a family home to pay the bills, or having a working adult give up

5   a job and income to work (unpaid) as a primary caretaker for a loved one who is no longer able

6   to care for herself.  The consequences of such steps can be financially and emotionally

7   devastating, and in some cases may be insufficient, leaving individuals in poverty and

8   dependent upon the limited services provided by MediCal.  Long-term care insurance allows

9   families to avoid such contingencies.

10       6.      Long-term care coverage can allow families and individuals to achieve their

11  preferences with respect to assets, aging, and living arrangements, including community-based

12  care.  According to the U.S. Department of Health and Human Services:  "By planning ahead,

13  you may be able to save your assets and income for uses other than long-term care, including

14  preserving the quality of life for your spouse or other loved ones. . . .  Your choices for

15  receiving care outside of a facility and being able to stay at home or receive services in the

16  community for as long as possible are greater if you have planned ahead."  U.S. Department of

17  Health and Human Services National Clearinghouse for Long-Term Care Information, available

18  at http://www.longtermcare.gov/LTC/Main_Site/Planning_LTC/Importance/index.aspx.

19       7.      Maximizing the number of families who purchase long-term health care insurance

20  serves the public interest by spreading the risk of catastrophic expense, and helping individuals

21  receive adequate assistance when they become unable to care for themselves, reducing the

22  burden on publicly funded programs.  Access to long-term care services can also prevent

23  avoidable health problems, reducing the need for emergency care and other expensive medical

24  services.

25       8.      The federal government, recognizing the importance of long term care insurance in

26  protecting families and the contributions to the public good made by public employees, enables

27  states to offer tax-shielded ("qualified") long term care insurance programs to public employees

28

1   and their families.  These tax provisions were adopted "to provide an incentive for individuals

2   to take financial responsibility for their long-term care needs."  Joint Committee on Taxation,

3   "Description of Federal Tax Rules and Legislative Background Relating to Long-Term Care

4   Scheduled for a Public Hearing Before the Senate Committee on Finance on March 27, 2001,"

5   available at 2001 WL 36044116 (I.R.S.).  "The legislation … provides tax deductibility for long

6   term care and insurance, making it possible for more Americans to avoid financial difficulty as

7   the result of chronic illness."  142 Cong. Rec. S3578-01 at *3608 (Statement of Sen. McCain)

8   (Apr. 18, 1996).

9       9.      Under the Internal Revenue Code, a state may offer public employees a "qualified,"

10   tax-shielded long term care insurance plan that allows an employee to enroll himself or herself,

11   as well as any of the following family members:

12   - Opposite-sex spouse;

13   - Children;

14   - Grandchildren;

15   - Brothers;

16   - Sisters;

17   - Stepbrothers;

18   - Stepsisters;

19   - Father;

20   - Mother;

21   - Stepfather;

22   - Stepmother;

23   - Grandparents;

24   - Nephews;

25   - Nieces;

26   - Aunts;

27   - Uncles;

28

Second Amended Complaint for Declaratory and Injunctive Relief                                    4

- Sons-in-law;

- Daughters-in-law;

- Father-in-law;

- Mother-in-law

- Brothers-in-law; and

- Sisters-in-law.

26 U.S.C. §§ 7702B(f)(1)-(2); 152(d)(2)(A)-(G), 1 U.S.C. § 7.  The rules do not limit the number of family members who can enroll.  **Only one conceivable family member category** – same-sex spouses and other legally recognized same-sex partners such as registered domestic partners – is excluded.

10.     Consistent with federal statutory law, California statutory law mandates that Defendant Board of Administration offer public employees and their families the opportunity to purchase qualified long-term care insurance through the California Public Employees' Retirement System ("CalPERS") during periodic open enrollment.  Cal. Gov't Code § 21661(a).  A state employee may enroll himself or herself, and his or her spouse, brothers, sisters, father, mother, father-in-law, and mother-in-law in the qualified long-term care insurance program offered to California public employees.  Cal. Gov't Code § 21661(d).  There is no limit to the total number of family members who can enroll, so long as they fall into an approved family member category.  However, same-sex domestic partners are excluded under the terms of state and federal statutory law.  26 U.S.C. §§ 7702B(f)(1)-(2); 152(d)(2)(A)-(G), Cal. Fam. Code § 297.5(g).  Same-sex spouses are excluded by virtue of federal statutory law, 1 U.S.C. § 7, which CalPERS has followed and has indicated that it will follow.

11.     Thus, despite the important purposes underlying the establishment and development of qualified long term care programs for public employees – to protect and provide for public employees and their extended families – families headed by same-sex partners are singled out for exclusion, and denied without basis an important tool of financial planning.

12.     Defendants' discrimination against the Plaintiffs with regard to long-term health care

1   insurance is particularly invidious given the historical exclusion of gay couples and families

2   from social and financial institutions and programs, including insurance plans, that help couples

3   and families protect their financial security and allow them the resources to make caretaking

4   decisions as a family.

5       13.    Moreover, the statutory exclusion of same-sex partners from qualified long-term care

6   plans interferes with California's independent constitutional law.  The California Supreme

7   Court has affirmed that "as a matter of constitutional right," California law accords same-sex

8   couples, whether in legally recognized marriages or domestic partnerships, the same respect and

9   dignity and the same substantive legal rights and attributes as married opposite-sex couples.

