TONY WEST
Assistant Attorney General

ARTHUR R. GOLDBERG (DC Bar No. 180661)
Assistant Branch Director

JEAN LIN (NY Bar No. 4074530)
Senior Trial Counsel
United States Department of Justice
Civil Division
Federal Programs Branch
20 Massachusetts Ave., N.W.
Washington, DC 20530
(202) 514-3716
(202) 616-8470 (Fax)
jean.lin@usdoj.gov
Attorneys for Federal Defendants

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DRAGOVICH, MICHAEL GAITLEY, ELIZABETH LITERAL, PATRICIA FITZSIMMONS, CAROLYN LIGHT, CHERYL LIGHT, DAVID BEERS, CHARLES COLE, RAFAEL V. DOMINGUEZ, and JOSE G. HERMOSILLO, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>UNITED STATES DEPARTMENT OF THE TREASURY, TIMOTHY GEITHNER, in his official capacity as Secretary of the Treasury, United States Department of the Treasury, INTERNAL REVENUE SERVICE, DOUGLAS SHULMAN, in his official capacity as Commissioner of the Internal Revenue Service, BOARD OF ADMINISTRATION OF CALIFORNIA PUBLIC EMPLOYEES' RETIREMENT SYSTEM, and ANNE STAUSBOLL, in her official capacity as Chief Executive Officer, CalPERS,<br><br>Defendants. | No. 4:10-CV-01564-CW<br>Hearing: October 27, 2011, 2 p.m.<br><br>FEDERAL DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS SECOND AMENDED COMPLAINT |

**TABLE OF CONTENTS**

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

I.  SECTION 7702B(f) DOES NOT VIOLATE THE EQUAL
    PROTECTION GUARANTEES OF THE CONSTITUTION . . . . . . . . . . . . . . . 2

    A.  Section 7702B(f) Is Subject to Rational Basis Review
        Because It Is Neutral and Does Not Classify On the Basis
        of Sexual Orientation or Gender . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

    B.  Plaintiffs' Disparate Impact Argument Fails Because There
        Is No Discriminatory Intent to Exclude Same-Sex Domestic
        Partners. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    C.  Section 7702B(f) Satisfies Rational Basis Review . . . . . . . . . . . . . . . . 10

II. PLAINTIFFS HAVE FAILED TO STATE A SUBSTANTIVE
    DUE PROCESS CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**TABLE OF AUTHORITIES**

**CASES**

Arlington Heights v. Metro. Housing Dev. Corp.,
    429 U.S. 252 (1977) .................................................... 7, 8

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) ................................................... 6

Bowen v. Gilliard,
    483 U.S. 587 (1987) ..................................................... 14

Califano v. Goldfarb,
    430 U.S. 199 (1977) ..................................................... 13

Califano v. Jobst,
    434 U.S. 47 (1977) ...................................................... 15

Cleveland Bd. of Educ. v. LaFleur,
    414 U.S. 632 (1974) ..................................................... 14

Dandridge v. Williams,
    397 U.S. 471 (1970) ..................................................... 12

Fitzgerald v. Racing Ass'n of C. Iowa,
    539 U.S. 103 (2003) ..................................................... 10

Geduldig v. Aiello,
    417 U.S. 484 (1974) ...................................................... 7

Griggs v. Duke Power,
    401 U.S. 424 (1971) ...................................................... 6

Harris v. McRae,
    448 U.S. 297 (1980) ..................................................... 15

Heller v. Doe,
    509 U.S. 312 (1993) .................................................. 11, 12

Hernandez v. New York,
    500 U.S. 352 (1991) ...................................................... 7

Hynson v. City of Chester, Legal Dep't,
    864 F.2d 1026 (3d Cir. 1988) ............................................. 8

Lawrence v. Texas,
    539 U.S. 558 (2003) ..................................................... 14

Leathers v. Medlock,
    499 U.S. 439 (1991) ..................................................... 12

In re Marriage Cases,
    183 P.3d 384 (Cal. 2008) ................................................ 12

Moore v. East Cleveland,
    431 U.S. 494 (1977) .................................................. 14

Moritz v. C.I.R.,
    469 F.2d 466 (10th Cir. 1972) ......................................... 13

Navarro v. Block,
    72 F.3d 712 (9th Cir. 1995) ............................................ 7

Pers. Admin. of Mass. v. Feeney,
    442 U.S. 256 (1979) .............................................. passim

Regan v. Taxation With Representation of Wash.,
    461 U.S. 540 (1983) .................................................. 15

San Antonio Independent School District v. Rodriguez,
    411 U.S. 1 (1973) .................................................... 10

Vance v. Bradley,
    440 U.S. 93 (1979) ................................................... 12

Washington v. Davis,
    426 U.S. 229 (1976) ................................................... 6

Washington v. Glucksberg,
    521 U.S. 702 (1997) .................................................. 13

