IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL DRAGOVICH; MICHAEL GAITLEY; ELIZABETH LITTERAL; PATRICIA FITZSIMMONS; CAROLYN LIGHT; CHERYL LIGHT; DAVID BEERS; CHARLES COLE; RAFAEL V. DOMINGUEZ; and JOSE G. HERMOSILLO, on behalf of themselves and all others similarly situated, | No. C 10-01564 CW<br><br>ORDER DENYING FEDERAL DEFENDANTS' MOTION TO DISMISS CERTAIN CLAIMS (Docket No. 97) |
| Plaintiffs, | |
| v. | |
| UNITED STATES DEPARTMENT OF THE TREASURY, et al., | |
| Defendants. | |

Plaintiffs challenge the constitutionality of section three of the Defense of Marriage Act (DOMA), 1 U.S.C. § 7, and § 7702B(f) of the Internal Revenue Code, 26 U.S.C. § 7702B(f), which limit their participation in a Long-Term Care (LTC) insurance program maintained by the California Public Employees' Retirement System (CalPERS).  Plaintiffs contend that these federal provisions violate the Constitution's guarantees of equal protection and substantive due process because they exclude legally married same-sex couples and registered domestic partners.

Federal Defendants earlier moved unsuccessfully to dismiss Plaintiffs' equal protection and substantive due process challenge to section three of the DOMA, which establishes a federal

definition of marriage that excludes legally married same-sex spouses.  At that time, Plaintiff couples were all legally married under California law, so the Court did not find it necessary to resolve whether a cognizable constitutional claim had been stated with respect to § 7702B(f)'s exclusion of registered domestic partners as family members eligible to enroll in federally qualified, state-maintained long-term care plans.  Nor did the Court specifically address the constitutionality of section three of the DOMA with respect to registered domestic partners.

Subsequently, however, Plaintiffs filed a Second Amended Complaint adding as Plaintiffs Rafael V. Dominguez and Jose G. Hermosillo, who are not legally married, but are registered as domestic partners in California.  In response, Federal Defendants moved to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), the claims that § 7702B(f)'s exclusion of California registered domestic partners violates equal protection and substantive due process.  Federal Defendants state that nothing in their brief should be construed as support for the constitutionality of section three of the DOMA.  Thus, Federal Defendants do not appear to move to dismiss the domestic partners' challenge to that law.  Having considered all of the parties' submissions and oral argument, the Court denies Federal Defendants' motion to dismiss.

United States District Court
For the Northern District of California

BACKGROUND

Plaintiffs are California public employees and their same-sex spouses and registered domestic partners, who are in long-term committed relationships recognized and protected under California law.  As explained in this Court's previous order, CalPERS provides retirement and health benefits, including long-term care insurance, to many of the state's public employees and retirees and their families.

Long-term care insurance provides coverage when a person needs assistance with basic activities of living due to injury, old age, or severe impairments related to chronic illnesses, such as Alzheimer's disease.  Internal Revenue Code § 7702B(f), which was enacted on August 21, 1996, as part of the Health Insurance Portability and Accountability Act (HIPAA), provides favorable federal tax treatment to participants in qualified state-maintained long-term care insurance plans for state employees, such as the CalPERS LTC insurance program.  26 U.S.C. § 7702B(f). Section 7702B(f)(2) disqualifies a state-maintained plan from this favorable tax treatment if it provides coverage to individuals other than those specified under its subparagraph (C).  26 U.S.C. § 7702B(f)(2)(C).

The list of eligible individuals in subparagraph (C) of § 7702B(f)(2) includes state employees and former employees, their spouses, and individuals bearing a relationship to the employees

or spouses which is described in any of subparagraphs (A) through (G) of section 152(d)(2). 26 U.S.C. § 7702B(f)(2)(C).

Section 152(d)(2), the part of the tax code from which subparagraph (C)(iii) draws its list of eligible relatives, defines the relatives for whom a taxpayer may claim a dependent exemption. See 26 U.S.C. §§ 151-52. Section 152(d)(2) sets forth subparagraphs (A) through (H) to identify the following individuals as "qualifying relatives" for the exemption:

> (A)  A child or a descendant of a child.
>
> (B)  A brother, sister, stepbrother, or stepsister.
>
> (C)  The father or mother, or an ancestor of either.
>
> (D)  A stepfather or stepmother.
>
> (E)  A son or daughter of a brother or sister of the taxpayer.
>
> (F)  A brother or sister of the father or mother of the taxpayer.
>
> (G)  A son-in-law, daughter-in-law, father-in-law, mother-in-law, brother-in-law, or sister-in-law.
>
> (H)  An individual . . . who, for the taxable year of the taxpayer, has the same principal place of abode as the taxpayer and is a member of the taxpayer's household.