10  *Strauss v. Horton*, 36 Cal. 4th 364, 411 (2009).

11      14.    As couples in legally recognized committed relationships, Plaintiffs are entitled to

12  respect for their fundamental liberty and privacy interests in marital and familial relationships,

13  and the full and equal protection of the law.  The exclusion challenged herein disrespects

14  Plaintiffs' marital and familial relationships, and constitutes irrational discrimination, all in

15  violation of the constitutional guarantees of due process and equal protection.

16      15.    Plaintiffs seek a determination that by excluding same-sex partners and spouses, the

17  federal provisions at issue – 26 U.S.C.A. §§ 7702B(f)(1)-(2) and 152(d)(2)(A)-(G) – violate the

18  due process and equal protection guarantees of the federal Constitution.  Plaintiffs seek a further

19  determination that the CalPERS LTC Plan violates the federal Constitution by conforming its

20  requirements to the federal provisions, thereby denying Plaintiffs the same respect and benefits

21  as it grants to similarly situated heterosexual public employees and their spouses.

22                                **JURISDICTION**

23      16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 in that this

24  case arises under the Constitution of the United States and presents a federal question under

25  Article III of the United States Constitution; pursuant to 28 U.S.C. § 1343(a)(3), (4) and 42

26  U.S.C. § 1983 in that this action is brought to redress deprivations, under color of state

27  authority, of rights, privileges, and immunities secured by the Constitution of the United States;

28

1   and pursuant to 5 U.S.C. § 702 in that the action states a claim that an agency of the United

2   States or an officer or employee thereof acted or failed to act in an official capacity or under

3   color of legal authority.  The Court has authority to grant declaratory and injunctive relief

4   pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a) and § 2202.  The Court has the

5   authority to award costs and attorneys' fees under 28 U.S.C. § 2412 and 42 U.S.C. § 1988.

6   **VENUE**

7      17.    Venue is proper in the Northern District of California under 28 U.S.C. § 1391(e) in

8   that this action does not involve real property, Plaintiffs reside in this District, and a substantial

9   part of the acts and/or omissions giving rise to Plaintiffs' claims occurred in this District.

10   **PARTIES**

11      18.    Plaintiffs are public employees in the State of California who are eligible to purchase

12   long-term care coverage offered through CalPERS ("Plaintiff employees") and their legally

13   recognized spouses and domestic partners ("Plaintiff spouses" or "Plaintiff partners").

14      19.    Plaintiff MICHAEL DRAGOVICH is a U.S. citizen residing in San Francisco,

15   California, and is employed by the University of California, San Francisco ("UCSF") Medical

16   Center, where he has worked as a registered nurse and nurse coordinator in the area of liver

17   transplants since 1992.  He is 51 years old.  As part of his employee benefits package, he is

18   eligible for and participates in CalPERS, California's benefit program for public employees.

19   Plaintiff DRAGOVICH purchased long-term care coverage through the CalPERS program in

20   1997.

21      20.    Plaintiff MICHAEL GAITLEY is also a U.S. citizen residing in San Francisco,

22   California, and he is 51 years old.  Plaintiff GAITLEY is an attorney who runs free legal clinics

23   for low-wage workers throughout the Bay Area.

24      21.    Plaintiff DRAGOVICH met Plaintiff GAITLEY in 1979.  They have been a

25   committed couple for more than 30 years.  Plaintiffs DRAGOVICH and GAITLEY were

26   married on June 28, 2008 pursuant to a duly issued marriage license; they are legally married

27   under California law.

28

22.   Plaintiff ELIZABETH LITTERAL is a U.S. citizen residing in San Francisco, California, and is employed by the UCSF Medical Center, where she has worked as a nurse in the areas of oncology and hematology since approximately 1995.  She is 50 years old.  As part of her employee benefits package, she is eligible for and participates in CalPERS.

23.   Plaintiff PATRICIA FITZSIMMONS is a U.S. citizen residing in San Francisco, California, and she is 59 years old.  Plaintiff FITZSIMMONS is an attorney who directs the Child Advocacy Clinic at the University of San Francisco School of Law.

24.   Plaintiff LITTERAL met Plaintiff FITZSIMMONS in 1992.  They have been a committed couple for more than 17 years.  Plaintiffs LITTERAL and FITZSIMMONS registered as domestic partners with the City and County of San Francisco on June 21, 1994.  In 1997, they adopted their daughter Molly, now 14.  They also registered as domestic partners with the State of California when that registry became available through state law.  Following the decision of Mayor Gavin Newsom to provide marriage licenses on a nondiscriminatory basis, Plaintiffs LITTERAL and FITZSIMMONS were married in San Francisco on February 13, 2004; this marriage was subsequently invalidated by the California Supreme Court.  Plaintiffs LITTERAL and FITZSIMMONS were then married on October 8, 2008 pursuant to a duly issued marriage license; they are legally married under California law.

25.   Plaintiff CAROLYN LIGHT is a U.S. citizen residing in San Francisco, California, and is employed by the UCSF Medical Center, where she has worked as health care administrator since 2005.  She is 32 years old.  As part of her employee benefits package, she is eligible for and participates in CalPERS.