Wayte v. United States,
    470 U.S. 598 (1985) ................................................... 7

Watson v. City of Kansas City,
    857 F.2d 690 (10th Cir. 1988) ......................................... 8

Weinberger v. Wiesenfeld,
    420 U.S. 636 (1975) .................................................. 13

Willowbrook v. Olech,
    528 U.S. 562 (2000) ................................................... 6

Yick Wo v. Hopkins,
    118 U.S. 356 (1886) ................................................... 7

**STATUTES**

26 U.S.C. § 2 ............................................................. 4

26 U.S.C. § 51 ............................................................ 4

26 U.S.C. § 151 ........................................................... 3

26 U.S.C. § 152 ...................................................... passim

26 U.S.C. § 170(g) ........................................................ 4

26 U.S.C. § 529 ......................................................... 4

26 U.S.C. § 7702B ................................................. passim

Nev. Rev. Stat. § 122A.200 ............................................ 12

Nev. Rev. Stat. § 122A.210 ............................................ 12

R.I. Gen. Laws. Ann. § 15-3.1-1, *et seq.* (West 2011) ................... 5

Working Families Tax Relief Act of 2004, Pub. L. 108-311, 118 Stat. 1166 § 207 ......... 10

An Act to Amend Title 13 of the Delaware Code Relating to Civil Unions,
S. 30, 146th Gen. Assemb. (Del. 2011) ..................................... 5

## LEGISLATIVE HISTORY

100 Cong. Rec. 8994 (daily ed. June 28, 1954) ............................ 3

Federal defendants respectfully submit this reply in support of their motion to dismiss Plaintiffs Rafael V. Dominguez's and Jose G. Hermosillo's constitutional challenges to subsection (f) of 26 U.S.C. § 7702B on the basis that it discriminates against them because of their status as same-sex domestic partners.  In 1996, Congress enacted § 7702B as part of the Health Insurance Portability and Accountability Act ("HIPAA") to provide favorable tax treatment to all qualified long term care insurance plans.  The purpose was to encourage individuals to take financial responsibility for their long term care needs.  Consistent with that statutory purpose, Congress inserted subsection (f) to make clear that a state-maintained long term care plan can receive the same favorable tax treatment if coverage is offered to state employees, their spouses, and a list of relatives identified in another part of the tax code.  That list does not cover the domestic partner of a state employee, whether or not of the same sex; indeed, no state recognized domestic partnerships at that time.

In their opening brief, federal defendants demonstrated that § 7702B(f)'s non-inclusion of domestic partners does not violate either the equal protection guarantees of the Constitution or substantive due process principles.  Section 7702B(f) does not burden a fundamental right because the interest Plaintiffs identified – namely, the ability and autonomy to engage in financial and long term care planning as same-sex domestic partners – is not such a right.  Nor does § 7702B(f) classify on the basis of sexual orientation or any other protected class because, as an examination of state domestic partnership laws demonstrates, the term "domestic partner" is not, by definition, synonymous with "same-sex partner."  Only two states today limit domestic partnerships to same-sex couples.  For these reasons, § 7702B(f) needs to satisfy only rational basis review, which does not demand a perfect fit between the means and the ends.  Section 7702B(f) satisfies that constitutional standard.  Although the provision may be underinclusive in light of subsequent state law recognition of domestic partnerships, it clearly furthers a legitimate government interest in encouraging state employees and many (even if not necessarily all) members of their families to take financial responsibility for their long term care needs.

Plaintiffs have not rebutted federal defendants' showings.  They argue that § 7702B(f) constitutes invidious discrimination because the non-inclusion of domestic partners is a proxy to

discriminate against gay and lesbian couples. But § 7702B(f) is neutral with respect to sexual orientation, both on its face and as applied, because it uniformly excludes not only same-sex and opposite-sex domestic partners but also a host of individuals who otherwise may be considered "qualifying relatives" of taxpayer state employees under the tax code. Although Plaintiffs also claim that § 7702B(f) disproportionately impacts same-sex domestic partners, such a claim requires a showing of purposeful discrimination in that the decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects on an identifiable group." *Personnel Admin. of Mass. v. Feeney,* 442 U.S. 256, 279 (1979). Plaintiffs cannot make that showing. Nothing in the legislative history of § 7702B(f) indicates that Congress's decision not to include a broader category of "qualifying relatives" on the list of those eligible to access qualified state-maintained long term care insurance was motivated by an intent to discriminate against gay and lesbian individuals with same-sex domestic partners. Nor is there any basis to infer a discriminatory motive from Congress's silence on this issue, particularly because states did not begin to recognize domestic partnerships until years after § 7702B(f)'s enactment. Accordingly, Plaintiffs' same-sex domestic partners claim against federal defendants should be dismissed.