26 U.S.C. § 152(d)(2).

When it chose to incorporate subparagraphs (A) through (G), Congress specifically chose not to carry over subparagraph (H) to subparagraph (C)(iii) of § 7702B(f)(2). Had Congress not chosen to exclude subparagraph (H) in subparagraph (C)(iii) of

§ 7702B(f)(2), registered domestic partners would have been eligible to enroll in the CalPERS LTC program.

Instead, CalPERS has refused to make its LTC insurance program available to the registered domestic partners, as well as the same-sex spouses, of the public employee Plaintiffs. Plaintiffs' complaint asserts that Congress violated the Constitution by excluding registered domestic partners as relatives eligible for enrollment in qualified state-maintained long-term care insurance plans.

In 1996, when Internal Revenue Code § 7702B(f) and the DOMA were passed, registered domestic partnership laws had not been widely adopted. Nonetheless, Congress had discussed registered domestic partnerships prior to and during 1996. In April 1992, the District of Columbia had passed the Health Care Benefits Expansion Act, establishing a domestic partnership registry in that jurisdiction. Congress reacted to the District of Columbia's new law by barring any local or federal funding to implement, enforce or administer the registry. District of Columbia Appropriations Act, 1993, Pub. L. No. 102-382, 106 Stat. 1422 (1992).[1]  Representative Clyde Holloway argued, "If there ever was an attack on the family in this country, it is this Domestic

---

[1] The Health Care Benefits Expansion Act of 1992, D.C. Law 9-114, which established the District of Columbia's domestic partnership registry, was assigned Act No. 9-188 after its passage by the Council and approval by the Mayor. See D.C. Code § 36-1401 (legislative history of law 9-114).

Partnership Act . . . To me, this bill totally destroys the families of this country."  138 Cong. Rec. H2950-04, 1992 WL 96521, at *H2950.  He stated, "I do not think anyone that is homosexual can stand here on this floor and openly tell me that homosexuality is good for the future of America."  138 Cong. Rec. H6120-02, 1992 WL 156371, at *H6129.

In arguing against the appropriations ban before the Senate, Senator Brock Adams entered into the Congressional record information detailing domestic partnership recognition in numerous jurisdictions, apart from the District of Columbia.[2]  138 Cong. Rec. S10876-01, 1992 WL 180795, at *S10904.

On July 30, 1992, the appropriations bill was amended to include the funding ban, and on October 5, 1992, the District of Columbia Appropriations Act, 1993, became law.  Pub L. No. 102-382.

The ban on funds for the District of Columbia's domestic partnership registry was renewed in subsequent years.  In 1993, as part of a successful drive to renew the ban, Representative Ernst Istook argued, "Now, obviously this was passed by the District of Columbia to enable people, more than anything else, who are in a

---

[2] The record includes mention of Travis County in Texas, Dane County in Wisconsin, the California counties of Alameda, San Mateo and Santa Cruz, the cities of Berkeley, Los Angeles, Oakland, Santa Cruz, San Francisco, West Hollywood, New York, Ithaca, Cambridge, West Palm Beach, Ann Arbor, East Lansing, Madison, Minneapolis, Seattle, and Tahoma Park, as well as others in which domestic partner organizing efforts were underway.

homosexual relationship to register an equivalent of a gay marriage.  That is one of the reasons that this particular proposal is abhorrent, in my view."  139 Cong. Rec. H4353-01, 1993 WL 236117, at *H4355, *H4358.  The District of Columbia Appropriations Act, 1994, included the ban.  Pub. L. No. 103-127, 107 Stat. 1336 (1993).

In 1994, Representative Robert Dornan proclaimed, "From my historical knowledge, this business of domestic partner benefits started in Seattle where they were trying to give privileged treatment to lesbian and homosexual partners . . . Let us get rid of this domestic partnership nonsense."  140 Cong. Rec. H5589-02, 1994 WL 363727, at *H5601.  Again, the funding ban was approved. District of Columbia Appropriations Act, 1995, Pub. L. No. 103-334, 108 Stat. 2576 (1994).

In 1995, opponents of registered domestic partnerships again sought to include the ban in the District of Columbia Appropriations Act, 1996.  Representative Cliff Stearns asserted that domestic partnership registration laws "undermine the traditional moral values that are the bedrock of this Nation." 141 Cong. Rec. H11627-02, 1995 WL 639923, at *H11657.