26.   Plaintiff CHERYL LIGHT is a U.S. citizen residing in San Francisco, California, and a massage therapist.

27.   Plaintiffs CAROLYN and CHERYL LIGHT met in college and have been a committed couple for seven years.  They registered as domestic partners under California state law in October 2006.  On June 24, 2008, Plaintiffs CAROLYN and CHERYL LIGHT were married pursuant to a duly issued marriage license; they are legally married under California

1    law.

2    28.    Plaintiff DAVID BEERS is a U.S. citizen residing in Oakland, California, and is

3   employed as a fiscal analyst for the State of California, Department of Public Health,

4   Tuberculosis Control Branch. He has held this position since 1999. Plaintiff BEERS is 57

5   years old, and has been employed by the State of California in various positions for more than

6   20 years. As part of his employee benefits package, he is eligible for and participates in

7   CalPERS. Plaintiff BEERS purchased long-term care coverage through the CalPERS program

8   in 1997.

9    29.    Plaintiff CHARLES COLE is a U.S. citizen residing in Oakland, California. For

10   many years, Plaintiff COLE has worked as a consultant assisting health care organizations,

11   senior organizations, and communities of faith with fundraising, organizational development,

12   governance, and marketing. Since 2004, Plaintiff COLE has served as the Chief Operating

13   Officer of Chaparral House, a nonprofit skilled nursing facility for seniors. Plaintiff COLE is

14   59 years old.

15    30.    Plaintiff BEERS met Plaintiff COLE in 1995. Plaintiffs BEERS and COLE registered

16   as domestic partners under California state law on July 24, 2000. They had a commitment

17   ceremony on July 15, 2001. On July 13, 2008, Plaintiffs BEERS and COLE were married

18   pursuant to a duly issued marriage license; they are legally married under California law.

19    31.    Plaintiff RAFAEL V. DOMINGUEZ is a U.S. citizen residing in La Mesa, California.

20   Plaintiff DOMINGUEZ is employed as an EEO officer/Title VI liaison with CalTRANS in San

21   Diego, California. He has held this position since August 2010. Prior to working for

22   CalTRANS, Plaintiff DOMINGUEZ worked for the California Department of Fair Employment

23   and Housing and for the State Compensation Insurance Fund. He has been a state employee

24   since June of 2004. As part of his employee benefits package, he is eligible for and participates

25   in CalPERS.

26    32.    Plaintiff JOSE G. HERMOSILLO is a U.S. citizen residing in La Mesa, California.

27   For about ten years, he has worked as an independent contractor providing Spanish language

28

1   interpreting services to federal contractors throughout California and outside California.

2       33.   Plaintiff DOMINGUEZ and Plaintiff HERMOSILLO became a committed couple in

3   2005, and registered as domestic partners under California state law on June 18, 2007.  They are

4   not married.

5       34.   Defendant DEPARTMENT OF THE TREASURY is a federal government

6   department established by Congress.

7       35.   Defendant INTERNAL REVENUE SERVICE is a bureau of the DEPARTMENT OF

8   THE TREASURY that is organized to carry out the responsibilities of the Secretary of the

9   Treasury in executing and applying the internal revenue laws pursuant to 26 U.S.C. § 7801.

10       36.   Defendant TIMOTHY GEITHNER is currently the Secretary of the Treasury and is

11   sued in his official capacity.  In his official capacity, Secretary GEITHNER is responsible for

12   the administration of the DEPARTMENT OF THE TREASURY, including the administration

13   and enforcement of the internal revenue laws.  26 U.S.C. § 7801.

14       37.   Defendant DOUGLAS SHULMAN is currently the Commissioner of Internal

15   Revenue and issued in his official capacity.  In his official capacity, Commissioner SHULMAN

16   is responsible for administering and supervising the execution and application of the internal

17   revenue laws.  26 U.S.C. § 7803.

18       38.   Defendant BOARD OF ADMINISTRATION of California Public Employees'

19   Retirement System ("BOARD") is the thirteen-member body vested with management and

20   control of the Public Employees' Retirement System.  Cal. Gov't Code § 20120.

21       39.   Defendant ANNE STAUSBOLL is Chief Executive Officer of the California Public

22   Employees' Retirement System and is sued in her official capacity.

23            **CLASS ACTION ALLEGATIONS**

24       40.   Plaintiffs DRAGOVICH, GAITLEY, LITTERRAL, FITZSIMMONS, CAROLYN

25   LIGHT, CHERYL LIGHT, BEERS, COLE, DOMINGUEZ, and HERMOSILLO bring this

26   action on behalf of themselves and all persons similarly situated.  The class they seek to

27   represent is composed of CalPERS members who are in same-sex marriages and registered

28

1   domestic partnerships legally recognized by the State of California, and their spouses and

2   partners, who as couples and families are denied access to the CalPERS Long-Term Care

3   Program that is equal to similarly situated CalPERS members who are in opposite-sex

4   marriages, and their spouses.

5       41.   The persons in the class are so numerous that joinder of all such persons is

6   impracticable and the disposition of their claims in a class action is a benefit both to the parties

7   and to this Court.  The Williams Institute at the University of California, Los Angeles, has

8   estimated that there are nearly 193,000 current state and local public employees who are

9   lesbian, gay, bisexual, and transgender.