**ARGUMENT**

**I.    SECTION 7702B(f) DOES NOT VIOLATE THE EQUAL PROTECTION GUARANTEES OF THE CONSTITUTION**

    **A.    Section 7702B(f) Is Subject to Rational Basis Review Because It Is Neutral and Does Not Classify On the Basis of Sexual Orientation or Gender.**[1]

Plaintiffs argue that § 7702B(f) classifies on the basis of sexual orientation and even gender because the exclusion of domestic partners is a proxy for excluding gay and lesbian domestic partners. In support of this claim, they point to the facts that Congress did not include same-sex domestic partners in the list of eligible relatives; that it excluded a provision that would

---

[1] As federal defendants noted in their opening brief (at 14 n.12), applying the framework established by the Supreme Court, the President and the Attorney General have concluded, in the context of Defense of Marriage Act cases, that classifications based on sexual orientation should be subject to a heightened standard of scrutiny.

have covered same-sex domestic partners; and that it enacted the Defense of the Marriage Act. Pls' Opp'n 4-5, ECF No. 98.  Specifically, Plaintiffs claim that but for DOMA, they could be deemed spouses under California law for purposes of § 7702B(f), and moreover, that California's domestic partnership law was motivated by an intent to exclude gay and lesbian couples from the legal status of marriage.  Pls' Opp'n 11.  DOMA, of course, is not at issue in this motion to dismiss, nor is the constitutionality of California's domestic partnership law.

Plaintiffs' challenge to § 7702B(f) fails because the provision is neutral both on its face and as applied.  Section 7702B(f)(2) provides that coverage under a qualified state long term care plan may be provided only to current or former state employees, their spouses, and "individuals bearing a relationship to such employees or spouses which is described in any of subparagraphs (A) through (G) of section 152(d)(2)." 26 U.S.C. § 7702B(f)(2)(C)(iii).  Those subparagraphs – plus subparagraph (H) – define the term "qualifying relative" for purposes of determining who may be a taxpayer's "dependent" for dependent exemptions under 26 U.S.C. § 151.  They are:

    (A)    A child or a descendant of a child.

    (B)    A brother, sister, stepbrother, or stepsister.

    (C)    The father or mother, or an ancestor of either.

    (D)    A stepfather or stepmother.

    (E)    A son or daughter of a brother or sister of the taxpayer.

    (F)    A brother or sister of the father or mother of the taxpayer.

    (G)    A son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, or sister-in-law.

26 U.S.C. § 152(d)(2).  This is a neutral list of relatives.

Congress's decision not to include subparagraph (H), which would have authorized coverage for domestic partners, is also neutral on its face.  Subparagraph (H) covers:

> An individual (other than an individual who at any time during the taxable year was the spouse, determined without regard to section 7703, of the taxpayer) who, for the taxable year of the taxpayer, has the same principal place of abode as the taxpayer and is a member of the taxpayer's household.

26 U.S.C. § 152(d)(2)(H).  The subparagraph, along with the subparagraphs (A) through (G),

was initially enacted in 1954 to allow taxpayers "to claim a dependency deduction for any person whom [the taxpayer] supports and who lives in [the taxpayer's] home, regardless of relationship." 100 Cong. Rec. 8994 (daily ed. June 28, 1954). A taxpayer can claim a dependent exemption for a "qualifying relative," as defined in subparagraphs (A)-(H), if the gross income of such a relative is less than the exemption amount and the taxpayer contributed over one-half of the relative's support during the taxable year. *See* 26 U.S.C. §§ 151-52.

Notwithstanding Plaintiffs' attempt to suggest otherwise, subparagraph (H) is not a "proxy" for same-sex domestic partners. The subparagraph is essentially a catch-all provision that covers many individuals other than domestic partners, including for example, the taxpayer's cousins, his or her live-in boyfriend or girlfriend and the boyfriend's or girlfriend's children, the children of the taxpayer's step-siblings, more distant relatives or entirely unrelated persons who reside with the taxpayer during the taxable year. Throughout the tax code, subparagraph (H) is excluded in a variety of contexts, with no apparent design to target a taxpayer's same-sex domestic partner. For example, in computing the work opportunity credit in 26 U.S.C. § 51, no wages are taken into account with respect to an individual who bears a relationship described in § 152(d)(2)(A) through (G) to the taxpayer, but subparagraph (H) is not included in this computation. Similarly, for higher education tuition programs that are exempt from taxation, subparagraph (H) is excluded from the definition of the term "member of the family" for purposes of determining whether a change of the designated beneficiary should be treated as a distribution. *See* 26 U.S.C. § 529. And under the provision governing charitable contributions, subparagraph (H) is excluded from the definition of the term "taxpayer's relative" for purposes of determining the tax treatment of amounts paid to maintain certain students as members of the taxpayer's household. *See* 26 U.S.C. § 170(g). Also, a taxpayer cannot be considered a head of a household by reason of an individual who would not be a dependent for the taxable year but for subparagraph (H). *See* 26 U.S.C. § 2 (b)(3)(B)(i)