Although the District of Columbia Appropriations Act was never passed during the budget impasse of 1995, in 1996, during the same legislative session in which § 7702B(f) and the DOMA were passed, Congress passed continuing appropriations, which included the ban on funding of the registry.  Continuing Appropriations,

1996, Pub. L. No. 104-90, 110 Stat. 3 (1996).  <u>See</u> <u>also</u>, Pub. L.

No. 104-92, 110 Stat. 16 (1996).  Later that year, Congress passed

two appropriations bills that also contained the ban on funding

for the registry.  Omnibus Consolidated Rescissions and

Appropriations Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321

(1996); District of Columbia Appropriations Act, 1997, Pub. L. No.

104-194, 110 Stat. 2356 (1996) (captioned "Prohibition on Domestic

Partners Act").

   The record of Congress' consideration of the DOMA, which also

occurred in 1996, likewise evidences animosity and moral

condemnation of same-sex relationships.[3]  <u>Gill v. Office of</u>

<u>Personnel Mgmt.</u>, 699 F. Supp. 2d 374, 378-79 (D. Mass 2010).

Indeed, the issue of registered domestic partnerships arose within

the context of Congress' consideration of the DOMA.  The day

Senator Nickles introduced the bill to enact the DOMA, he

explained that the law was needed to circumvent the recognition of

registered domestic partners under federal law.  He stated,

> Another example of why we need a Federal definition of
> the terms "marriage" and "spouse" stems from
> experience during debate on the Family and Medical
> Leave Act of 1993. Shortly before passage of this act,
> I attached an amendment that defined "spouse" as "a
> husband or wife, as the case may be." When the
> Secretary of Labor published his proposed regulations,
> a considerable number of comments were received urging
> that the definition of "spouse" be "broadened to
> include domestic partners in committed relationships,

---

[3] The record of animus is detailed in this Court's January
18, 2011 order denying Federal Defendants' motion to dismiss
Plaintiffs' constitutional challenge to section three of the DOMA.

> including same-sex relationships." When the Secretary
> issued the final rules he stated that the definition
> of "spouse" and the legislative history precluded such
> a broadening of the definition.

142 Cong. Rec. 4851-02, 1996 WL 233584, at *S4869-70.

A proposed amendment to the bill that became the DOMA would have required the General Accounting Office[4] to "undertake a study of the differences in the benefits, rights and privileges available to persons in a marriage and the benefits, rights and privileges available to persons in a domestic partnership resulting from the non-recognition of domestic partnerships as legal unions by State and Federal laws." 142 Cong. Rec. 7480-05, 1996 WL 392787, at *H7503. Representative Charles Canady stated, in opposition to the amendment, "This motion represents a transparent attempt to give some statutory recognition to domestic partnerships." 142 Cong. Rec. 7480-05, 1996 WL 392787, at *H7504. The amendment to require the study of domestic partnerships was defeated. 142 Cong. Rec. 7480-05, 1996 WL 392787, at *H7505.

Congress continued until 2001 to approve annually the ban on the use of local and federal funds to implement the District of Columbia's domestic partnership registry. District of Columbia Appropriations Act, 1998, Pub. L. No. 105-100, 111 Stat. 2160 (1997); Omnibus Consolidated and Emergency Supplemental Appropriations Act, 1999, Pub. L. No. 105-277, 112 Stat. 2681 (1998); Consolidated Appropriations Act, 2000, Pub. L. No. 106-113

---

[4] Now, the Government Accountability Office.

(1999), District of Columbia Appropriations Act, 2001, Pub. L. No. 106-522, 114 Stat. 2464 (2000). In 1998, Representative Frank Riggs stated, "[W]e as Federal lawmakers have a duty to oppose policies and laws that confer partner benefits or marital status on same-sex couples." 144 Cong. Rec. 7335-03, 1998 WL 454432, at *H7343. Representative Riggs took the position that the registry, if permitted to take effect, would "legitimize same-sex activity." Id.

Also in 1998, Congress considered the Domestic Partnership Benefits and Obligations Act of 1998, introduced by Senator Paul Wellstone. This Act would have provided benefits to the domestic partners of federal employees. 144 Cong. Rec. S1959-02, 1998 WL 109601. In his statement in support of the bill, Senator Wellstone catalogued the number of cities, municipalities, counties, businesses, non-profit organizations and unions that offered domestic partnership benefits. 144 Cong. Rec. 731-02, 1998 WL 55803, at S733. Senator Wellstone further expressed his disappointment that Congress had yet to offer domestic partnership benefits when such benefits "have already been offered in some cities and by some businesses since 1982 . . ." Id. The bill was not passed.