10      42.   There is a well-defined community of interest in the questions of law and fact

11  regarding the parties to be represented, and common questions of law and fact predominate.

12      43.   The claims of Plaintiffs DRAGOVICH, GAITLEY, LITTERRAL, FITZSIMMONS,

13  CAROLYN LIGHT, CHERYL LIGHT, BEERS, COLE, DOMINGUEZ, and HERMOSILLO

14  are typical of those of the class, and Plaintiffs DRAGOVICH, GAITLEY, LITTERRAL,

15  FITZSIMMONS, CAROLYN LIGHT, CHERYL LIGHT, BEERS, COLE, DOMINGUEZ, and

16  HERMOSILLO will fairly and adequately represent the interests of the class.

17                              **STATEMENT OF FACTS**

18      44.   As California public employees, the Plaintiff employees are eligible for and

19  participate in California's public employee benefit program, administered through the

20  California Public Employees' Retirement System ("CalPERS").

21  **The CalPERS Long-Term Care Program.**

22      45.   One benefit included in CalPERS is the opportunity to enroll in the CalPERS Long-

23  Term Care Program.  The Long-Term Care Program ("Program") provides benefit payouts in

24  the event that the beneficiary requires long-term skilled nursing care (for example, due to

25  illness, injury, or advanced age).  The Long-Term Care Program allows California public

26  employees and/or family members of employees, including spouses, adult siblings, parents and

27  parents-in-law to enroll in the Program.  These family members can apply for the Program even

28

if the public employee chooses not to enroll.

46.    The 2008 CalPERS Long-Term Care Program Information Guide ("Information Guide"), made available to all members of CalPERS including the Plaintiff employees, defines "long-term care" as "the extended care you or a loved one may need when you need assistance with basic Activities of Daily Living (ADLs) like bathing, dressing, or eating."  This care can be necessary "because of a chronic illness, injury, or due to the frailty of old age [or] a Severe Cognitive Impairment, such as Alzheimer's Disease."  The Program offers coverage options for care provided at home, at an adult day care center, in an assisted living facility, or in a nursing home.

47.    In most instances, individuals and their families are not covered for long-term care by other insurance or disability plans.  Medicare and employer-sponsored or private health insurance do not pay for the majority of long-term care services.  MediCal provides limited coverage for some long-term care only to individuals who meet a state-determined poverty level and certain health-related criteria.

48.    In a section entitled "Do Not Forget Your Loved Ones," the Information Guide offers facts to "help you better understand why you should tell your spouse, parents, parents-in-law and adult siblings about the CalPERS Long-Term Care Program."  The Information Guide repeatedly offers reminders that employees should enroll their "spouse," "family," and "loved ones."

49.    According to CalPERS, three out of five people over age 65 will need some type of long-term care over their lifetime.  In 2007, the average cost of care in a nursing home in California was $180 per day, or over $65,000 annually, and the average nursing home stay is 2.6 years, costing approximately $170,000.  Care received at home can cost more than $20,000 a year.  As with other health care costs, the costs of long-term care are rising annually.

**Defendants' Exclusion of the Plaintiff Spouses.**

50.    Plaintiff DRAGOVICH has been employed as a registered nurse and nurse coordinator at UCSF Medical Center for approximately eighteen years.  Plaintiff DRAGOVICH

1    has been in a committed relationship with Plaintiff GAITLEY for more than 30 years, since

2    1979.  On June 28, 2008, following the decision of the California Supreme Court in *In re*

3    *Marriage Cases*, 43 Cal. 4th 757 (2008) (holding that denial of the right to marry to same-sex

4    couples violated the California Constitution), Plaintiff DRAGOVICH married Plaintiff

5    GAITLEY, pursuant to a duly issued California marriage license.  Plaintiffs DRAGOVICH and

6    GAITLEY remain lawfully married spouses under the laws of the State of California.  *Strauss v.*

7    *Horton*, 46 Cal. 4th 364 (2009).

8        51.    Plaintiffs DRAGOVICH and GAITLEY are each 51 years old.  Like families across

9    the country planning their future, Plaintiffs DRAGOVICH and GAITLEY seek the security that,

10   should either of them experience a debilitating illness or injury or otherwise become unable to

11   care for himself, there will be an adequate safety net in place to provide necessary long-term

12   health care.  Additionally, Plaintiffs DRAGOVICH and GAITLEY seek the administrative

13   convenience of being insured by the same provider, particularly as they age.  Plaintiff

14   DRAGOVICH purchased long-term care coverage through the CalPERS program in 1997;

15   Plaintiff GAITLEY seeks the same coverage.

16       52.    Plaintiff LITTERAL has been employed as an oncology nurse at UCSF Medical

17   Center for approximately 15 years.  Plaintiffs LITTERAL and FITZSIMMONS have been in a

18   committed relationship for more than 17 years.  Plaintiffs LITTERAL and FITZSIMMONS

19   registered as domestic partners with the City and County of San Francisco on June 21, 1994.