The fact that domestic partners are among those who would be covered by § 152(d)(2)(H) does not mean that this provision is a proxy for same-sex domestic partners. There is nothing about the term "domestic partner" that inherently limits its meaning to a partner

of the same sex. As explained in federal defendants' opening brief (at 14-15), of the nine states plus the District of Columbia that recognize domestic partnerships, only two states, Oregon and Wisconsin, limit domestic partnerships to same-sex couples. In four states and the District of Columbia, both same-sex and opposite-sex cohabiting adults are eligible to form a domestic partnership, and in three additional states, opposite-sex couples can also form domestic partnerships if at least one or both of the partners are 62 years of age or older. In other words, even had Congress intended to single out domestic partners for less favorable treatment by excluding § 152(d)(2)(H), the exclusion is not a classification based on sexual orientation or gender. Notably, in the few states that recognize civil unions, that option is not necessarily limited to only same-sex couples.[2] In still other states that provide alternative legal arrangements, such as designated beneficiaries or reciprocal beneficiaries, so that two unmarried adults may obtain certain rights and financial protections, those legal arrangements are available without regard to the sexual orientation of the two unmarried adults. *See* Fed. Defs' Opening Br. 14-15. And all of these alternative arrangements could be covered by § 152(d)(2)(H).

In addition to being facially neutral, § 7702B(f) is applied uniformly without regard to sexual orientation or gender. Unlike in areas such as employment, peremptory challenges in jury selection, and housing, where there is a possibility for selective enforcement or inconsistent application, § 7702B(f) is a tax provision that is binding on all state long term care plans that seek to have the enrollees receive the favorable tax treatment under § 7702B. It excludes same-sex domestic partners the same way it excludes opposite-sex domestic partners and a host of other individuals who fall within § 152(d)(2)(H), such as the taxpayer's cousins, live-in

---

[2] As noted in the federal defendants' opening brief (at 14), Illinois and Hawaii do not limit civil unions to same-sex couples. Although the opening brief noted (at 14 n. 13) that only New Jersey limited civil unions (as opposed to domestic partners) to same-sex couples, by 2012, Delaware's new civil union law will also limit such unions to same-sex couples. *See* An Act to Amend Title 13 of the Delaware Code Relating to Civil Unions, S 30, 146th Gen. Assemb. (Del. 2011). In addition, in Rhode Island, where both same-sex and opposite-sex couples may enter into domestic partnerships, its legislature passed a new civil union law to allow same-sex couples to enter into such unions. R.I. Gen. Laws. Ann. § 15-3.1-1, *et seq*. (West 2011). In any event, civil unions are not in issue here.

boyfriends or girlfriends and their children, and other members of the taxpayer's extended family. In sum, § 7702B(f) is a neutral tax provision that does not classify on the basis of any suspect or quasi-suspect group, and thus should be reviewed under the deferential rational basis standard of review.

### B. Plaintiffs' Disparate Impact Argument Fails Because There Is No Discriminatory Intent to Exclude Same-Sex Domestic Partners.

Plaintiffs argue that even if § 7702B(f) is viewed as neutral, it nevertheless reflects invidious discrimination because it disproportionately impacts same-sex domestic partners. In alleging such disparate impact, Plaintiffs simply assert that there are more same-sex domestic partners than opposite-sex domestic partners in California. But as discussed before, only two states limit domestic partnerships to same-sex couples, and this federal tax provision affects not only same- and opposite-sex domestic partners but also a host of other individuals who may be members of the taxpayer's household but do not fall within § 152(d)(2)(A)-(G). In other words, Plaintiffs cannot establish that § 7702B(f) has a disparate impact nationally on same-sex domestic partners seeking to enroll in qualified state-maintained long term care insurance plans.

Even assuming that § 7702B(f) has a disparate impact on same-sex domestic partners across the United States, such disparate impact is insufficient to state a constitutional claim. Unlike in the employment discrimination context under Title VII of the Civil Rights Act, where liability can be established by proof of disparate impact alone, *see, e.g., Griggs v. Duke Power*, 401 U.S. 424 (1971), it is well established that to succeed on a constitutional claim based on disparate impact on a suspect or quasi-suspect class, a plaintiff must show that the defendant acted with discriminatory intent or purpose. *See Washington v. Davis,* 426 U.S. 229, 242 (1976) ("[W]e have not held that a law, neutral on its face and serving ends otherwise within the power of the government to pursue, is invalid under the Equal Protection Clause simply because it may affect a greater proportion of one race than of another."); *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Where the claim is invidious discrimination in contravention of the First and Fifth Amendments, [the Supreme Court's] decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose."); *Willowbrook v. Olech,* 528 U.S. 562,

564 (2000); *Hernandez v. New York,* 500 U.S. 352, 359-60 (1991); *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 264-65 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").