In 2001, Congress authorized a more limited appropriations ban, permitting the use of non-federal funds to institute and administer the District of Columbia domestic partnership registry. District of Columbia Appropriations Act, 2002, Pub. L. No. 107-96,

United States District Court
For the Northern District of California

115 Stat. 923 (2001).  Accordingly, in 2002, the District of Columbia finally implemented its domestic partnership registry. See 49 D.C. Reg. 5419 (June 14, 2002).[5]

Internal Revenue Code § 7702B(f)(2)(C)(iii) was amended in 2004 in the Working Families Tax Relief Act, Public Law No. 108-311, 118 Stat. 1166 (2004).  Congress did not take that opportunity to change the provision to include registered domestic partners.  By then, California, New Jersey, Washington and Maine had enacted domestic partnership legislation.

LEGAL STANDARD

Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests.  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal

---

[5] In 2010, Congress lifted the ban on federal funding for the District of Columbia's domestic partnership registry.  See Consolidated Appropriations Act, 2010, Public Law 111-117 (Division C--Financial Services and General Government Appropriations Act, 2010); H.R. Rep. 111-202, at 7.

conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

DISCUSSION

I. Equal Protection

The doctrine of equal protection exists to ensure the Constitution's promise of equal treatment under the law.  Romer v. Evans, 517 U.S. 620, 631 (1996).  Certain classifications by statute or other government activity, such as classifications based on race, have been found to be suspect.  Harris v. McRae, 448 U.S. 297, 322 (1980) (noting race as "the principal example" of a "suspect" classification).  Where a challenged law burdens a suspect class, courts apply strict scrutiny to determine the constitutional validity of the provision.  See Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 312 (1976).  Such laws are "presumptively invalid and can be upheld only upon an extraordinary justification."  Personnel Administrator of Mass. v. Feeney, 442 U.S. 256, 272 (1979).  Courts apply an intermediate level of scrutiny to certain other classifications, such as those based upon sex, which "have traditionally been the touchstone for pervasive and often subtle discrimination."  Id. at 273.  A law that does not burden a protected class is subject to a lower standard of review and need only "bear[] a rational relationship to some legitimate end."  Romer, 517 U.S. at 631.

Plaintiffs claim that § 7702B(f) violates registered domestic partners' constitutional right to equal protection on the basis of sexual orientation and gender.

Plaintiffs assert, but point to no controlling authority for the proposition, that classifications on the basis of sexual orientation are suspect, akin to racial classifications, triggering judicial scrutiny of the highest order.  Federal Defendants agree that the Court should hold that sexual orientation is a suspect classification.  Letter from Attorney General, Docket No. 64-2.  However, in the Ninth Circuit, gays and lesbians have been held not to constitute a suspect or quasi-suspect class.  Philips v. Perry, 106 F.3d 1420, 1425 (9th Cir. 1997) (citing High Tech Gays v. Defense Indus. Sec. Clearance Office, 895 F.2d 563, 574 (9th Cir. 1990)).  In Witt v. Dept. of the Airforce, 527 F.3d 806, 821 (9th Cir. 2008), a Ninth Circuit panel held that Lawrence v. Texas, 539 U.S. 558 (2003), did not disturb the application of rational basis review to an equal protection challenge to a federal policy permitting the discharge of service-members on account of homosexual activity.  Cf., Witt, 527 F.3d at 824-25 (J. Canby's opinion concurring and dissenting in part, arguing that because "Lawrence unequivocally overruled Bowers[v. Hardwick, 478 U.S. 186 (1986)], it 'undercut the theory [and] reasoning underlying' High Tech Gays and Philips 'in such a way that the cases are clearly irreconcilable,' under Miller v. Gammie, 335 F.3d 889, 900 (9th Cir. 2003)") (alteration in

original).  The Ninth Circuit may, in light of developments in the law, decide to change its ruling on the degree of protection to be provided to gays and lesbians as a class, but unless and until it does, this Court must follow its current holdings.