20   They also registered as domestic partners with the State of California when that registry became

21   available through state law.  Following the decision of Mayor Gavin Newsom to provide

22   marriage licenses on a nondiscriminatory basis, Plaintiffs LITTERAL and FITZSIMMONS

23   were married in San Francisco on February 13, 2004; this marriage was subsequently

24   invalidated by the California Supreme Court.  Following the *In re Marriage* cases, Plaintiffs

25   LITTERAL and FITZSIMMONS were married on October 8, 2008 pursuant to a duly issued

26   marriage license; they are legally married under California law.

27       53.    For some time, Plaintiffs LITTERAL and FITZSIMMONS have been reviewing their

28

options for obtaining long-term care coverage.  They are interested in joining the CalPERS

Long-Term Care Program because the benefits are tax-protected, and because, as a publicly

operated group plan, the premiums are lower than those charged by private carriers of individual

policies.  If and when they are able to purchase the coverage, they intend to do so.

54.     Plaintiff CAROLYN LIGHT has been employed as health care administrator at UCSF

Medical Center since 2005.  She and Plaintiff CHERYL LIGHT have been in a committed

relationship for seven years.  They registered as domestic partners in 2006, and married legally

in 2008.  They are planning to have children.  Plaintiffs CAROLYN and CHERYL LIGHT are

interested in coverage through the CalPERS Long-Term Care Program because they view this

coverage as a component of their financial planning as a couple.  If and when they are able to

purchase the coverage, they intend to do so.

55.     Plaintiff BEERS has been employed by the State of California for more than 20 years.

He currently serves as a fiscal analyst for the Tuberculosis Control Branch of the Department of

Public Health, Tuberculosis Control Branch.  He has held this position since 1999.  He and

Plaintiff COLE have been in a committed relationship since 1999.  They registered as domestic

partners under California state law on July 24, 2000, and had a commitment ceremony on July

15, 2001.  On July 13, 2008, Plaintiffs BEERS and COLE were married pursuant to a duly

issued marriage license; they are legally married under California law.  Plaintiff BEERS has

long been aware of the need for, and the benefits of, long-term care coverage.  He purchased

coverage through the CalPERS long-term care plan in 1997.

56.     Like Plaintiff BEERS, Plaintiff COLE is intensely aware of the need for long-term

care coverage.  As Chief Operating Officer for Chaparral House, a skilled nursing facility, and

as a consultant for health care organizations, Plaintiff COLE is intimately familiar with the daily

costs of long-term care, and the lack of adequate coverage provided by government programs

such as MediCal and Medicare.  Moreover, during the AIDS epidemic beginning in the early

1980s, Plaintiff COLE cared for dozens of individuals living and dying with AIDS who

required assistance with basic activities of daily living such as bathing, dressing, and eating.  A

1   former Baptist minister, Plaintiff COLE was an active lay leader in the Metropolitan

2   Community Church of San Francisco; literally hundreds of MCCSF members died during the

3   AIDS years.  Plaintiffs BEERS and COLE seek long-term care coverage because they want the

4   security and safety net it provides in the event that either of them experience a debilitating

5   illness or injury and requires daily care.

6       57.     Beginning in 2004, Plaintiffs BEERS and COLE began discussing the possibility of

7   enrolling Plaintiff COLE in the CalPERS long-term care plan.  In 2005, Plaintiff COLE began

8   sending emails to membership services for the CalPERS long-term care plan, inquiring about

9   whether he could become covered as a domestic partner.  Eventually he was told via email by a

10  representative of the CalPERS long-term care plan that coverage was not available to him.

11  Plaintiff COLE continued to inquire, and finally spoke by telephone with a representative of the

12  CalPERS long-term care plan; the representative told Plaintiff COLE that there was nothing

13  CalPERS could do to include domestic partners because of the IRS rules.  Plaintiff COLE

14  suggested that CalPERS sue the IRS.  Plaintiff COLE made one more effort in about 2007,

15  emailing CalPERS about obtaining long-term care coverage; he was again told that he is not

16  eligible.  Plaintiff COLE has surveyed the private long-term care market; however, he has been

17  unable to find a product comparable to the CalPERS program with respect to benefits,

18  escalation (also known as inflation protection), and premiums.  As well, Plaintiff COLE seeks

19  the benefits and protections of being part of the CalPERS plan.  Unlike private plans, the

20  CalPERS plan is run as a nonprofit, and has access to favorable investment opportunities.

21  Unlike private plans, increases in premiums are supervised by the Board of Administration, and

22  are imposed uniformly across the population of insured participants.

23      58.     Plaintiff DOMINGUEZ and Plaintiff HERMOSILLO are in their 40s, and purchased a

24  home together in September 2007, shortly after they registered as domestic partners under state

25  law.  Plaintiff DOMINGUEZ has looked into purchasing long-term care coverage from

26  CalPERS, and wishes to buy this coverage for himself and for Plaintiff HERMOSILLO.  He is

27  aware from his own research, and from his mother's experiences of aging while living in her

28

1   own home, that long-term care insurance coverage – separate from Medicare – is an important

2   option for protecting family assets while accessing services.  He seeks CalPERS long-term care

3   coverage for himself and for Plaintiff HERMOSILLO because he wishes to protect their home

4   and the stability of their household and finances in the event that, as they get older, one or both

5   of them require assistance in their activities of daily living.  For the same reasons, Plaintiff

6   HERMOSILLO seeks CalPERS long-term care coverage.  If and when they are able to purchase

7   the coverage, they intend to do so.