Under Supreme Court precedent, purposeful discrimination requires more than "intent as volition or intent as awareness of consequences." *Feeney,* 442 U.S. at 279. It involves a decisionmaker "select[ing] or reaffirm[ing] a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.*; *accord Hernandez,* 500 U.S. at 359-60; *Wayte v. United States,* 470 U.S. 598, 610 (1985). To be sure, there may be exceptional cases where the disparate impact of a facially neutral policy is so severe that the statistical pattern is "unexplainable on grounds other than [purposeful discrimination]." *Arlington Heights,* 429 U.S. at 266. In *Yick Wo v. Hopkins*, 118 U.S. 356 (1886), for example, the discretionary waiver of a building ordinance was denied to over 200 Chinese applicants, but granted to all but one non-Chinese applicant. But such cases are "rare," and absent an equally "stark" pattern, there must be evidence of purposeful discrimination. *Arlington Heights*, 429 U.S. at 266.

Thus, a long line of Supreme Court cases establishes "the fundamental principle that "'official action will not be held unconstitutional solely because it results in a [] disproportionate impact'" on a protected class. *Hernandez,* 500 U.S. at 359-60 (quoting *Arlington Heights,* 429 U.S. at 264-65). *See, e.g., Feeney,* 442 U.S. at 279-80 (finding no evidence that state intended to discriminate against women by granting lifetime preference to veterans for civil service positions, even though over ninety-eight percent of veterans in state were male); *Arlington Heights,* 429 U.S. at 270-71 (finding no evidence that city intended to discriminate against racial minorities by refusing to rezone property from single-family to multiple-family units, despite a showing that most minorities could only afford multiple-family units); *Geduldig v. Aiello,* 417 U.S. 484, 496-97 & n. 20 (1974) (exclusion of disability that accompanies normal pregnancy and childbirth from insurance system did not constitute invidious discrimination, absent evidence that pregnancy was a pretext to effect discrimination against women); *see also Navarro v. Block,* 72 F.3d 712, 716 (9th Cir. 1995) (challenge to county's custom of not classifying domestic

violence calls as an emergency fails to make out a disparate impact claim because there was no invidious intent or motive to discriminate against women); *see Hynson v. City of Chester, Legal Dep't,* 864 F.2d 1026, 1031 (3d Cir. 1988) (finding domestic violence and non-domestic violence categories used by police in administering law insufficient to raise claim for gender-based discrimination absent showing of intent to discriminate against women); *Watson v. City of Kansas City,* 857 F.2d 690, 697 (10th Cir. 1988) (same).

Applying these precedents here, Plaintiffs cannot establish that Congress acted with the requisite intent to discriminate against same-sex domestic partners when enacting § 7702B(f). In addition to the fact that no state recognized domestic partnerships at that time, Plaintiffs cannot dispute that the legislative history of 7702B(f) is completely devoid of any statement suggesting the presence of an intent to discriminate against same-sex domestic partners. Plaintiffs rely heavily on statements made in connection with the enactment of the Defense of Marriage Act, which was debated and passed during the same legislative session in which § 7702B(f) was enacted. But DOMA is about the definition of "spouse" and "marriage" for purposes of federal law, whereas § 7702B(f) and the broader statutory scheme of § 7702B, enacted as part of HIPAA, is about providing tax benefits to qualified long-term care insurance plans so that individuals would be encouraged to make long term care planning. As explained above, although Plaintiffs assert that Congress specifically decided to *exclude* same-sex domestic partners from § 7702B(f), the more reasonable reading of the statute and the legislative history is that Congress simply decided *not to include* the broad catch-all category of those who qualify as dependents for tax purposes. It is simply too far of a leap to infer a discriminatory intent and motive against same-sex domestic partners in § 7702B(f) from the enactment of DOMA.

Plaintiffs also seek to rely on the general history of discrimination against gays and lesbians and the federal government's alleged antipathy towards them in other federal laws, including Congress's decision not to fund the domestic partner registry in the District of Columbia between 1992 and 2002, which treats both same-sex and opposite-sex couples equally. *See, e.g.,* District of Columbia Appropriations Act, 1993, Pub. L. No. 102-382, 106 Stat. 1422 (1992) ("No funds made available pursuant to any provision of this Act shall be used to

1  implement or enforce any system of registration of unmarried, cohabiting couples *whether they
2  are homosexual, lesbians, or heterosexual . . .* ") (emphasis added).  The proposition that –
3  because there has been a history of discrimination against gays and lesbians, any facially neutral
4  federal law that impacts same-sex domestic partners must have been motivated by a specific
5  congressional intent to discriminate against such a group – has no support in the Supreme
6  Court's equal protection jurisprudence.  As discussed above, to show a violation of the Equal
7  Protection Clause, there must be proof that Congress chose a particular course of action – in this
8  case, excluding § 152(d)(2)(H) from the list of eligible relatives in § 7702B(f)(2), or considering
9  and then rejecting the inclusion of domestic partners as a separate category of qualifying
10 relatives – because of a discriminatory intent to exclude *same-sex* domestic partners.  But
11 nothing in the purpose or legislative history of § 7702B(f) indicates that Congress even thought
12 about domestic partners, whether same- or opposite-sex, let alone acted because of, not in spite
13 of, the potential impact on same-sex domestic partners.