Although the Supreme Court has not established that sexual orientation is a suspect or quasi-suspect class for purposes of the equal protection doctrine, it did hold in Romer that gays and lesbians, as a class, are at least protected from burdensome legislation that is the product of sheer anti-gay animus and devoid of any legitimate government purpose.  517 U.S. at 632-35 (holding that Colorado's anti-gay ballot measure "defies even [the] conventional inquiry" applied under the rational basis test).  In striking down the ballot measure, the Supreme Court reiterated, "If the constitutional conception of equal protection of the laws means anything, it must at the very least mean that a bare desire to harm a politically unpopular group cannot constitute a legitimate governmental interest."  Id. at 634-35 (quoting Department of Agriculture v. Moreno, 413 U.S. 528, 534 (1973)) (internal quotation marks and alterations omitted).  See also, Lawrence, 539 U.S. at 577 ("the fact that the governing majority in a State has viewed a particular practice as immoral is not a sufficient reason for upholding a law prohibiting the practice . . .") (quoting Bowers, 478 U.S. at 216 (Stevens, J., dissenting)).  Thus, the Supreme Court has held that anti-gay

animus is not a legitimate governmental interest that may serve to justify legislative enactments burdening gays and lesbians.

The Court considers next whether the classification in § 7702B(f) is justified, so as to withstand Plaintiffs' equal protection challenge. As noted earlier, the rational basis standard applies where a challenged enactment does not burden a protected class. <u>Romer</u>, 517 U.S. at 631.

Under the rational basis test, a law that imposes a classification must be rationally related to the furtherance of a legitimate state interest. <u>Id.</u> This standard of review accords a strong presumption of validity to legislative enactments. <u>Heller v. Doe</u>, 509 U.S. 312, 319 (1993). "[I]t is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." <u>FCC v. Beach Comm.</u>, 508 U.S. 307, 313 (1993). On the other hand, the rational basis test is not "toothless." <u>Mathews v. De Castro</u>, 429 U.S. 181, 185 (1976). "[E]ven in the ordinary equal protection case calling for the most deferential of standards, [courts] insist on knowing the relation between the classification adopted and the object to be attained." <u>Gill</u>, 699 F. Supp. 2d at 387 (quoting <u>Romer</u>, 517 U.S. at 633).

Plaintiffs contend that there is no fairly conceivable rational relationship between a legitimate government interest and the exclusion of registered domestic partners from subparagraph (C)(iii) of § 7702B(f). Instead, they posit that the enactment

was based upon animus. As noted earlier, the Supreme Court has held that anti-gay animus is not a legitimate governmental interest that may serve to justify legislative enactments burdening gays and lesbians. See Lawrence, 539 U.S. at 577; Romer, 517 U.S. at 634-35.

Federal Defendants take the position that § 7702B(f)'s non-inclusion of registered domestic partners is not based on sexual orientation. First, Federal Defendants contend that excluding registered domestic partnerships is not a proxy for sexual-orientation-based discrimination because many states permit heterosexual couples to register as domestic partners. This argument is not persuasive. In this state and many others, registered domestic partnership is currently the only available legal status that provides a complement of established rights and obligations for same-sex couples seeking legal recognition of their relationships. That California permits different-sex couples, in which one or both persons are age sixty-two or older, to choose registered domestic partnership over marriage does not diminish the plain reality that same-sex couples are relegated to registered domestic partnerships because legal marriage is prohibited for them. The availability of registered domestic partnership to different-sex couples does not negate the burdens faced by same-sex registered domestic partners. The laws limiting same-sex couples to registered domestic partnerships, while precluding them from marriage, turn on sexual orientation.

**United States District Court**
For the Northern District of California

Federal Defendants also argue that the varying scope of privileges afforded by different state registered domestic partnership laws means that the legal relationship is not a proxy for classification based on sexual orientation.  This argument is also unavailing.  The number or type of privileges is irrelevant when registered domestic partnerships provide the only relationship rights available to same-sex couples.

Federal Defendants also assert that Plaintiffs cannot show animus because the legislative history of § 7702B(f) is devoid of any statement suggesting a purpose to discriminate against same-sex domestic partners.  Neither party points to legislative history for § 7702B(f) illuminating the reasons why Congress chose the eligible relatives contained in subparagraph (C)(iii).  Federal Defendants posit that an impermissible purpose for the exclusion of registered domestic partners is not reasonably inferred because no state recognized such relationships in 1996.

However, the history delineated above demonstrates that when § 7702B(f) was adopted in 1996, Congress was aware that a number of localities and entities across the country had recognized and protected same-sex couples by offering registered domestic partnerships.  Indeed, in 1996, the District of Columbia would have had a domestic partnership registry, but for Congress' decision to ban all appropriations to implement, enforce or administer the registry.  Antipathy towards same-sex relationships infused successful efforts to block implementation of the

registered domestic partnership law in the District from 1992 to 2001, which included the year that § 7702B(f) was enacted. The statements reflecting moral condemnation of gays and lesbians in the course of these deliberations support an inference that the exclusion of domestic partners from the list of family members eligible to enroll in federally qualified, state-maintained long-term care plans was motivated by animus.