8          59.    After Plaintiffs DRAGOVICH and GAITLEY married, Plaintiff DRAGOVICH

9   sought to enroll Plaintiff GAITLEY in the CalPERS Long-Term Care Program.  In December

10   2008, Plaintiff DRAGOVICH called the Program's toll-free number to request enrollment

11   materials, but was told by the Program representative with whom he spoke that same-sex

12   spouses are ineligible to enroll in the Program.  When Plaintiff DRAGOVICH inquired further,

13   the representative informed him that this restriction was based on federal law.

14          60.    Following Plaintiff DRAGOVICH's telephone conversation with the Long-Term Care

15   Program representative, his attorney wrote a letter to CalPERS on his behalf, objecting to

16   discrimination by CalPERS on the basis of sexual orientation.  CalPERS Assistant Chief

17   Counsel responded with a letter explaining that the Program "is a tax-qualified plan for IRS

18   purposes," under which members may make their contributions to the Program using pre-tax

19   dollars, and benefit payouts are not subject to the federal income tax.  Counsel stated that in

20   order to maintain the tax-qualified status of the Program:

21          [The plan must meet certain IRS provisions, including providing enrollment to certain
        persons such as employees, former employees, their spouses, and others within a specified
22          relationship.  Within this context, the federal Defense of Marriage Act (DOMA) currently
        recognizes a spouse to mean only a "person of the opposite sex."  The enrollment of a
23          same-sex spouse into the [Long-Term Care Program]would therefore make the plan non-
        compliant with IRC provisions based on DOMA and jeopardize the plan's tax-qualified
24          status.

25          61.    The federal and state rules challenged herein burden the familial relationships of the

26   Plaintiffs, including the ability of the Plaintiff employees to support their families by enrolling

27

28

1   their partners in the long-term care program available to spouses of California public

2   employees, and their rights to equal protection under the law.

3       62.     Shortly after Plaintiff DRAGOVICH's attorney inquired on his behalf about

4   enrollment of his spouse, CalPERS suspended enrollment for any new enrollees.  According to

5   the CalPERS website, enrollment remains closed, despite California law requiring that "long-

6   term care insurance plans shall be made available periodically during open enrollment periods

7   determined by the board."  Cal. Gov't Code § 21661(a).  Historically, the board has offered

8   open enrollment periods annually, beginning each April.  At public meetings, CalPERS has

9   stated that it may hold an open enrollment in 2011.

10      63.     Plaintiffs (as well as all others now foreclosed from enrollment) are being adversely

11  affected by the delay in enrollment for the CalPERS program.  Applying for long-term health

12  care at a younger age increases the likelihood of qualifying for the coverage and results in lower

13  premiums because premiums are linked to age at enrollment.  Already almost two years have

14  passed since Plaintiff DRAGOVICH first tried to enroll his spouse.  Moreover, it is important

15  that individuals apply for long-term care insurance when they are in good health because long-

16  term care insurance plans like CalPERS uses underwriting which can prevent people from being

17  approved for coverage.

18      64.     It is impossible to predict when Plaintiffs (and others now foreclosed from

19  enrollment) will need long-term care.  The U.S. Department of Health and Human Services

20  advises about the importance of planning ahead for long-term care because if "people first learn

21  about long-term care when they or a loved one need care … their options are often limited by

22  lack of information, the immediate need for services, and insufficient resources to pay for

23  preferred services."  U.S. Department of Health and Human Services National Clearinghouse

24  for Long-Term Care Information, available at

25  http://www.longtermcare.gov/LTC/Main_Site/Planning_LTC/Importance/index.aspx.

26  **Marriage and Domestic Partnerships in California.**

27      65.     As a sovereign State of the United States of America, the State of California has

28

exclusively established and ordained the legal requirements for civil marriage and registered domestic partnerships within the State and the status of members of such marriages and partnerships.

66.     Effective January 1, 2005, and presently, California law allows same-sex couples to enter into domestic partnerships, legally recognized committed relationships with all of the same substantive legal rights, responsibilities, benefits, and protections as civil marriage affords to opposite-sex couples who enter into civil marriages recognized by the State of California. The California statute governing legal recognition of domestic partnerships, California Family Code 297.5, states that "Registered domestic partners shall have the same rights, protections, and benefits, and shall be subject to the same responsibilities, obligations, and duties under law, whether they derive from statutes, administrative regulations, court rules, government policies, common law, or any other provisions or sources of law, as are granted to and imposed upon spouses."  Cal. Fam. Code § 297.5(a).

67.     However, section (g) of the same statute specifically exempts the federally qualified long term care program from this equality guarantee, stating, "No public agency in this state may discriminate against any person or couple of the ground that the person is a registered domestic partner rather than a spouse or that the couple are registered domestic partners rather than spouses, except that nothing in this section applies to modify eligibility for long-term care plans pursuant to Chapter 15 (commencing with Section 21660) of Par 3 of Division 5 of Title 2 of the Government Code [Public Employees' Long-Term Care Act]."