14        Plaintiffs do not dispute that no state had legally recognized domestic partnerships in
15 1996 when § 7702B was enacted.  Nevertheless, they insist that Congress should have
16 specifically included domestic partners as eligible relatives for purposes of § 7702B(f) state
17 plans because by 1996, local municipalities had begun to establish domestic partnership
18 registries.  But the Equal Protection Clause contains no such mandate.  At best, the existence of
19 local domestic partnership registries suggest that Congress may have been aware that some states
20 might later recognize domestic partners, and thus that the definition of eligible relatives for a
21 § 7702B(f) state plan might in the future impact domestic partners recognized by state law.  This
22 hypothesis, even if true, does not amount to an equal protection violation because as noted
23 before, purposeful discrimination requires more than "intent as volition or intent as awareness of
24 consequences."  *Feeney,* 442 U.S. at 279.

25        Equally without merit is Plaintiffs' argument that in "reenacting" § 7702B in 2004,
26 Congress should have taken steps to account for the fact that by then, four states had enacted
27 domestic partnership laws, *see* Pls' Opp'n 1, 5 (citing Maine, California, New Jersey, and
28 Washington), even if those states did not limit domestic partnerships to same-sex couples, *see*

1  Fed. Defs' Opening Br. at 14.  Again, there is no evidence that Congress even considered the
2  issue in 2004.  The amendment in 2004 was not a "reenactment"; it was a "technical and
3  conforming" amendment and is explicitly characterized as such.  *See* Working Families Tax
4  Relief Act of 2004, Pub.  L. 108-311, 118 Stat. 1166 § 207 ("Technical and Conforming
5  Amendments").  Specifically, "section 7702B(f)(2)(C)(iii) [was] amended by striking paragraphs
6  (1) through (8) of section 152(a) and inserting subparagraphs (A) through (G) of section
7  152(d)(2)."  *Id.*  The amendment was due to the fact that the list of eligible relatives, borrowed
8  from § 152's definition of "dependent," was moved from § 152(a)(1)-(8) to § 152(d)(2)(A)-(G).
9  Indeed, other parts of the tax code were similarly revised wherever § 152(a)(1)-(8) appeared.
10 *See id.* § 207(5), (16), (18), (21).  There was no substantive change at all.

11       In sum, Plaintiffs' disparate impact argument fails because there is no purposeful
12 discrimination.  Importantly, in the area of taxation, it is especially hazardous to infer
13 discriminatory purpose from discriminatory impact.  As the Supreme Court noted in *San Antonio*
14 *Independent School District v. Rodriguez,* 411 U.S. 1, 41 (1973), "[n]o scheme of taxation,
15 whether the tax is imposed on property, income, or purchases of goods and services, has yet been
16 devised which is free of all discriminatory impact."  "The task of classifying persons for . . .
17 benefits . . . inevitably requires that some persons who have an almost equally strong claim to
18 favored treatment be placed on different sides of the line, and the fact the line might have been
19 drawn differently at some points is a matter for legislative, rather than judicial, consideration."
20 *Fitzgerald v. Racing Ass'n of C. Iowa*, 539 U.S. 103, 108 (2003) (internal quotation marks and
21 citation omitted).  To accept Plaintiffs' argument here would call into question the
22 constitutionality of many taxes because they inevitably impact some people who fall on the other
23 side of the line.

24       **C.    Section 7702B(f) Satisfies Rational Basis Review.**

25       Plaintiffs argue that § 7702B(f) fails rational basis review because in enacting § 7702B,
26 "Congress set forth no particular interest in excluding legally recognized same-sex [domestic]
27 partners from state-provided long-term care plans."  Pls' Opp'n 20.  But the rational basis review
28 standard does not require Congress to provide such an explanation, just as it does not require

Congress to explain why it excluded § 152(d)(2)(H) from § 7702B(f) or some other parts of the tax code. This is so because there can be no dispute that § 7702B(f) serves the legitimate government in encouraging state employees and their families to take financial responsibility for their long-term care need. As noted before, § 7702B(f) is neutral both on its face and as applied. Under rational basis review, it must be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 319-20 (1993). In addition to the fact that the government "has no obligation to produce evidence to sustain the rationality of a statutory classification" such as this, *id.*, in this case Congress reasonably did not include a separate category for domestic partners because, again, in 1996, no state had legally recognized domestic partnerships. Congress reasonably could have decided to limit eligibility for a § 7702B state plan to a state employee's family members that are easily verifiable under state law, namely those listed in § 152(d)(2)(A)-(G). The catch-all provision of § 152(d)(2)(H), on the other hand, is not a convenient proxy for determining eligibility for long term care insurance coverage because it is based on the individual living with the taxpayer during a given taxable year; that relationship may change from year to year.