Facts beyond the legislative record pertaining directly to § 7702B(f) are relevant. This includes the legislative history of provisions that Congress considered contemporaneously with the passage of § 7702B(f). Congress' decision to omit a provision specifically reaching registered domestic partners, concurrently with its denial of funding for the District of Columbia's domestic partnership registry and its enactment of a federal definition of marriage limited to heterosexual married couples, along with its record of animosity towards gays and lesbians, may serve as evidence of animus. See Arlington Heights, 429 U.S. at 267 (stating, in the context of a race-based, disparate impact claim, that the "historical background of the decision" and the "specific sequence of events leading up to the challenged decision" may shed light on the decisionmaker's purposes).

Even after the District of Columbia implemented its domestic partnership registry and other states adopted their own, Congress, through the Working Families Tax Relief Act of 2004, enacted an amended version of § 7702B(f) without adding registered domestic

18

partners or otherwise allowing states to enroll family members who were not expressly identified in subparagraph (C)(iii).  Federal Defendants attempt to diminish the legislation as a "technical amendment," but the Act established substantive law that, among other things, provided relief from the "marriage penalty" in certain tax brackets and repealed scheduled reductions in the child tax credit.  Pub. L. No. 108-311.

Next, Federal Defendants assert that § 7702B(f) does not impermissibly discriminate against same-sex registered domestic partners because other relatives, such as cousins, and individuals who share a close, dependent, family-like relationship are omitted for reasons unrelated to sexual orientation.  However, the relevant comparison is between § 7702B(f)'s treatment of registered domestic partners and its treatment of spouses.  Congress' record indicates that it saw registered domestic partnership as a marriage-like status.  The omission of distant relatives and other household members from the list of family members eligible for enrollment does not preclude a finding that § 7702B(f) imposes a discriminatory classification.

Federal Defendants contend that there is a rational basis for § 7702B(f)'s exclusion of domestic partners because the limitation allows for the evolution of state domestic partnership laws.  This argument is not persuasive.  Section 7702B(f) provides favorable federal tax treatment for long-term care plans maintained and administered by states.  The provision does not have any bearing

United States District Court
For the Northern District of California

on how state domestic partnership laws evolve, one way or another. By allowing federally qualified, state-maintained long-term care plans to enroll only certain categories of family members, § 7702B(f) simply withholds favorable tax treatment to domestic partners that a state otherwise recognizes.

Federal Defendants contend that it was rational to decline to carry over subparagraph (H) of § 152(d)(2) to subparagraph (C)(iii) of § 7702B(f)(2), because (A) through (G) would reach an adequate number of family members. Federal Defendants assert that the list of relatives identified in section 152(d)(2)(A)-(G) reasonably served the policy goal of encouraging individuals to participate in a state long-term care insurance plan, and ineligible family members, including registered domestic partners, could secure long-term care insurance from other sources. The fact that these private plans would enjoy the same tax benefits under § 7702B(f) as state-maintained plans does not explain the decision to exclude a particular group of family members from state-maintained plans.

Federal Defendants assert that the eligibility limitation could be justified as a rational effort to assure that the eligibility of individuals seeking enrollment in a state-maintained plan could be easily verified. According to Federal Defendants, the catch-all provision of subparagraph (H), which includes an individual living with the taxpayer as a member of the household during a given tax year, describes a relationship that

may change from year to year. This justification, however, cannot be credited because the eligibility of spouses, step-relatives and relatives-in-law, which depends on the existence of a marital relationship, may likewise change from one year to the next. Marital relationships lack any minimum time commitment. Thus, the exclusion of subparagraph (H) does not rationally relate to efforts to ease administration of state-maintained long-term care plans. See Moreno, 413 U.S. at 537-38 (holding that a provision that limited eligibility for food stamps to households with "related" rather than "non-related" individuals was not rationally connected to efforts to curb abuse of the program). The Ninth Circuit recently declined to credit the argument that a state law eliminating health care benefits for domestic partners served the interest of easing administrative burdens where the challenged law amounted to "the selective application of legislation to a small group." Diaz v. Brewer, 656 F.3d 1008, 1014 (9th Cir. 2011) (affirming, in the context of a motion for preliminary injunction, the district court's finding that the plaintiff same-sex domestic partners were likely to succeed on their equal protection claim under the rational basis test).