68.     Effective June 15, 2008, with the implementation of the California Supreme Court's constitutional determination in *In re Marriage Cases*, 43 Cal. 4th 757 (2008), same-sex couples who otherwise complied with the requirements for obtaining a marriage license in the State of California were entitled to marry under California law.

69.     Although the California Constitution was modified on November 4, 2008 by the passage of Proposition 8, eliminating the ability of same-sex couples to enter into a legally recognized relationship designated "marriage," marriages of same-sex couples that occurred

1    prior to the adoption of Proposition 8—including Plaintiffs' marriages—"remain valid in all

2    respects."  *Strauss v. Horton*, 36 Cal. 4th 364, 473-74 (2009).

3        70.    Moreover, same-sex couples in California, whether in legally recognized marriages or

4    domestic partnerships, "possess, under the state constitutional privacy and dues process clauses,

5    'the core set of basic substantive legal rights and attributes traditionally associated with

6    marriage,' including, 'most fundamentally, the opportunity of an individual to establish—with

7    the person with whom the individual has chosen to share his or her life—an officially

8    recognized and protected family possessing mutual rights and responsibilities and entitled to the

9    same respect and dignity accorded a union traditionally designated as marriage.'  Like opposite-

10   sex couples, same-sex couples enjoy this protection not as a matter of legislative grace, but of

11   constitutional right."  *Id.* at 411.

12       71.    Under California constitutional law, the Plaintiff couples must be accorded the same

13   status, responsibilities, and protections as married opposite-sex couples.  By failing to offer

14   enrollment equally to the Plaintiffs, the Board is discriminating in violation of California law.

15   **Violation of Federal Constitutional Protections.**

16       72.    The Plaintiff couples are similarly situated to California public employees and their

17   opposite-sex spouses.  In excluding same-sex spouses and domestic partners from the vast array

18   of family members permitted to enroll in a qualified long-term care plan, the federal Defendants

19   are violating the Plaintiffs' fundamental liberty and privacy interests in marital and familial

20   relationships, and are discriminating against them in violation of the guarantee of equal

21   protection.

22       73.    By implementing and conforming to the federal rules, and by excluding same-sex

23   spouses and domestic partners from the list of eligible participants in the Long-Term Care

24   Program, without basis, Defendants Board of Administration and Stausboll are violating

25   Plaintiffs' constitutionally protected rights to due process and equal protection.

26       74.    The state and federal statutes challenged herein are particularly noxious in that they

27   interfere and conflict with the State of California's ability to comply with its own state

28

Second Amended Complaint for Declaratory and Injunctive Relief                              19

1    constitutional mandates.  Here, the California Supreme Court has articulated and affirmed the

2    State's strong interest under the California Constitution in according couples in same-sex

3    relationships and their families the same legal responsibilities, benefits, and protections as

4    couples in opposite-sex relationships and their families.  In considering the legitimacy of federal

5    governmental interests, federal courts should endeavor to reconcile competing state interests.

6                    **INJUNCTIVE AND DECLARATORY RELIEF ALLEGATIONS**

7        75.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 64 as

8    though fully set forth herein.

9        76.    A present and actual controversy exists regarding the respective rights and obligations

10   of Plaintiffs and Defendants.  Plaintiffs desire a judicial determination of their rights and

11   Defendants' obligations in a declaration as to whether Defendants' conduct violates the United

12   States Constitution.

13       77.    Such a declaration is necessary and appropriate at this time in order that Plaintiffs may

14   ascertain their rights.  Such a declaration is also necessary and appropriate to prevent further

15   harm or infringement of Plaintiffs' rights.

16       78.    Plaintiffs have no adequate remedy at law and unless the relief requested herein is

17   granted, Plaintiffs will suffer irreparable harm by the deprivation of enrollment in a qualified

18   long-term care plan.

19                               **FIRST CLAIM FOR RELIEF**
20                              Violation of Fifth Amendment
                                      Due Process
21                               (against Federal Defendants)

22       79.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 78 as

23   though fully set forth herein.

24       80.    As United States citizens, Plaintiffs have fundamental liberty and privacy interests in

25   marital and familial relationships protected by the Fifth Amendment to the U.S. Constitution.

26       81.    Under federal statute, states are authorized to offer tax-shielded long-term care

27   insurance programs to public employees and a vast array of their family members, including

28

their opposite-sex spouses.  26 U.S.C.A. §§ 7702B(f)(1)-(2); 152(d)(2)(A)-(G).  Same-sex spouses and domestic partners are excluded.  *Id.*; 1 U.S.C. § 7.

82.     Plaintiffs' marriages and domestic partnerships are valid and legally recognized under California law, and are afforded identical rights, responsibilities, benefits, and protections under California law.

83.     By burdening the Plaintiffs' ability and autonomy to engage in financial and long-term care planning with their lawful spouses and domestic partners, the Defendants are violating the fundamental liberty and privacy interests in marital and familial relationships protected by the due process clause of the Fifth Amendment of the U.S. Constitution.

84.     As a proximate result of these unlawful acts, the Plaintiffs have suffered and continue to suffer irreparable injury.

85.     The Plaintiffs are entitled to relief, including declaratory relief and injunctive relief, and attorneys' fees and costs.