Congress reasonably could have also concluded that excluding individuals described under § 152(d)(2)(H) would not affect the statute's overall purpose of encouraging long term care planning because anyone else not eligible for the state plan can still purchase private § 7702B insurance coverage and receive the same tax benefits. And because insurance is a heavily regulated industry, Congress could have further concluded that there would not be any material difference between qualified state long term care plans and private § 7702B plans. The long list of consumer protections mandated by California for long term care insurance – including guaranteed renewal, rate stabilization protection, inflation protection, and the ability to reduce benefits or decrease the period coverage in order to lower the premiums – supports this point. *See* Fed. Defs' Opening Br. 6-7, 21.

Although § 7702B(f) may be considered underinclusive given that today nine states recognize domestic partnerships, the central feature of rational basis review is that legislative classifications may be "both underinclusive and overinclusive" and "perfection is by no means

1 required." *Vance v. Bradley*, 440 U.S. 93, 108 (1979). It is by now well established that "courts are compelled under rational-basis review to accept a legislature's generalization even when there is an imperfect fit between means and ends," *Heller*, 509 U.S. at 321, and a classification does not fail simply because it "is not made with mathematical nicety or because in practice it results in some inequality." *Dandridge v. Williams*, 397 U.S. 471, 485 (1970). Further, this already highly deferential review is enhanced in the taxation context. *See Leathers v. Medlock*, 499 U.S. 439, 451 (1991) ("Inherent in the power to tax is the power to discriminate in taxation. Legislatures have especially broad latitude in creating classifications and distinctions in tax statutes.") (internal quotation marks omitted).

Put differently, in legislating the federal tax code, Congress need not try to account for the legal landscape in a every state or predict what states might do in the future. Here, California was one of the first states to recognize domestic partners, and that was three years after Congress enacted § 7702B(f). And it was not until another four years later in 2003 that the California legislature significantly expanded the scope of the rights of domestic partners. But even then, California still did not give domestic partners the same treatment as spouses in the area of state income taxation. *See In re Marriage Cases*, 183 P.3d 384, 413, 415 (Cal. 2008). That disparity was eliminated in 2006, a decade after the enactment of § 7702B(f). *See id.* Even had Congress predicted these developments in 1996, it reasonably could have decided to wait for the evolution of state treatment of domestic partner issues, including whether domestic partners are treated as spouses under state law. Indeed, even today, only three states treat domestic partners the same as spouses. *See* Fed. Defs' Opening Br. 17. In one additional state, domestic partners are treated as spouses, but state law still provides that public and private employers are not required to provide health care benefits to or for the domestic partner of an employee. *See* Nev. Rev. Stat. §§ 122A.200, 122A.210.

In sum, Congress's decision not to include a broad catch-all category of financial dependents as eligible for access to state-maintained long term care insurance plans was neither irrational nor arbitrary, and satisfies rational basis review.

## II. PLAINTIFFS HAVE FAILED TO STATE A SUBSTANTIVE DUE PROCESS CLAIM

Like their equal protection claim, Plaintiffs' substantive due process challenge to § 7702B(f) fails. As articulated by Plaintiffs, § 7702B affects their "family stability" by placing an "impermissible obstacle to the Plaintiffs' ability to access long-term care insurance" and burdens "their ability and autonomy to engage in financial and long-term care planning with their . . . domestic partners." Pls' Opp'n 24 and 25. Plaintiffs argue that "they experience this discriminatory government barrier solely on the basis of their status as lesbians and gay men who have entered into legally recognized same-sex partnerships." *Id.* at 24.

As an initial matter, Plaintiffs' argument conflates their equal protection challenge, which is based on their status as same-sex domestic partners, with their substantive due process challenge. The three cases they cite as central support for the proposition that § 7702B(f) "penalizes protected family choices" in violation of the Due Process Clause of the Constitution are actually equal protection cases involving challenges to legislative classifications: *Califano v. Goldfarb*, 430 U.S. 199 (1977) (equal protection challenge to gender-based distinction in Social Security Act between widows and widowers and gender-based discrimination against covered female wage earners); *Weinberger v. Wiesenfeld*, 420 U.S. 636 (1975) (same); *Moritz v. C.I.R.*, 469 F.2d 466 (10th Cir. 1972) (challenge to legislative classification that denies a certain tax deduction solely to a man who has never married but allows it for women and widowers, divorcees, and husbands under certain circumstances). *See* Pls' Opp'n 24. These cases therefore provide no support for Plaintiffs' substantive due process claim.