Federal Defendants' argument that the list of eligible family members was adequate to further the policy goals of § 7702B(f) suggests that the enactment was a rational decision to limit the subsidy provided by the law. It is conceivable that an incremental amount of tax revenue might be gained by not including

United States District Court
For the Northern District of California

registered domestic partners in subparagraph (C)(iii) of § 7702B(f)(2). However, in light of the reasoning in Plyler v. Doe, 457 U.S. 202, 227 (1982), and Rinaldi v. Yeager, 384 U.S. 305, 308-09 (1966), a law cannot satisfy the rational basis standard of review based on a mere cost-saving rationale.

In Plyler, the Supreme Court considered the constitutionality of a state statute that withheld state funds for the education of undocumented children and authorized local school districts to deny enrollment in their public schools to children not "legally admitted" to the country. The Court held that undocumented persons did not constitute a suspect class and the right to education did not comprise a fundamental liberty interest. Id. at 223. Accordingly, the Court declined to apply the strict scrutiny standard of review to the statute, and instead considered whether the statute rationally furthered some substantial state interest. Id. at 224. To the state's assertion that the challenged law furthered the "preservation of the state's limited resources for the education of its lawful residents," the Court responded that "a concern for the preservation of resources standing alone can hardly justify the classification used in allocating those resources . . . [The state] must do more than justify its classification with a concise expression of an intention to discriminate." Id. at 227 (internal citation omitted). The exclusion of the particular group, even if the group does not constitute a protected class, must be justified. Id. at 229

**United States District Court**
For the Northern District of California

("[T]he State must support its selection of <u>this</u> group as the appropriate target for exclusion.") (emphasis in original). Because the Court did not discern a conceivable, sufficient justification for excluding undocumented children, it invalidated the law.

Similarly, in <u>Rinaldi</u>, 384 U.S. at 308-09, the Court stated that equal protection "imposes a requirement of some rationality in the nature of the class singled out." There the Court struck down, on equal protection grounds, a state statute that required indigent prisoners to reimburse the cost of a transcript in the event of an unsuccessful appeal, but did not impose the same obligation on indigents who received a suspended sentence, were placed on probation or were fined. The Court assumed that replenishing a county treasury by seeking reimbursement from those who had directly benefited from its expenditures could serve as a legitimate basis for enacting the law. <u>Id.</u> at 309. However, in applying the rational basis test, the Court noted that the law "fasten[ed] a financial burden only upon those unsuccessful appellants who are confined in state institutions," while those appellants who had been given a lesser sanction had received the same benefit from the county--a transcript used in an unsuccessful appeal. <u>Id.</u> The factor distinguishing the groups was the nature of the penalty attached to the offense committed. The Court found the distinction arbitrary because it did not bear "some relevance to the purpose for which the classification [was] made." <u>Id.</u>

Under the reasoning in <u>Plyler</u> and <u>Rinaldi</u>, Federal Defendants must show that justifying the exclusion of registered domestic partners for the purpose of meeting federal fiscal objectives did not single out same-sex couples for arbitrary or impermissible reasons.  Here, as noted above, the distinction between spouses and registered domestic partners turns on sexual orientation, a factor that bears no relevance to the purpose for which § 7702B(f) was enacted, that is, to incentivize the purchase of long-term care insurance to improve the financial security of families throughout the country.  Moreover, the Ninth Circuit in <u>Diaz</u> indicated that the cost-saving rationale may not succeed where the amount of savings rendered by excluding same-sex domestic partners is minimal.  656 F.3d at 1012-14 (noting evidence that the state spent a minimal amount on domestic partners' benefits).  It bears repeating that Plaintiffs have provided legislative history indicating that the distinction was actually motivated by anti-gay animus.

In sum, Federal Defendants have failed to show a plausible, legitimate rationale for excluding registered domestic partners from § 7702B(f)(2)(C)(iii)'s list of eligible family members, and the Court can think of none.  Plaintiffs have pointed to a record of animus that could explain the exclusion.  None of the cases upon which Federal Defendants rely establishes that the rational basis test is satisfied where a challenged provision serves no legitimate government interest and the enactment is tainted by

animus against a politically unpopular group.  Therefore, Plaintiffs' allegations on behalf of registered domestic partners are sufficient to state an equal protection claim under the rational basis test.

On the other hand, the sex discrimination basis of Plaintiffs' equal protection claim fails because the allegations do not evidence purposeful invidious discrimination on the basis of sex.  <u>Feeney</u>, 442 U.S. at 274.  The Congressional record cited by Plaintiffs demonstrates animus directed towards same-sex couples, not men or women.  Plaintiffs have not demonstrated how their allegations, if proven, would establish an equal protection violation based on sex discrimination.