### SECOND CLAIM FOR RELIEF
Violation of Fifth Amendment
Equal Protection
(against Federal Defendants)

86.     Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 85 as if fully set forth herein.

87.     As United States citizens, the Plaintiffs are entitled to equal consideration and treatment from the federal government, and with respect to each and every program operated by the federal government, including the treatment of qualified long-term care insurance.

88.     Under federal statute, states are authorized to offer tax-shielded long-term care insurance programs to public employees and a vast array of their family members, including their opposite-sex spouses.  26 U.S.C.A. §§ 7702B(f)(1)-(2); 152(d)(2)(A)-(G).  Same-sex spouses and domestic partners are excluded.  *Id.*; 1 U.S.C. § 7.

89.     Plaintiffs' marriages and domestic partnerships are valid and legally recognized under California law, and are afforded identical rights, responsibilities, benefits, and protections under California law.

90.    By treating the Plaintiffs differently from similarly situated opposite-sex married couples without basis, the Defendants are violating their right to equal protection secured by the Fifth Amendment of the United States Constitution.

91.    As a proximate result of these unlawful acts, the Plaintiffs have suffered and continue to suffer irreparable injury.

92.    The Plaintiffs are entitled to relief, including declaratory relief, injunctive relief, and attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF
42 U.S.C. § 1983
For Violation of Due Process Clause of Fourteenth Amendment
(against Defendants Board of Administration and Stausboll)

93.    Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 92 as though fully set forth herein.

94.    Plaintiffs have fundamental liberty and privacy interests in marital and familial relationships protected against state interference by the due process clause of the Fourteenth Amendment of the U.S. Constitution.  Plaintiffs' marriages and domestic partnerships are valid and legally recognized under California law.

95.    By denying Plaintiffs the right to enroll in the CalPERS Long-Term Care Program, and by conforming the plan to the unconstitutional federal standards, Defendants Board of Administration and Stausboll, acting under color of state law, are unconstitutionally burdening Plaintiffs' ability and autonomy to engage in financial and health care planning with their legally recognized spouses and domestic partners, in violation of the due process clause of the Fourteenth Amendment.

96.    As a proximate result of these unlawful acts, the Plaintiffs have suffered and continue to suffer irreparable injury.

97.    The Plaintiffs are entitled to relief, including declaratory relief, injunctive relief, and attorneys' fees and costs.

/ / /

**FOURTH CLAIM FOR RELIEF**
42 U.S.C. § 1983
For Violation of Equal Protection Clause of Fourteenth Amendment
(against Defendants Board of Administration and Stausboll)

98.   Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 97 as though fully set forth herein.

99.   Plaintiffs have a right of equal protection secured by the Fourteenth Amendment to the Constitution.  Plaintiffs' marriages and domestic partnerships are valid and legally recognized under California law.  The State of California has an interest in treating Plaintiffs in a manner equal to similarly situated state employees and their opposite-sex spouses.

100.   By denying Plaintiffs the right to enroll in the CalPERS Long-Term Care Program, and by conforming the plan to the unconstitutional federal standards, Defendants Board of Administration and Stausboll, acting under color of state law, are unconstitutionally discriminating against Plaintiffs compared to similarly situated California public employees and their opposite-sex spouses in violation of the Fourteenth Amendment of the United States Constitution.

101.   As a proximate result of these unlawful acts, the Plaintiffs have suffered and continue to suffer irreparable injury.

102.   The Plaintiffs are entitled to relief, including declaratory relief, injunctive relief, attorneys' fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray that this Court:

1.   Enter an order declaring that 26 U.S.C.A. §§ 7702B(f)(1)-(2) (cross-referencing 152(d)(2)(A)-(G)) is unconstitutional to the extent it excludes same-sex spouses and registered domestic partners from enrollment in qualified long-term care plans;

2.   Enter an order declaring that Cal. Fam. Code § 297.5(g) is unconstitutional to the extent it excludes same-sex spouses and registered domestic partners from enrollment in the CalPERS Long-Term Care Program;

3.   Enter an order enjoining Defendant Board of Administration and Defendant Stausboll

1  |  from complying with these unconstitutional federal and state laws;

2  |    4. Enter an order directing the Defendant Board of Administration and Defendant

3  |  Stausboll to permit the enrollment of the same-sex spouses and registered domestic partners of

4  |  state employees during future open enrollment periods for its Long-Term Care Plan;

5  |    5. Enter an order enjoining Defendant United States Department of the Treasury,

6  |  Defendant Geithner, Defendant Internal Revenue Service, and Defendant Shulman from

7  |  challenging the tax-shielded "qualified" status of the CalPERS LTC Program;

8  |    6. Award attorneys' fees and costs; and

9  |    7. Grant any other relief that the Court deems just and proper.

10

11  |           Respectfully submitted,

12

13  |           THE LEGAL AID SOCIETY
         EMPLOYMENT LAW CENTER

14

15  |  Date:  August 12, 2011   By: _____/s/_____

16  |           Claudia Center

17  |           Attorneys for Plaintiffs

18

19

20

21

22

23

24

25

26

27

28

Second Amended Complaint for Declaratory and Injunctive Relief          24