As federal defendants discussed extensively in their opening brief (at 9-13), for their substantive due process claim to be reviewed under heightened scrutiny, Plaintiffs must identify a fundamental right or a significant liberty interest, the exercise of which is burdened by the challenged tax code. *See Washington v. Glucksberg*, 521 U.S. 702, 721 (1997) (requiring "a careful description of the asserted fundamental liberty interest"). Neither the "ability to access long-term care insurance" nor the "ability and autonomy to engage in financial and long-term care planning" is such a fundament right or significant liberty interest. Pls' Opp'n 24-25.

Section 7702B(f) does not infringe on an aspect of the fundamental right to family integrity because a state employee's inability to purchase state-maintained long term care insurance for his or her domestic partner does not affect whether they may remain together, enjoy familial privacy, or raise children as permitted by state law. In fact, the provision dose not intrude into the state employee's private family life at all. The decision to have long term care insurance to ensure family stability simply does not have the same constitutional footing as the decision to live with one's family, as in *Moore v. East Cleveland*, 431 U.S. 494 (1977), or the decision to bear or beget a child, as in *Cleveland Bd. of Educ. v. LaFleur*, 414 U.S. 632 (1974). Section 7702B(f) in no way "slic[es] deeply into the family itself" or directly affects the "freedom of personal choice in matters of marriage and family life." *Moore*, 431 U.S. at 498-99, *see also LaFleur*, 414 U.S. at 640. It also does not implicate Plaintiffs' significant liberty interests in the "autonomy of the person" recognized by the Supreme Court in *Lawrence v. Texas*, 539 U.S. 558, 574 (2003), because there is no government interference with Plaintiffs' choices about intimate relationships. *See id*. The liberty interest discussed in *Lawrence* is concerned with the autonomy of the person to make choices about intimate relationships free from governmental sanction; that liberty interest does not encompass "the autonomy to engage in financial and long-term care planning." Pls' Opp'n at 24.

Plaintiffs argue that the government may not place obstacles in the path of a person's exercise of fundamental rights, but they do not explain how § 7702B(f) is such an obstacle. Indeed, Plaintiffs are already registered as domestic partners under California law and live together as a couple. Even assuming for the sake of argument that access to state-maintained long term care insurance coverage constitutes a subsidy to Plaintiffs' exercise of a fundamental right to live together, and that the lack of such a subsidy imposes a financial burden on Plaintiffs' family unit, § 7702B(f) still does not constitute an intrusion "on choices concerning family living arrangements." *Bowen v. Gilliard*, 483 U.S. 587, 601-02 (1987) (holding that amendment to government aid program does not violate substantive due process despite evidence that the amendment severely impacted some families with dependent children; simply because some families may modify their living arrangements does not transform the amendment into an act

whose design and direct effect are to "intrud[e] on choices concerning family living arrangements"). This is much like the loss of federal social security benefits upon marriage, which does not implicate substantive due process because it does not "interfere with the individual's freedom to make a decision as important as marriage." *Califano v. Jobst*, 434 U.S. 47, 54 (1977).

As federal defendants previously explained, the Supreme Court has "held in several contexts that a legislature's decision not to subsidize the exercise of a fundamental right does not infringe the right." *Regan v. Taxation with Representation of Wash.,* 461 U.S. 540, 549 (1983). Thus, in *Harris v. McRae*, 448 U.S. 297, 316 (1980), the Supreme Court rejected the argument that government funding restrictions on abortions constituted a penalty on a woman's exercise of that protected activity. As the Supreme Court explained, "a refusal to fund protected activity, without more, cannot be equated with the imposition of a 'penalty' on that activity." *Id.* at 317 n.19. Although the government may not place obstacles in the path of a woman's exercise of her freedom of choice, that freedom does not "carr[y] with it a constitutional entitlement to the financial resources to avail herself of the full range of protected choices." *Id.* at 316. Similarly here, whatever the potential economic impact the lack of access to a state-maintained long term care insurance may have on Plaintiffs' family unit, such impact is not a penalty on Plaintiffs' exercise of any fundamental right. Nor is it a government interference with any liberty interest protected by the Constitution.

## CONCLUSION

For the foregoing reasons and the reasons stated in federal defendants' opening brief, this Court should grant federal defendants' motion to dismiss the First and Second Claims for Relief with respect to the issue of domestic partners in Plaintiffs' Second Amended Complaint and dismiss Plaintiffs Rafael V. Dominguez and Jose G. Hermosillo from this case.

Date:   October 13, 2011                                          Respectfully Submitted,

                                                                    /s/ *Jean Lin*
                                                                   JEAN LIN
                                                                   Senior Trial Counsel
                                                                   U.S. Department of Justice