II. Substantive Due Process

Arguing that family autonomy and decisionmaking are protected liberty interests, Plaintiffs claim that § 7702B(f) violates their substantive due process rights by penalizing their exercise of such rights without a permissible basis.  Under the doctrine of substantive due process, when the government infringes a "fundamental liberty interest," the strict scrutiny test applies, and the law will not survive constitutional muster "unless the infringement is narrowly tailored to serve a compelling state interest."  <u>William v. Glucksberg</u>, 521 U.S. 702, 721 (1997).  Assuming that family autonomy and decisionmaking do amount to a constitutionally protected, fundamental right, § 7702B(f) creates no more than an incidental economic burden on those interests.

**United States District Court**
For the Northern District of California

United States District Court
For the Northern District of California

Accordingly, the law does not trigger strict judicial scrutiny. See Lyng v. Auto Workers, 485 U.S. 360, 370 (1988) ("Because the statute challenged here has no substantial impact on any fundamental interest . . . we confine our consideration to whether the statutory classification 'is rationally related to a legitimate governmental interest.'").

In Lyng, the challenged provision prevented a family that was already on food stamps from receiving an increased allotment if a family member stopped working due to a strike.  The provision also barred families from becoming eligible for food stamps if their eligibility arose because a household member stopped working as part of a labor strike.  The Court found that the law did not interfere with familial living arrangements because it was "exceedingly unlikely" that the restriction would prevent a family from "dining together" or compel a striking member to leave the household in order to increase the household allotment of food stamps.  Id. at 365.  The Court reasoned that the law did not "directly and substantially" interfere with family living arrangements.  Id. at 365-66.

In Regan v. Taxation with Representation of Washington, 461 U.S. 540, 549 (1983), the plaintiff challenged a tax provision that contributions to lobbying efforts were not tax deductible, while charitable contributions were.  The Court held that the legislature is not required to subsidize the exercise of a fundamental right.  The Court cited cases upholding the denial of

subsidies for candidates in certain public elections, and the denial of subsidies to pay for abortions.  Id.  Accordingly, the Court declined to subject the provision to strict scrutiny review.

Plaintiffs rely on Cleveland Board of Education v. La Fleur, 414 U.S. 632, 639 (1974), which invalidated, on substantive due process grounds, an employer's policy which set arbitrary cutoff dates for when pregnant teachers were required to take leave and could return to work.  The Court found that the mandatory leave policy penalized pregnant teachers for their decisions related to family creation, namely the decision to bear a child.  Id. at 648. However, La Fleur is less analogous to the present claim than Regan and Lyng because the law challenged in La Fleur was a more significant intrusion, in that the pregnant teachers could not work during the mandatory leave period.

Likewise, Speiser v. Randall, 357 U.S. 513 (1958), is inapposite.  There the Court struck down a law requiring persons who sought to take advantage of a property tax exemption to sign a declaration stating that they did not advocate the forcible overthrow of the Government of the United States.  The Speiser Court stated, "To deny an exemption to claimants who engage in speech is in effect to penalize them for the same speech." Id. at 518.  The Court reasoned that the challenged law necessarily had "the effect of coercing the claimants to refrain from the proscribed speech." Id. at 519.  Here, however, Plaintiffs cannot

United States District Court
For the Northern District of California

1  plausibly allege that § 7702B(f) has coerced same-sex couples to

2  forgo engaging in same-sex relationships.

3      Lyng and Regan preclude the application of strict scrutiny in

4  deciding the domestic partner Plaintiffs' substantive due process

5  claim.  However, where strict scrutiny does not apply, courts

6  weigh a substantive due process challenge under the rational basis

7  standard.  See Glucksberg, 521 U.S. at 728 (applying the rational

8  basis test to a law banning assisted-suicide because it was held

9  not to infringe on a fundamental liberty interest protected by the

10  Due Process Clause).  For the reasons explained earlier in the

11  Court's equal protection analysis, Plaintiffs have alleged

12  sufficiently that the exclusion of registered domestic partners

13  from subparagraph (C)(iii) of § 7702B(f)(2) fails constitutional

14  standards, even under the rational basis test.  Accordingly,

15  Federal Defendants' motion to dismiss Plaintiffs' substantive due

16
17  process claim on behalf of registered domestic partners is denied.

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26
27  //

28

United States District Court
For the Northern District of California

CONCLUSION

Plaintiffs have stated a viable constitutional challenge to § 7702B(f) under the doctrines of equal protection and substantive due process. Thus, Federal Defendants' motion to dismiss the first and second claim in Plaintiffs' Second Amended Complaint to the extent they are brought by registered domestic partners is DENIED.

IT IS SO ORDERED.


Dated: 1/26/2012

CLAUDIA WILKEN
United States District Judge